GLYNN, FINLEY, MORTL,
HANLON & FRIEDENBERG, LLP
CLEMENT L. GLYNN, Bar No. 57117
cglynn@glynnfinley.com
ADAM FRIEDENBERG, Bar No. 205778
afriedenberg@glynnfinley.com
ROBERT C. PHELPS, Bar No. 106666
bphelps@glynnfinley.com
MORGAN K. LOPEZ, Bar No. 215513
mlopez@glynnfinley.com
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975

Attorneys for Defendants Ian Anderson
(Individually and as Trustee of the Ian and
Margaret Anderson Family Trust), Margaret
Anderson (Individually and as Trustee of the
Ian
and Margaret Anderson Family Trust), Neil
Anderson, and Maryn Anderson


DAVIS WRIGHT TREMAINE LLP
ALLISON A. DAVIS
SANJAY M. NANGIA
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
allisondavis@dwt.com
sanjaynangia@dwt.com

Attorneys for Defendant
WILLIAM DIETRICH
(individually and as trustee of the Child's Trust
FBO William C. Dietrich, a subtrust under the
Trust of William C. Dietrich and Ivanna S.
Dietrich)

BUCHALTER
A Professional Corporation
KEVIN T. COLLINS (SBN: 185427)
ADAM SMITH (SBN: 322035)
NATALIYA SHTEVNINA (SBN: 339094)
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone: 916.945.5170
Email: kcollins@buchalter.com
       apsmith@buchalter.com
       nshtevnina@buchalter.com

Attorneys for Defendants
Ned Anderson (individually and as trustee of
the Ned Kirby Anderson Trust), Neil
Anderson, Glenn Anderson, Janet Blegen
(individually and as trustee of the Janet
Elizabeth Blegen Separate Property Trust),
Robert Anderson (individually and as trustee
of the Robert Todd Anderson Living Trust),
Stan Anderson, Lynne Mahre, Sharon Totman,
Amber Bauman and Christopher Wycoff


HOGE, FENTON, JONES & APPEL, INC.
STEVEN J. KAHN
ALEXANDER H. RAMON
6801 Koll Center Parkway, Suite 210
Pleasanton, CA 94566
Telephone: (925) 224-7780
steven.kahn@hogefenton.com
alex.ramon@hogefenton.com

Attorneys for Defendant
Ronald Gurule (individually and as trustee of
the Ronald Gurule 2013 Family Trust)

CASE NO. 2:23-cv-00927-TLN-AC

DEFENDANTS' JOINT REPLY ISO MOTION TO DISMISS

| | |
|---|---|
| RIMON, P.C.<br>GABRIEL G. GREGG (SBN 187333)<br>gabriel.gregg@rimonlaw.com<br>800 Oak Grove Avenue, Suite 250<br>Menlo Park, California 94025<br>Telephone: 650.461.4433<br>Facsimile: 650.461.4433<br><br>Attorneys for the<br>MAHONEY DEFENDANTS | ROPERS MAJESKI PC<br>MICHAEL J. IOANNOU (SBN: 95208)<br>DAVID B. DRAPER (SBN: 107790)<br>KEVIN W. ISAACSON (SBN: 281067)<br>333 West Santa Clara St., Suite 910<br>San Jose CA 95113<br>Telephone: (650) 814 5987<br>david.draper@ropers.com<br>Attorneys for Defendants<br><br>Paul Dietrich (individually and as trustee of the Child's Trust FBO Paul S. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich; John Alsop (individually and as trustee of the John G. Alsop Living Trust), Nancy Roberts (individually and as trustee of the Nancy C. Roberts Living Trust), Janet Zanardi (individually and as trustee of Trust A under the Zanardi Revocable Trust) |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLANNERY ASSOCIATES LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BARNES FAMILY RANCH ASSOCIATES, LLC, LAMBIE RANCH ASSOCIATES, LLC, KIRBY HILL ASSOCIATES, LLC, BARNES FAMILY RANCH CORPORATION, LAMBIE RANCH CORPORATION, KIRBY HILL CORPORATION, KIRK BEEBE, SUSAN BEEBE FURAY, MURRAY BANKHEAD (INDIVIDUALLY AND AS TRUSTEE FOR THE BAUMBACH FAMILY TRUST), MICHAEL RICE (INDIVIDUALLY AND AS TRUSTEE FOR THE RICE FAMILY TRUST); CHRISTINE MAHONEY LIMITED PARTNERSHIP, CHRISTINE MAHONEY LIMITED PARTNERSHIP MANAGEMENT COMPANY, EMIGH LAND LP, EL GENERAL PARTNER, LLC, CHRISTINE MAHONEY (INDIVIDUALLY AND AS TRUSTEE OF<br><br><br>THE MAHONEY 2005 FAMILY TRUST), DANIEL MAHONEY (INDIVIDUALLY AND AS TRUSTEE OF THE MAHONEY 2005 FAMILY TRUST); | **Case No. 2:23-cv-00927-TLN-AC**<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:      August 24, 2023<br>Time:     2:00 p.m.<br>Dept.:     Courtroom 2, 15th Floor<br>Before:   Hon. Troy L. Nunley<br><br>Trial Date:  None Set |

| | |
|---|---|
| 1 | IAN ANDERSON (INDIVIDUALLY AND AS TRUSTEE OF THE IAN AND MARGARET ANDERSON FAMILY TRUST), MARGARET ANDERSON (INDIVIDUALLY AND AS TRUSTEE OF THE IAN AND MARGARET ANDERSON FAMILY TRUST), NEIL ANDERSON, MARYN ANDERSON, WILLIAM DIETRICH (INDIVIDUALLY AND AS TRUSTEE OF THE CHILD'S TRUST FBO WILLIAM C. DIETRICH, A SUBTRUST UNDER THE TRUST OF WILLIAM C. DIETRICH AND IVANNA S. DIETRICH), PAUL DIETRICH (INDIVIDUALLY AND AS TRUSTEE OF THE CHILD'S TRUST FBO PAUL S. DIETRICH, A SUBTRUST UNDER THE TRUST OF WILLIAM C. DIETRICH AND IVANNA S. DIETRICH), JOHN ALSOP (INDIVIDUALLY AND AS TRUSTEE OF THE JOHN G. ALSOP LIVING TRUST), NANCY ROBERTS (INDIVIDUALLY AND AS TRUSTEE OF THE NANCY C. ROBERTS LIVING TRUST), JANET ZANARDI (INDIVIDUALLY AND AS TRUSTEE OF TRUST A UNDER THE ZANARDI REVOCABLE TRUST), RONALD GURULE (INDIVIDUALLY AND AS TRUSTEE OF THE RONALD GURULE 2013 FAMILY TRUST), RICHARD ANDERSON (INDIVIDUALLY AND AS TRUSTEE OF THE REA PROPERTIES TRUST), DAVID ANDERSON (INDIVIDUALLY AND AS TRUSTEE OF THE IRWIN E. ANDERSON SURVIVOR'S TRUST), DEBORAH WORKMAN (INDIVIDUALLY AND AS TRUSTEE OF THE IRWIN E. ANDERSON SURVIVOR'S TRUST), CAROL HOFFMAN (INDIVIDUALLY AND AS TRUSTEE OF THE IRWIN E. ANDERSON SURVIVOR'S TRUST), NED ANDERSON (INDIVIDUALLY AND AS TRUSTEE OF THE NED KIRBY ANDERSON TRUST), NEIL ANDERSON, GLENN ANDERSON, JANET BLEGEN (INDIVIDUALLY AND AS TRUSTEE OF THE JANET ELIZABETH BLEGEN SEPARATE PROPERTY TRUST), ROBERT ANDERSON (INDIVIDUALLY AND AS TRUSTEE OF THE ROBERT TODD ANDERSON LIVING TRUST), STAN ANDERSON, LYNNE MAHRE, SHARON TOTMAN, AMBER BAUMAN, CHRISTOPHER WYCOFF; AND JOHN DOES 1-50, |
| | Defendant. |

CASE NO. 2:23-cv-00927-TLN-AC

DEFENDANTS' JOINT REPLY ISO MOTION TO DISMISS

## I. INTRODUCTION

As Defendants' opening brief established, Flannery fails to plead facts sufficient to support an inference that any—let alone all—of the Defendants participated in any price-fixing agreement. Flannery lacks antitrust standing due to the necessarily indirect and speculative nature of its alleged antitrust injuries. In response, Flannery mischaracterizes the case law and asks the Court to drastically expand the Sherman Act's reach. To begin, Flannery incorrectly contends that the Sherman Act applies to real estate and prevents landowners from engaging in parallel negotiations. As explained below, the Sherman Act was not intended to prevent local landowners from discussing with their neighbors negotiations with prospective purchasers or property prices. Next, Flannery falsely asserts that its vague allegations of parallel conduct, shared interests or family connections are sufficient "plus factors" to support an inference that all Defendants agreed to and engaged in a price-fixing agreement. Then, Flannery wrongly assumes that Defendants are participants in a market. Not all Defendants irrevocably wished to sell, or would have offered to sell their land at some unspecified lower price, such that Flannery could establish antitrust injury and standing. Far from being an intended beneficiary of the Sherman Act, Flannery admits that it seeks monopolistic landholdings. Flannery's complaint is a square peg in the round hole of antitrust law. The legal theories it advances do not lie, and there is no amendment that can cure Flannery's defective premise.

## II. LEGAL ARGUMENT

### A. The Sherman Act Does Not Govern Unique Real Property Transactions

The Sherman Act does not apply to individual landowners' sales of unique real property. Dkt. 78 at 10 ("Mot."). Flannery erroneously claims *W. Sunview Props., LLC v. Federman*, 338 F. Supp. 2d 1106 (D. Haw. 2004) and *Souza v. Est. of Bishop*, 594 F. Supp. 1480 (D. Haw. 1984), *aff'd*, 821 F.2d 1332 (9th Cir. 1987) <u>only</u> analyzed Hawaii's antitrust statute. In *Souza*, the Court expressed skepticism that the Sherman Act could apply to land. *Id*. at 1482 n.2. Even assuming it did apply, the Court still held that "<u>*The Sherman Act…does not regulate the price between an owner and a buyer*</u>." *Id*. at 1484 (emphasis added). The court found the landowners' decision to either sell or lease their land could not be anticompetitive because "the actions of the

Bishop Estate did not in any way infringe on the capacity of other landowners to do as they wished with their own land." *Id.* "An owner of land…may charge for it what he will or withhold it from the market if he so desires. He is under no compulsion to use the land for the public benefit or sell it at a price that someone can afford to pay." *Id*. at 1483. Likewise, *W. Sunview Props., LLC*, held that "the purchase of real estate by an individual owner cannot be considered a business under the Hawai'i statute, pursuant to Ninth Circuit law on the subject." 338 F. Supp. 2d at 1124 (citing *Moore v. Jas. H. Matthews & Co*., 550 F.2d 1207, 1214 (9th Cir. 1977) (the word "commodity" within Section 3 of the <u>Sherman Act</u> does not include cemetery lots).) Both *Souza* and *W. Sunview Props.* confirm the Sherman Act and Hawaii's statute do not purport to regulate the purchase of real property.

Flannery's cited cases are irrelevant because they simply confirm the Sherman Act may apply to conspiracies tangentially involving real property <u>*when the real property is directly tied to some other independent anti-competitive commercial activity*</u>.[1] Here, Defendants are mere landowners not in the <u>*business or trade*</u> of buying and selling real estate, and thus are not competitors like the brokers or landlords in Flannery's authorities.[2] At bottom, Plaintiff cannot identify a single case applying the Sherman Act to landowners and the sale of their property.

**B.    The Complaint Deficiently Alleges a Horizontal Price-Fixing Agreement**

**1.    Flannery fails to allege a horizontal price-fixing agreement**

As detailed in Defendants' opening brief, Flannery's Complaint offers no allegations plausibly suggesting the existence of a price-fixing conspiracy because Flannery fails to allege the required elements of any such agreement. Mot. at 8-10. The Complaint fails to allege that any of the Defendants agreed to establish a minimum price below which Defendants would not sell

---

[1] *Fisher v. City of Berkeley,* 475 U.S. 260, 266 (1986) (dicta that rent setting by landlords, even if benevolent, would still violate antitrust statutes); *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 235 (1980) (challenging brokers' "systematic use of fixed commission rates, widespread fee splitting, suppression of market information useful to buyers and sellers…"); *Cont. Buyers League v. F & F Inv.*, 300 F. Supp. 210, 215-17 (N.D. Ill. 1969), *aff'd*, 420 F.2d 1191 (7th Cir. 1970)(challenging anticompetitive effects of racial "blockbusting" by real estate investment firm); *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) (bid-rigging at auctions on foreclosed real estate constitutes per se horizontal price-fixing agreement).

[2] Flannery's novel and expansive interpretation of the Sherman Act would prohibit prospective local sellers from conducting basic due diligence, such as speaking to other community members to investigate if they are being taken advantage of, particularly when Flannery's identity and intentions are unknown.

their land (and any such agreement would have been impossible, both because land is by nature unique and because significant ancillary terms differed amongst the various involved properties). Moreover, the Complaint does not (and cannot) allege that any of the Defendants agreed to restrict "production" of the land that Flannery wished to purchase. Unable to allege any plausible price-fixing agreement, Flannery's Opposition instead relies on inapplicable authority and vague, conclusory allegations that fail to satisfy *Twombly*.

First, Flannery asserts that Defendants agreed "to only sell their properties at artificially high and supracompetitive levels." Opp. at 6 (citing Compl. ¶ 317). This is absurd as Flannery itself emphasizes that it offered prices to Defendants so far above market value that it was effectively the only potential buyer. *See*, *e.g.*, Compl. ¶¶ 170-174, 274. Having already sold or declined to sell at the artificially high prices offered by Flannery, Defendants had no need to conspire because Flannery kept raising its offers on its own. Nor do the cases Plaintiff cites support its position. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010) (four competitors controlling 90% of nationwide text messages simultaneously changed their pricing structures to reflect identical increased prices despite declining costs); *B & R Supermarket, Inc. v. Visa, Inc.*, 2016 WL 5725010, at *6 (N.D. Cal. Sept. 30, 2016) (MasterCard official announced awareness that Visa, American Express, and Discover would implement the same pricing policy as MasterCard and they did on the same day); *see also Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990) (competitors agreed to not compete in the same territories).

Second, Flannery repeatedly relies on a single 2022 text message from non-defendant Richard Hamilton to now-settled defendant Kirk Beebe that "the remaining property owners should be in agreement on what we would want to sell our properties." Opp. at 4, 7. But this text does not demonstrate that these individuals (neither of whom are moving Defendants) ever reached any agreement. And Flannery's allegations of widely-divergent terms of concluded and offered transactions show that there was no agreement. The only plausible reading of this text, sent because "[Flannery attorney] Melnyk is bulling the last of the property owners" (Dkt. 1, Ex. A), is that these landowners should consider an agreement to keep each other informed as to the prices they might find acceptable for their unique parcels of land (in the face of Flannery's

mysterious voracity). As confirmed by Flannery's own cited legal authority, providing price information to permit conscious parallelism is neither illegal nor sufficient to support a conclusion that an illegal agreement was reached. *B & R Supermarket*, 2016 WL 57250150, at *5. In any case, property sales and prices are public record.

*Third*, Flannery fails to rebut that the "smoking gun" evidence, ostensibly supporting a conspiracy starting in 2018, dates from 2022. Unlike the authority Flannery cites, in which later-in-time communications rationally supported an inference that the conspiracy had begun earlier (Opp. at 8), here, by contrast, the cited evidence suggests, at most, that Defendants might enter an agreement in the future. *See e.g.*, Dkt. 1, Ex. A (owners "should" reach agreement on prices for which they "would" sell). This does not plausibly demonstrate a conspiracy at or before 2022.

### 2. The alleged "plus factors" do not establish circumstantial evidence

Flannery alleges that "plus factors" are circumstantial evidence that competitors agreed to fix prices. None of the "plus factors" support Flannery's position. On a motion to dismiss, the Court must follow the rule that "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a §1 violation." *In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (citations and internal quotations omitted).

**Defendants are not competitors.** Each "plus factor" cited assumes that Defendants are competitors. The circumstances alleged in the complaint (unique negotiations for unique pieces of real estate) show they are not. Defendants are not seeking to sell the same thing to Flannery in a competition where they try to prevail over other sellers. In fact, Flannery alleges that it has a bottomless, deep pocket to pay whatever needs to be paid to acquire all the land it wants.[3]

**Suspicious Communications.** These statements relied on by Flannery are not a "plus

---

[3] Flannery also assumes—without citation to any authority—that Defendants were obligated to compete with each other to gain Flannery's favor. Yet "the Sherman Act imposes no duty on firms to compete vigorously, or for that matter at all, in price." *In re Text Messaging Antitrust Litigation*, 782 F.3d at 874. Defendants' opening brief cites authority establishing that a landowner in California has the right to sell or not sell as he or she sees fit. Flannery dismisses these authorities as "not antitrust cases." This misses the point: Flannery assumes that Defendants were obligated to sell their properties and that the refusal to do so is inherently suspicious. Basic California property law disproves that assumption.

factor" for the same reasons they are not direct evidence of an agreement. Mot. at 8.

**Common Motive.** Flannery claims all Defendants had the common motive to "to drive up prices." This proves both too little and too much. First, it assumes that all Defendants were willing sellers, and disregards that some Defendants wanted to keep their land, as is their right. Complaint, ¶ 16. Moreover, *every* seller presumably wants the best price for what it sells. This plus factor would apply to every commercial transaction. Flannery cites no authority that prospective sellers' desire to maximize their sales prices is a legitimate plus factor. "Allegations of parallel conduct—though recast as common motive—is insufficient to plead a §1 violation." *In re Musical Instruments,* 798 F.3d at 1195.

**Actions Against Self-Interest.** Flannery asserts that Defendants "acted against self-interest" by rejecting Flannery's lucrative offers. For this conduct to constitute a plus factor, Flannery must show that "defendants' behavior would not be reasonable or explicable (i.e., not in their legitimate economic self-interest) if they were not conspiring to fix prices…" *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 572 (11th Cir. 1998). Flannery fails this test. First, it again assumes that Defendants were *obligated* to sell when given a lucrative offer and ignores that some Defendants may have wanted to keep their land. Second, that some Defendants who wanted to sell may have sat back and waited while Flannery repeatedly raised its offers is equally consistent with an individual seller seeking to maximize its price. Complaint, ¶¶ 169-174 (describing Flannery's practice of unilaterally and repeatedly raising its offering prices).

**Opportunities to Collude.** This plus factor is innuendo, not fact. It demonizes the happenstance of family membership or home address, all without ever alleging any facts showing that misconduct ever occurred. The mere existence of a climate in which a conspiracy might be formed is not enough. *Venture Tech., Inc. v. Nat'l Fuel Gas Co.*, 685 F.2d 41, 47 (2d Cir. 1982). Flannery fails here because its argument leaves the Court with an equally plausible inference of conduct not rising to the level of an agreement among Defendants. *In re Musical Instruments,* 798 F.3d at 1194.

**Information Exchanges.** Next, Flannery claims Defendants engaged in improper information exchanges, presumably telling each other about Flannery's negotiation strategy. This

conduct—even if it occurred—falls short of the standard to make it a relevant plus factor. First, all property sales and prices paid are public information, available on various online platforms. Second, Flannery alleges Defendants committed a *per se* antitrust violation. Long settled law establishes that "the dissemination of price information is not itself a *per se* violation of the Sherman Act." *United States v. Citizens and S. Nat'l Bank*, 422 U.S. 86, 113 (1975). Flannery alleges that it aggressively campaigned to acquire as much property as possible in Solano County. That landowners (and the media and the U.S. government) may have discussed this fact and Flannery's proven strategy of raising the prices it offers when landowners push back, proves nothing. *United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive.").

**Cumulative consideration.** Finally, Flannery argues that even if the individual "plus factors" are not enough, the Court should consider the cumulative effect of everything that is alleged. That does nothing here. Flannery's analysis is legally flawed, because it presumes Defendants were competitors, and factually insufficient because the conduct they do cite "just as easily suggest[s] rational, legal business behavior by the defendants" *In re Musical Instruments,* 798 F. 3d at 1194. Taking the claims together does not solve these basic flaws.

   **C.**  **Flannery Lacks Antitrust Standing**

     **1.**  **Flannery Does Not Establish Antitrust Injury to Competition**

Flannery's injuries are not the type antitrust laws are intended to forestall. Mot. at 13. Flannery argues that its overcharges are "quintessential" antitrust injuries.[4] But this point assumes that the overcharges are borne by purchasers due to price-fixing among <u>*competitors in the same market*</u>. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)(Antitrust injury requires that "injured party be a participant in the same market as the alleged malefactors.") (citation omitted). Flannery fails to identify any authority construing landowners as competitors or engaged in trade or commerce simply by responding to Flannery's

---

[4] Flannery fails to cite to any authority that lost profits constitute "quintessential" antitrust injuries.

solicitations. Because Defendants are not competitors in selling (or opting not to sell) their land, their actions cannot give rise to antitrust injury.[5]

### 2.     Flannery Has No Direct Damages Based On Price-Fixing Agreement

The Opposition misses the crux of the "directness" inquiry, which is whether it is plausible that Flannery will establish "not a mere causal link, but a direct effect" on prices due to Defendants' alleged conduct. *City of Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 268 (3d Cir. 1998) (citation omitted); *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.,* 951 F.2d 1158, 1162 (9th Cir. 1991) ("Directness in the antitrust context means 'close in the chain of causation.'") (citations omitted).

Because Flannery purchased land from *some* Defendants, Flannery presumes, without substantive analysis, the ultimate legal facts that Defendants irrevocably sought to sell their land in the first instance and Flannery thus incurred overcharges as a result of collusion. Flannery fails to address that Defendants' demand for supracompetitive prices or refusal to sell may be readily explained by the undisputed fact that Defendants were not actively looking to sell and therefore were not motivated sellers. Defendants may have had myriad other non-economic reasons for their decision not to sell their land: the lack of transparency regarding who or what Flannery is and its intentions deterred sales or warranted a premium; Flannery's own aggressive tactics indicating the land is more valuable than previously thought so Defendants negotiated accordingly; and the present high-profile litigation, itself, could deter landowners from engaging with Flannery or else risk a lawsuit.

### 3.     Flannery's Damages Are Inherently Speculative

Flannery also misconstrues the test for whether damages are too speculative to establish standing. The central questions are whether: "(1) the alleged injury was indirect; and (2) 'the alleged effects ... may have been produced by independent factors.'" *Am. Ad Mgmt.,* 190 F.3d at

---

[5] Notably, "the proper focus [of antitrust injury] is on whether the [Plaintiff's] injuries flow from a decrease in competition among *producers.*" *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 457 (9th Cir. 2021). This case concerns a finite amount of land owned by Defendants. Defendants therefore cannot reasonably be considered "producers" nor are they capable of creating the type of overcharges the Sherman Act was intended to address; i.e., through restriction of output. *Id*. at 458 ("Producers restrict output and raise prices, and consumers—direct purchasers from the cartel—pay an overcharge (a supracompetitive price) to purchase the producers' goods or services.").

1059 (citations omitted). "Once it becomes clear—especially early in the litigation—that damage measurements will be unduly speculative, the courts generally dismiss the damage suit." *City of Oakland*, 20 F.4th 441, 460–61 (9th Cir. 2021) (citation omitted).

It is clear at this early stage in litigation that any damages measurements are inherently and unduly speculative. Family-owned real estate is unlike typical goods. Flannery's alleged damages are purely speculative to the extent they presume that any non-selling Defendant would have sold their land at some unspecified price-point.[6] Similarly, Flannery's claim that it was forced to pay a premium based on a price-fixing conspiracy by motivated sellers, as opposed to it offering a premium to bring disinterested parties to the table, is speculation. Flannery's damages are too speculative as a matter of law to survive a motion to dismiss.

**D.     The Allegations Against Certain Defendants are Insufficient Under *Twombly***

The Complaint contains no factual allegations against certain individual Defendants.[7] Mot. at 18. These defendants should be dismissed. *Iqbal* requires that a plaintiff make a "plausible claim for relief." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1017 (N.D. Cal. 2010). "Plausible" means "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads <u>*factual content*</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663 (citing *Twombly,* 550 U.S. at 570) (emphasis added). Yet Flannery has alleged no "factual content" that allows this Court to make a "reasonable inference" that these defendants consciously joined and played a role in a price fixing conspiracy. *Twombly,* 550 U.S. at 556; *In re TFT-LCD Antitrust Litig.,* 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (complaint must allege "each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an

---

[6] Flannery's attempt to distinguish *City of Oakland's* holding that non-purchaser damages are inherently speculative also fails. Despite Flannery's conclusory assertion of "overcharges paid to Conspirators and third parties, as well as lost profits resulting from the inability to complete prospective purchases," (Opp. at 17). Flannery cannot explain how it comes to that conclusion, or how an expert might support the conclusion, that these alleged overcharges or refusals to deal did not arise from independent factors.

[7] William Dietrich, Paul Dietrich, John Alsop, Nancy Roberts, Ronald Gurule, Ned Anderson, either Neil Anderson (both), Maryn Anderson, Glenn Anderson, Janet Blegen, Robert Anderson, Stan Anderson, Lynne Mahre, Sharon Totman, Amber Bauman, Christopher Wycoff, and Janet Zanardi.

agreement and a conscious decision by each defendant to join it.") (citation omitted).[8]

Flannery inappropriately relies on specific paragraph numbers (Opp. at 20) along with the contention that the complaint, taken as a whole, plausibly alleges each Defendant's participation. Flannery's citations inappropriately rely on artificially lumping defendants together, such as the "Anderson defendants." These are separate persons with independent legal interests. Flannery does not reasonably allege that these individuals joined a conspiracy or authorized joining a conspiracy. Flannery must give "factual content" that ties each individual to the conspiracy. *Id*.

For example, Flannery cites ¶¶ 219-220 to tie William Dietrich, John Alsop, Janet Zanardi, Paul Dietrich, and Nancy Roberts to the supposed conspiracy. Yet ¶ 219 alleges that Flannery delivered offers to these "Anderson Defendants." And ¶ 220 innocuously alleges that Flannery's unnamed attorney had discussions with Paul and Nancy during which counsel (1) believed they were "de facto speakers" for the group and (2) formed the impression of a "recurring theme" that they would sell only if Ian Anderson sold first. This is far from alleging a covert price-fixing conspiracy. Indeed, there is not even an attempt to sell. Nor does it allege a conscious decision by these defendants to join the conspiracy. Rather, this alleges a feeling that Flannery's attorney had that two defendants were uncomfortable selling until they saw someone else go first. *Kendall v. Visa USA, Inc.,* 518 F.3d 1042, 1049 (9th Cir. 2008) ("[a]llegations of facts that could just as easily suggest rational, legal business behavior . . . as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws."); *In re Musical Instruments*, 798 F.3d at 1194.

Flannery incorrectly relies on *SRAM* and *In re CRT* for its argument that it does not have to make detailed, defendant-by-defendant factual allegations. *SRAM* directly states that Plaintiffs "need to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy." *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 903–04 (N.D. Cal. 2008). While Flannery relies on *CRT* for the proposition that the complaint should be taken a whole, this is

---

[8] Oddly, Flannery argues that Defendants seek a heightened pleading standard. This is not the case. Defendants rely on case law under Rule 8.  *See Flores v. EMC Mortg. Co.,* 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (to satisfy Rule 8, a complaint must "distinguish adequately claims and alleged wrongs among defendants and others" and state facts of "defendants' specific wrongdoing").

stated as applicable in "complex, multinational, conspiracy cases." *In re CRT,* 738 F. Supp. 2d at 1018-19.[9] There, the highly factual complaints were based upon a grand jury indictment that detailed a multinational, intricate price fixing conspiracy, hundreds of meetings between competitors, joint ventures and defendants' high market concentration. Here, Defendants are individuals all located in one county. The scant facts alleged of conversations with its agents, or between the numerous individual landowners, their neighbors and families, and in some cases, no alleged discussions at all (*e.g.*, William Dietrich and Janet Zanardi) do not remotely compare to these cases. *In re CRT,* 738 F. Supp. 2d at 1017 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.") (citation omitted).

### E. Defendants Acting on Behalf of LLCs/Trusts Cannot be Sued Personally

Defendants' brief explained that Defendants, acting on behalf of an entity, cannot be personally liable unless Flannery pierces the veil of the entity or provides some factual allegations to disregard the trust or corporate entity. *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555); Mot. at 17. Without legal support, Flannery simply maintains that its conclusory allegations of a conspiracy is sufficient. This position should be rejected.

### F. The Cartwright Act and UCL Claims Falter with the Sherman Act Claim

Defendants' brief explained that where Flannery's Sherman Act claim fails, the accompanying California Cartwright Act claim and UCL Claims (dependent on the same alleged conduct) must also fail. Mot. at 19. Flannery does not meaningfully contend otherwise.[10]

## III. CONCLUSION

For the numerous reasons cited above, the motion should be granted. Leave to amend should be rejected as Flannery has not offered additional facts. *See Deutsch v. Turner Corp.,* 324 F.3d 692, 718 (9th Cir. 2003) (leave to amend is futile if plaintiff does not identify additional facts to plead); *In re Silicon Graphics, Inc. Secs. Litig.,* 183 F.3d 970, 991 (9th Cir. 1999) (same).

---

[9] Flannery similarly relies on *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) but *Soo Park* was not a multidefendant antitrust action but rather a 1983 action.

[10] Opp. at 20 (*Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 324 F. Supp. 3d 1142, 1156–57 (S.D. Cal. 2018) "the analysis under the Cartwright Act is identical to that under the Sherman Act." (citation omitted)).

| | |
|---|---|
| Dated: August 4, 2023 | GLYNN, FINLEY, MORTL, HANLON & FRIEDENBERG, LLP<br>CLEMENT L. GLYNN<br>ADAM FRIEDENBERG<br>ROBERT C. PHELPS<br>MORGAN K. LOPEZ<br>One Walnut Creek Center<br>100 Pringle Avenue, Suite 500<br>Walnut Creek, CA  94596<br><br>By   */s/ Morgan K. Lopez*<br>Attorneys for Defendants Ian Anderson (Individually and as Trustee of the Ian and Margaret Anderson Family Trust), Margaret Anderson (Individually and as Trustee of the Ian and Margaret Anderson Family Trust), Neil Anderson, and Maryn Anderson |
| Dated: August 4, 2023 | DAVIS WRIGHT TREMAINE LLP<br>ALLISON A. DAVIS<br>SANJAY M. NANGIA<br>50 California Street, 23rd Floor<br>San Francisco, CA 94111<br><br>By: */s/Allison A. Davis*<br>Attorneys for Defendant<br>WILLIAM DIETRICH<br>(individually and as trustee of the Child's Trust FBO William C. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich) |

| | | |
|---|---|---|
| Dated: August 4, 2023 | | BUCHALTER<br>KEVIN T. COLLINS<br>PHILLIP CHAN<br>ADAM SMITH<br>NATALIYA SHTEVNINA<br>500 Capitol Mall, Suite 1900<br>Sacramento, CA  95814<br><br>By   /s/ *Kevin T. Collins*<br>Attorneys for Defendants<br>Ned Anderson (individually and as trustee of the Ned Kirby Anderson Trust), Neil Anderson, Glenn Anderson, Janet Blegen (individually and as trustee of the Janet Elizabeth Blegen Separate Property Trust), Robert Anderson (individually and as trustee of the Robert Todd Anderson Living Trust), Stan Anderson, Lynne Mahre, Sharon Totman, Amber Bauman and Christopher Wycoff |
| Dated: August 4, 2023 | | RIMON, P.C.<br>GABRIEL G. GREGG<br>800 Oak Grove Avenue, Suite 250<br>Menlo Park, California 94025<br><br>By   /s/ *Gabriel G. Gregg*<br>Attorneys for the Mahoney Defendants |
| Dated:  August 4, 2023 | | HOGE FENTON JONES & APPEL INC.<br>STEVEN J. KAHN<br>ALEXANDER H. RAMON<br><br>By   /s/ *Steven J. Kahn*<br>Attorneys for Defendant Ronald Gurule (individually and as trustee of the Ronald Gurule 2013 Family Trust) |

Dated: August 4, 2023

ROPERS MAJESKI PC
MICHAEL J. IOANNOU (SBN: 95208)
DAVID B. DRAPER (SBN: 107790)
KEVIN W. ISAACSON (SBN: 281067)
333 West Santa Clara St., Suite 910
San Jose CA 95113

By  */s/ Michael J. Ioannou*
Attorneys for Paul Dietrich (individually and as trustee of the Child's Trust FBO Paul S. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich; John Alsop (individually and as trustee of the John G. Alsop Living Trust), Nancy Roberts (individually and as trustee of the Nancy C. Roberts Living Trust), Janet Zanardi (individually and as trustee of Trust A under the Zanardi Revocable Trust)

**ATTESTATION**

I, Allison A. Davis, attest that for all conformed signatures indicated by a "/s/," the signatory has concurred in the filing of this document.

DATED: August 4, 2023

*s/ Allison A. Davis*
Allison A. Davis