1  BUCHALTER
   A Professional Corporation
2  KEVIN T. COLLINS (SBN:  185427)
   ADAM SMITH (SBN: 322035)
3  NATALIYA SHTEVNINA (SBN: 339094)
   500 Capitol Mall, Suite 1900
4  Sacramento, CA  95814
   Telephone: 916.945.5170
5  Email: kcollins@buchalter.com
           apsmith@buchalter.com
6          nshtevnina@buchalter.com

7  Attorneys for Defendants
   Ned Anderson (individually and as trustee of the Ned Kirby Anderson Trust), Neil Anderson,
8  Glenn Anderson, Janet Blegen (individually and as trustee of the Janet Elizabeth Blegen Separate
   Property Trust), Robert Anderson (individually and as trustee of the Robert Todd Anderson Living
9  Trust), Stan Anderson, Lynne Mahre, Sharon Totman, Amber Bauman and Christopher Wycoff

10 GLYNN, FINLEY, MORTL,                    HOGE, FENTON, JONES & APPEL, INC.
   HANLON & FRIEDENBERG, LLP                STEVEN J. KAHN
11 CLEMENT L. GLYNN, Bar No. 57117          ALEXANDER H. RAMON
   cglynn@glynnfinley.com                   6801 Koll Center Parkway, Suite 210
12 ADAM FRIEDENBERG, Bar No. 205778         Pleasanton, CA 94566
   afriedenberg@glynnfinley.com             Telephone: (925) 224-7780
13 ROBERT C. PHELPS, Bar No. 106666         steven.kahn@hogefenton.com
   bphelps@glynnfinley.com                  alex.ramon@hogefenton.com
14 MORGAN K. LOPEZ, Bar No. 215513
   mlopez@glynnfinley.com                   Attorneys for Defendant
15 One Walnut Creek Center                  Ronald Gurule (individually and as trustee of
   100 Pringle Avenue, Suite 500            the Ronald Gurule 2013 Family Trust)
16 Walnut Creek, CA 94596
   Telephone: (925) 210-2800                DAVIS WRIGHT TREMAINE LLP
17 Facsimile: (925) 945-1975                ALLISON A. DAVIS
                                            SANJAY M. NANGIA
18 Attorneys for Defendants Ian Anderson    50 California Street, 23rd Floor
   (Individually and as Trustee of the Ian and   San Francisco, CA 94111
19 Margaret Anderson Family Trust), Margaret     Telephone: (415) 276-6500
   Anderson (Individually and as Trustee of the  allisondavis@dwt.com
20 Ian and Margaret Anderson Family Trust),  sanjaynangia@dwt.com
   Neil Anderson, and Maryn Anderson
21                                          Attorneys for Defendant
                                            WILLIAM DIETRICH
22                                          (individually and as trustee of the Child's Trust
                                            FBO William C. Dietrich, a subtrust under the
23                                          Trust of William C. Dietrich and Ivanna S.
                                            Dietrich)
24

25

26

27

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

RIMON, P.C.
GABRIEL G. GREGG (SBN 187333)
gabriel.gregg@rimonlaw.com
800 Oak Grove Avenue, Suite 250
Menlo Park, California 94025
Telephone: 650.461.4433
Facsimile: 650.461.4433

Attorneys for the
MAHONEY DEFENDANTS

ROPERS MAJESKI PC
MICHAEL J. IOANNOU (SBN: 95208)
DAVID B. DRAPER (SBN: 107790)
KEVIN W. ISAACSON (SBN: 281067)
333 West Santa Clara St., Suite 910
San Jose CA 95113
Telephone: (650) 814 5987
david.draper@ropers.com
Attorneys for Defendants
Paul Dietrich (individually and as trustee of
the Child's Trust FBO Paul S. Dietrich, a
subtrust under the Trust of William C. Dietrich
and Ivanna S. Dietrich; John Alsop
(individually and as trustee of the John G.
Alsop Living Trust), Nancy Roberts
(individually and as trustee of the Nancy C.
Roberts Living Trust), Janet Zanardi
(individually and as trustee of Trust A under
the Zanardi Revocable Trust)

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLANNERY ASSOCIATES LLC, | **Case No. 2:23-cv-00927-TLN-AC** |
| Plaintiff, | **JOINT STATEMENT RE DISCOVERY DISAGREEMENT – DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |
| vs. | *[L.R. 251(c)]* |
| BARNES FAMILY RANCH ASSOCIATES, LLC, LAMBIE RANCH ASSOCIATES, LLC, KIRBY HILL ASSOCIATES, LLC, BARNES FAMILY RANCH CORPORATION, LAMBIE RANCH CORPORATION, KIRBY HILL CORPORATION, KIRK BEEBE, SUSAN BEEBE FURAY, MURRAY BANKHEAD (INDIVIDUALLY AND AS TRUSTEE FOR THE BAUMBACH FAMILY TRUST), MICHAEL RICE (INDIVIDUALLY AND AS TRUSTEE FOR THE RICE FAMILY TRUST); CHRISTINE MAHONEY LIMITED PARTNERSHIP, CHRISTINE MAHONEY LIMITED PARTNERSHIP MANAGEMENT COMPANY, EMIGH LAND LP, EL GENERAL PARTNER, LLC, CHRISTINE MAHONEY (INDIVIDUALLY AND AS TRUSTEE OF THE MAHONEY 2005 FAMILY TRUST), DANIEL MAHONEY (INDIVIDUALLY AND AS TRUSTEE OF THE MAHONEY 2005 FAMILY TRUST); IAN ANDERSON (INDIVIDUALLY AND AS | **Hearing Date:** December 20, 2023<br>**Time:** 10:00 am<br>**Dept.:** Courtroom 26, 8th Floor<br>**Before:** Hon. Allison Claire<br><br>**Trial Date:** None Set |

TRUSTEE OF THE IAN AND MARGARET
ANDERSON FAMILY TRUST), MARGARET
ANDERSON (INDIVIDUALLY AND AS
TRUSTEE OF THE IAN AND MARGARET
ANDERSON FAMILY TRUST), NEIL
ANDERSON, MARYN ANDERSON,
WILLIAM DIETRICH (INDIVIDUALLY
AND AS TRUSTEE OF THE CHILD'S
TRUST FBO WILLIAM C. DIETRICH, A
SUBTRUST UNDER THE TRUST OF
WILLIAM C. DIETRICH AND IVANNA S.
DIETRICH), PAUL DIETRICH
(INDIVIDUALLY AND AS TRUSTEE OF
THE CHILD'S TRUST FBO PAUL S.
DIETRICH, A SUBTRUST UNDER THE
TRUST OF WILLIAM C. DIETRICH AND
IVANNA S. DIETRICH), JOHN ALSOP
(INDIVIDUALLY AND AS TRUSTEE OF
THE JOHN G. ALSOP LIVING TRUST),
NANCY ROBERTS (INDIVIDUALLY AND
AS TRUSTEE OF THE NANCY C. ROBERTS
LIVING TRUST), JANET ZANARDI
(INDIVIDUALLY AND AS TRUSTEE OF
TRUST A UNDER THE ZANARDI
REVOCABLE TRUST), RONALD GURULE
(INDIVIDUALLY AND AS TRUSTEE OF
THE RONALD GURULE 2013 FAMILY
TRUST), RICHARD ANDERSON
(INDIVIDUALLY AND AS TRUSTEE OF
THE REA PROPERTIES TRUST), DAVID
ANDERSON (INDIVIDUALLY AND AS
TRUSTEE OF THE IRWIN E. ANDERSON
SURVIVOR'S TRUST), DEBORAH
WORKMAN (INDIVIDUALLY AND AS
TRUSTEE OF THE IRWIN E. ANDERSON
SURVIVOR'S TRUST), CAROL HOFFMAN
(INDIVIDUALLY AND AS TRUSTEE OF
THE IRWIN E. ANDERSON SURVIVOR'S
TRUST), NED ANDERSON
(INDIVIDUALLY AND AS TRUSTEE OF
THE NED KIRBY ANDERSON TRUST),
NEIL ANDERSON, GLENN ANDERSON,
JANET BLEGEN (INDIVIDUALLY AND AS
TRUSTEE OF THE JANET ELIZABETH
BLEGEN SEPARATE PROPERTY TRUST),
ROBERT ANDERSON (INDIVIDUALLY
AND AS TRUSTEE OF THE ROBERT TODD
ANDERSON LIVING TRUST), STAN
ANDERSON, LYNNE MAHRE, SHARON
TOTMAN, AMBER BAUMAN,
CHRISTOPHER WYCOFF;
AND JOHN DOES 1-50,

Defendants.

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1    Pursuant to Eastern District of California Local Rule 251(c), the parties respectfully submit

2  the following Joint Statement re Discovery Disagreement in connection with the Notice of Motion

3  and Motion for Protective Order ("Motion," Dkt. 91) filed by the executing defendants, who are all

4  of the remaining defendants in this action ("Defendants").  Defendants seek a protective order

5  staying discovery in this action on the grounds that Defendants' Joint Motion to Dismiss[1] (Dkt. 78)

6  the complaint filed by Plaintiff Flannery Associates ("Plaintiff" or "Flannery") remains under

7  submission and pending and is highly likely to dispose of this action.  In particular, Defendants

8  seek a protective order staying their responses to the first sets of requests for production of

9  documents ("RFPs") served by Plaintiff on Defendants.  Defendants also seek to stay subpoenas

10  served by Plaintiff on various third parties.

11    Flannery opposes Defendants' request for a blanket stay of discovery because Defendants

12  cannot meet their heavy burden to show clear and convincing evidence that their motion to dismiss

13  will be granted, or that Flannery's targeted party or third-party discovery will impose any undue

14  burden on Defendants.  Flannery's position is that discovery should proceed as envisioned by the

15  Federal Rules of Civil Procedure.

16  **I.    THE DETAILS OF THE CONFERENCE *[L.R. 251(c)(1)]***

17    **A.    Defendants' Statement**

18    Counsel for the parties met and conferred in connection with the Motion via remote

19  meeting on November 15, 2023, but were unable to resolve the discovery disputes set forth herein.

20    Previously, counsel for the parties met and conferred relating to the RFPs directed at

21  Defendants as follows.  Plaintiff electronically sent written RFPs on all Defendants on September

22  7, 2023, five days prior to the parties' Rule 26(f) conference. Each RFP set contained 10 requests

23  for production.   These were obviously premature.   Indeed, Plaintiff's counsel stated that the

24  requests were being sent "in the hope of making the [Rule 26] discussion more productive"

25  because defense counsel had already told them that their position was that, to obviate unnecessary

26  expense, all discovery should be stayed pending the Court's decision on the Motion to Dismiss.  In

---

27  [1] Executing Defendant Richard Anderson answered the complaint and did not move to dismiss.

28  (ECF No. 53.)

recognition of this position, Plaintiff's pre-conference correspondence also offered a compromise: it would agree to stay discovery generally, provided the Defendants would agree to respond to the first three requests for production categories.  (Smith Decl., ¶ 3.)

The parties met and conferred over two sessions.  During the first session, Defendants told Plaintiff that they were inclined to recommend the proposed compromise to their clients subject to conditions.  First, because the requests were extremely broad and sought "all communications," this category would extend to intra-family communications, or communications with other so-called conspirators (there are many inter-family friendships across the farming community) that did not pertain to the potential sale of land.  Plaintiff agreed that the requests should not be interpreted so broadly.  (Smith Decl., ¶ 4.)

Second, one defense counsel made clear that he would not agree to any discovery that defined the defendants as "CONSPIRATORS."  Plaintiff suggested this could be revised to address this concern.  (Smith Decl., ¶ 5.)

Third, defense counsel proposed that defendants be permitted to jointly serve three document requests.  Plaintiff's counsel agreed to this in principle but asked to see the three defense requests prior to the next meet-and-confer session.  Defense counsel complied with this request. On September 19, during their second meet and confer session, Plaintiff's lead counsel said he had reviewed the defense requests for production, which appeared "reasonable."  Both sides agreed that they would retain the right to object to any request, as in the normal case.  (Smith Decl., ¶ 6.)

On September 29, 2023, Plaintiff withdrew its proposed compromise regarding discovery phasing, at which point Defendants deemed the Rule 26(f) conference complete.  The Plaintiff failed, however, to re-serve its requests for production, or to modify the definitions in the manner discussed above.  Because Plaintiff now contends it properly served its requests, on October 18, 2023 Defendants filed the Motion, which stayed its obligations to respond to the RFPs.  (Smith Decl., ¶ 7.)

After the Rule 26 meet and confer process was completed, Plaintiff served 11 subpoenas on third parties with return dates in the first half of December.  On November 15, 2023, Defendants

1   requested that Plaintiff voluntarily agree to stay the third-party subpoenas until the pending Motion

2   to Dismiss is decided.  Plaintiff refused.  (Smith Decl., ¶ 8.)

3          Finally, while not directly relevant to this Motion, Defendants take issue with several

4   statements made by Plaintiff in its Statement below concerning scheduling the Rule 26(f)

5   conference.  First, despite the traditional obligation to do so, Plaintiff did not reach out to

6   Defendants to schedule a Rule 26(f) conference until July 31, 2023, well after its obligation to do

7   so pursuant to this Court's pretrial schedule (Dkt. 3, Section III). This delay led Defendants to

8   conclude that Plaintiff had determined to forego the Rule 26(f) conference, and the consequent

9   launch of discovery, pending the Motion to Dismiss, which had been filed on July 11, 2023 (Dkt.

10  78).  Second, upon Plaintiff's reach out, Defendants communicated their joint position that a Rule

11  26(f) conference was not necessary, and that discovery certainly should not commence pending the

12  Court's decision on the Motion to Dismiss.  When Plaintiff threatened a motion, Defendants agreed

13  to participate in the Rule 26(f) conference and, in good faith given counsel schedules, agreed to

14  attend at the earliest date, with a preference for an in-person meeting which then had to be adjusted

15  based on changed counsel schedules.  As noted above, at the two Rule 26(f) conferences, the main

16  topic of discussion was the "package" deal on discovery, which Defendants (and Plaintiff) agreed

17  to in principle, but which Plaintiff subsequently rejected unilaterally for spurious reasons. (Smith

18  Decl., ¶ 9.)

19         **B.      Plaintiff's Statement**

20         Defendants have engaged in a pattern of delay and misrepresentation since Flannery sought

21  to obtain the discovery to which it is entitled under the Federal Rules of Civil Procedure, and they

22  glaringly omit and misstate multiple aspects of the parties' discovery conferences.[2]

23         Defendants' delay tactics began when, in violation of Judge Nunley's Initial Pretrial

24  Scheduling Order, they repeatedly refused to confer with Flannery as required under Rule 26(f)

---

25  [2]  In doubling down on their assertions, Defendants submit a "declaration"—under penalty of
26  perjury—replete with improper content that should be ignored, including legal conclusions, opinions, and rank speculation on subjects beyond the declarant's personal knowledge, such as
27  Flannery's purported actions and motivations.  Such "self-serving," "derogatory attacks" and "argument[s]" in a "declaration" have "no place in this Court." *Reyna v. Astrue*, No. 1:09-cv-
28  00719-SMS, 2011 WL 6100609, at *8 (E.D. Cal. Dec. 6, 2011).

(and as required to open discovery).  Flannery sought the required conference as early as July 31, but Defendants violated their obligation to participate solely because they moved to dismiss. (Menitove Decl. Exs. 1, 2.)  Defendants only agreed to participate in the mandatory conference on August 15, after Flannery was forced to threaten a motion to compel their compliance.  (*Id.* Ex. 3.) Even after agreeing to comply with Rule 26(f), Defendants manufactured three weeks of additional delay by insisting that the conference occur in person and no earlier than September 8 (*id.* Ex. 4), only to abruptly reverse course five days before the scheduled in-person conference and demand a remote meeting ultimately held on September 12.  (*Id.* Ex. 5.)

On September 7, 2023, Flannery propounded an initial set of ten RFPs.  Contrary to Defendants' contention that those requests were "premature" (Defs.' Stmt. at 1), they were expressly authorized under Federal Rule of Civil Procedure 26(d)(2)(A).  Those requests are deemed served as of September 19, when the parties completed their Rule 26(f) conference.  (ECF No. 88 at 11.)  On September 7, Flannery also broached a potential compromise in which Defendants would produce documents responsive to its first three RFPs in exchange for staying Defendants' deadlines to respond to the remaining RFPs until the Court rules on the motion to dismiss.  (*Id.*)  Contrary to Defendants' assertions, Flannery never offered a general discovery stay.

Defendants correctly report that the parties' Rule 26(f) conference spanned two sessions on September 12 and 19 but continue to misrepresent the discussions therein.  As Flannery explained in its portion of the 26(f) report, Flannery never agreed to modify or re-serve its requests for production.  (*Id.* at 11-12.)  Instead, Flannery explained that the carve-outs in the definition of "Conspirator" were meant to exclude intra-family communications and that the plain text of the Sherman Act supports the RFPs' use of the term "Conspirator."  (*Id.*)  Flannery also agreed that Defendants need not produce material that Flannery already possesses and that production would be subject to a protective order regarding confidential information.  (Menitove Decl. ¶¶ 7-8.)

Defendants also misrepresent the parties' efforts to reach a compromise regarding limited discovery.  During the September 12 conference, Defendants proposed to jointly serve three RFPs on Flannery but failed to provide their proposed requests until an hour before the second session on September 19, despite representing to Flannery that they would endeavor to deliver proposed

requests by September 15.  (ECF No. 88 at 12.)  At that session, counsel for Flannery noted that they would need to consult their client prior to any agreement.  (*Id.*)  After the conference, Flannery declined the potential compromise because:  (i) Defendants' draft requests were so overbroad as to violate the spirit of the potential compromise; and (ii) counsel for Defendants Ian, Margaret, Neil, and Maryn Anderson called Flannery's counsel to attack Flannery's motives and threaten to go after Flannery "with a f***ing vengeance."  (*Id.* at 12-13.)  Flannery communicated both reasons to Defendants when declining the potential compromise on September 29.  (Menitove Decl. Ex. 6.)  Defendants omit both reasons here.

On October 18, Defendants moved to stay party discovery.  (ECF No. 85.)  Flannery proceeded to serve 11 targeted third-party subpoenas with return dates of December 11, December 13, and December 15.  (Menitove Decl. ¶¶ 10-12.)  On November 15, the parties met and conferred on Defendants' effort to stay party discovery, at which time Defendants raised their intention to seek a stay of third-party discovery—an issue they conceded was outside the scope of their motion. On November 22, Defendants filed an amended motion to raise both the party and third-party issues.  (ECF No. 91.)  During the parties' communications, Defendants requested that Flannery withdraw its subpoenas, but Flannery declined to grant Defendants such extraordinary relief to which they are not entitled.  (Menitove Decl. Ex. 7.)

## II.     THE NATURE OF THE ACTION AND FACTUAL DISPUTES *[L.R. 251(c)(2)]*

### A.     Defendants' Statement

The Defendants consider this action meritless as a matter of law and, as noted, was filed to burden property owners who refused to sell property with the expense of litigation.  Indeed, certain of the defendants sued by Plaintiff in this action have already succumbed and agreed to sell their property to Plaintiff.  The remaining defendants have filed a Motion to Dismiss the case, which is under submission and pending before Judge Nunley.  Defendants are aware of no factual disputes relevant to this Motion.  (Smith Decl., ¶ 10.)

This action involves alleged conduct in Solano County, which is primarily an agricultural county.  Many of the Defendants are farm families, some of whom have farmed the land for more

than a century.  It is how they make their livelihood, and it is who they are.  The importance of agriculture to them and to Solano County is beyond dispute.

In 2017, Plaintiff began buying up farmland in the County.  (Dkt. 1 ¶ 162.)  By its own admission, Plaintiff chose to pay massive premiums to acquire thousands of acres of Solano County farmland.  (*Id.* ¶¶ 12, 162.)  If a farmer chose not to sell, Plaintiff would sweeten the offer—in some cases multiple times.  (*See, e.g., id.* ¶¶ 169-174.)  Given Plaintiff's willingness to pay premiums, many farmers and landowners eventually relented and agreed to sell.  (*Id.* ¶ 165.)  To date, Plaintiff has purchased more than 62,000 acres from more than 500 owners in the County.  It reportedly has paid more than $800,000,000 to acquire the land.  (*Id.* ¶ 167.)  In a few years, Plaintiff has become the largest private landowner in the County.

But some farmers did not want to sell.  Unable to lure them with premium payments, Plaintiff resorted to pressure tactics—what United States Representative John Garamendi has publicly described as "mobster tactics."[3]  Many farmers farm land they own, plus land they lease from others.  As Plaintiff acquired more and more land, it was able to squeeze the farmers who wished to continue farming by terminating leases and evicting the holdout farmers from the land.  Another of Plaintiff's favored tactics was to play one family against another by misrepresenting the families' intentions regarding Plaintiff's offers, in hopes that families otherwise unwilling to sell would feel pressure not to disappoint their friend and neighbor.

In some instances, Plaintiff resorted to litigation.  For example, in *Gassy Lassy L.P. v. Barnes Family Ranch Corp., et al*, Case No.  34-2022-00329651, filed in Sacramento County Superior Court, Plaintiff sued the Barnes family for causes of action stemming from the family's unwillingness to sell to Plaintiff.[4]  There, eight branches of descendants owned that land.  Seven of the eight wished to continue to farm and the eighth wished to sell.  So, Plaintiff decided to divide-and-conquer, acquiring the one-eighth share and then suing the other seven.  Once litigation was

---

[3] *See* CBS Bay Area *Silicon Valley billionaires identified as mystery group buying Solano County land for new city* (Sept. 1, 2023) https://www.cbsnews.com/sanfrancisco/news/solano-county-land-purchase-mystery-flannery-associates-silicon-valley-billionaires.

[4] Certain of those defendants were also named as defendants in this case.

1  filed, the tactics were clear:  Plaintiff would use the expense of litigation to drive the farmers to

2  surrender.  The farmers' only offense was their desire *not to sell* land their families had, in some

3  cases, owned for generations. (Smith Decl., ¶ 11.)

4  Plaintiff used similar strong-arm tactics in its cases against the Hamilton family filed in

5  Solano County Superior Court.  *See, e.g.*, *Arran LLC et al. v. Richard Hamilton, et al.*, Case No.

6  FCS059348.  In that litigation, Plaintiff acquired a membership interest in the Hamilton's family

7  land-holding entity and filed suit against the remaining family members.  The impetus of the suit

8  was that the Hamiltons had sought to lease some of their holdings for agriculture and sell others for

9  conservation easements, rather than sell to Plaintiff.  In that suit, Plaintiff's lawyers recognized that

10  the conservation easements appealed to the Hamiltons because they desired to continue farming the

11  land, as they had for more than fifty years.  Nonetheless, Plaintiff alleged that the Hamiltons should

12  have accepted Plaintiff's offer instead, because it was too good to refuse.  Not surprisingly,

13  Plaintiff has reportedly settled its litigation against Solano County families not for money damages,

14  but by negotiating deals that allowed Plaintiff to purchase the land it had otherwise been unable to

15  acquire.[5] (Smith Decl., ¶ 12.)

16  The current case takes Plaintiff's pressure tactics to a new level.  Even though land is not a

17  commodity subject to the antitrust laws, Plaintiff alleges that the defendants (and others) conspired

18  to fix prices on their land, and that this has caused Plaintiff to overpay for land it has acquired.  As

19  Plaintiff itself proclaims that it was intentionally paying premium prices to amass its huge acreage,

20  the assertion is pure fiction, and Plaintiff knows it is.  Indeed, its CEO, Jan Sramek, recently told

21  KGO: "I don't think [speculation is] what happened. I think what happened is we went to a lot of

22  landowners and we offered them a premium, a significant premium several times over market

23  values. And many of those landowners looked at that and said, this is a great deal and I would like

24  to take it."[6]  Plaintiff alleges it has "smoking gun" evidence of price-fixing, but that is pure

---

25  [5] Defendants respectfully request that the Court take judicial notice of these cases pursuant to Fed.
26  R. Evid. 201.

27  [6] Stephanie Sierra, *EXCLUSIVE:  CEO behind massive Solano Co. land grab shares vision for new
28  'most walkable' city*, Real Estate (Sept. 21, 2023) https://abc7news.com/flannery-associates-ceo-
jan-sramek-new-solano-county-city-travis-airforce-base-farmland/13812726.

*(cont'd)*

1  hyperbole, meant to intimidate.

2      The essence of Plaintiff's case is that the defendants' refusal to sell is a violation of the
3  antitrust laws, which is contrary to law.

4      All of Plaintiff's tactics were conducted under a veil of secrecy.  County officials, the
5  Federal Government, and regular citizens were concerned that this massive land acquisition might
6  be part of efforts by a foreign power such as China to acquire land near Travis AFB, a critical
7  military base.  Then the New York Times pulled back the curtain on August 25, 2023.[7]

8      As reported in the press, Plaintiff received funding from wealthy investors and promised
9  them that "the financial gains would be huge."[8]  Simultaneously, Plaintiff claims it wants to build a
10  new city that is like the old cities of Europe.  Plaintiff has prepared idyllic artist renderings and
11  speaks about how the new city will be walkable, energy self-sufficient, a source of jobs, etc., all the
12  while counting the billions that it anticipates this venture might produce.  Flannery's nascent plan
13  ignores the County's general plan, which protects agriculture by limiting urban development to city
14  limits, and strong local opposition.  Its gambit revealed, Plaintiff has begun a multi-front PR
15  campaign in which Plaintiff declares that this is its effort to solve the California housing crisis.

16      Defendants are hopeful that this Court will grant the Motion to Dismiss.  Massive damage
17  to farming and farmers in Solano County already has been done.  Plaintiff's efforts to litigate this
18  case, including its active efforts to pursue discovery against Defendants and against third parties
19  while the Motion to Dismiss is pending, will only increase that damage, by imposing still more
20  expense on Defendants, none of whom can afford to individually defend an antitrust case.
21  Moreover, consistent with its methods of pitting neighbor against neighbor, intrusive third party

22

23  _____
   (cont'd from previous page)

24  [7] Conor Dougherty and Erin Griffith, *The Silicon Valley Elite Who Want to Build a City from
25  Scratch*, N. Y. Times, Aug. 25, 2023.

26  [8] *The Silicon Valley Elite Who Want to Build a City from Scratch*, at 2 ("The financial gains could
   be huge, Mr. Moritz said in the 2017 pitch.  He estimated the return could be many times the initial
27  investment just from the rezoning, and far more if and when they started building.  'If the plans
   materialize anywhere close to what is being contemplated, this should be a spectacular investment,'
28  Mr. Moritz wrote.")

1    discovery will inevitably be "blamed" on the defendants who live in the community.  There is no

2    good reason to allow such invasive activity in a case that should be headed for dismissal.

3    **B.     Plaintiff's Statement**

4    This is a straightforward antitrust case brought against Defendants for illegally conspiring

5    to fix prices for real property in Solano County, California.  While Defendants attempt to distract

6    from their own misconduct with baseless disparagement of Flannery and misleading descriptions of

7    irrelevant state court litigation, Flannery will focus on this case and the pending discovery disputes.

8    Flannery is a Delaware LLC that began purchasing property in Solano County in 2018 in

9    support of an initiative to create a new community in the area featuring walkable residential areas,

10   renewable energy infrastructure, and a greenbelt of open space, agriculture, and habitat.

11   Conspirators (as defined in the complaint) are wealthy owners of rangeland properties in Solano

12   County and consist of four groups:  BLK Defendants (ECF No. 1 ¶¶ 35-47) (who have since settled

13   with Flannery and been dismissed from the case), Mahoney Defendants (*id.* ¶¶ 48-54), Anderson

14   Defendants (*id.* ¶¶ 55-79), and Hamilton Conspirators (*id.* ¶¶ 80-91).  Beginning in 2018 and

15   continuing to the present, Conspirators illegally agreed to eliminate competition, fix prices, and

16   overcharge Flannery in purchasing their properties.  (*Id.* ¶¶ 7, 28, 35-79, 94-131, 257, 317.)

17   In the spring of 2023, Flannery uncovered, through discovery in a separate case,

18   Conspirators' illegal scheme to artificially inflate sale prices for their properties.  (*Id.* ¶ 22.)

19   Flannery obtained "smoking gun" communications that directly evidence the conspiracy, including

20   an exchange in which Conspirator Richard Hamilton texted Kirk Beebe (one of the now-settled

21   BLK Defendants): "In talking with [Defendant] Ian Anderson, ***he agrees*** that the ***remaining***

22   ***property owners should be in agreement*** on what we would want to sell our properties.  So

23   [Flannery's attorney] ***cannot play owners against owners***."  (*Id.* ¶ 22, Ex. A (emphases added).)

24   Mr. Beebe responded: "***Agree***."  (*Id.* ¶ 23, Ex. A (emphasis added).)  And in a contemporaneous

25   message, Defendant Christine Mahoney emailed Mr. Beebe: "I heard you talked with Hamiltons[.]

26   That's great that we can ***support each other***!"  (*Id.* ¶ 25, Ex. B (emphasis added).)  The existence

27   of Defendants' conspiracy is also supported by circumstantial evidence, including Conspirators

28   repeatedly breaking off negotiations with Flannery at the same time and delivering counteroffers

1  with similar pricing.  (ECF No. 80 at 9-11.)  This conduct is rendered even more suspicious by

2  Defendants' demonstrated willingness to sell,[9] suspicious communications and information

3  exchanges (such as those quoted above), and Defendants' common motive to extract hundreds of

4  millions in supracompetitive profits from Flannery.  (*See id*.)

5       After uncovering the conspiracy, Flannery filed its complaint in this case on May 18, 2023,

6  for violations of Section 1 of the Sherman Act, California's Cartwright Act, and California's Unfair

7  Competition Law.  (ECF No. 1 ¶¶ 314-39.)  On June 9, 2023, Defendant Richard Anderson

8  answered the complaint.  (ECF No. 53.)  On July 11, 2023, the remaining nonsettling Defendants

9  moved to dismiss the complaint based on spurious arguments that:  (i) Section 1 of the Sherman

10  Act applies only to "commodities"; (ii) Flannery lacks antitrust standing despite the injury it

11  directly suffered from paying overcharges to competitors who conspired to fix prices for their land;

12  and (iii) the complaint contains insufficient allegations against certain individual defendants.  (ECF

13  No. 78.)  Briefing on the motion to dismiss concluded on August 4.  (ECF No. 82.)

14       Pointing to the pending motion to dismiss, Defendants now seek a protective order staying

15  the obligations of all parties and third parties to respond to Flannery's properly served discovery

16  requests.  But as explained below, Defendants demonstrate no cause—let alone good cause—for

17  such sweeping and extraordinary relief, which should be rejected in full.

18  **III.     MEMORANDA AND LEGAL AUTHORITIES** *[L.R. 251(c)(3)]*

19       **A.     Defendants' Statement**

20       Defendants seek a stay of all discovery in this action – both discovery against Defendants

21  (such as Plaintiff's propounded RFPs) and discovery against third parties (such as Plaintiff's

22  propounded third party subpoenas). A complete stay of discovery is appropriate and authorized

23  under the circumstances of this action.

24

25

---

26  [9] Defendants' suggestion that they had no interest in selling their properties (Defs.' Stmt. at 5-6) is
flatly inconsistent with the evidence alleged in the complaint, including that Ian Anderson
27  communicated extensively with a real estate broker, told his broker in May 2022 that $12,000 per
acre is "fine," retained real estate counsel, and then had that real estate counsel deliver a written
28  offer to Flannery to sell the majority of his land holdings.  (*See, e.g.*, ECF No. 1 ¶¶ 27, 204-18.)

1          **1.**    **This Court Has Broad Discretion To Order A Stay Of Discovery To Promote Judicial Economy And Limit Burdensome And Unnecessary Discovery**

2

3       District courts have "wide discretion in controlling discovery," *Little v. City of Seattle*, 863

4 F.2d 681, 685 (9th Cir. 1988), and must limit otherwise permissible discovery if the burden or

5 expense of that discovery outweighs its likely benefit, considering, among other factors, the needs

6 of the case. Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also, e.g.*, *Ricotta v. Allstate Ins. Co.*, 211 F.R.D.

7 622, 624 (S.D. Cal. 2002) ("court may limit discovery if it determines that the burden or expense

8 of the proposed discovery outweighs its likely benefit").

9       In exercising this discretion, and incident to its power to control its docket, this Court may

10 issue a stay of discovery. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see Lockyer v. Mirant Corp.*,

11 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254

12 (1936) (stating power to stay proceedings is incidental to power inherent in court to control cases

13 with economy for itself, counsel, and litigants)). For example, a court may relieve a party of the

14 burdens of discovery where, as here, a dispositive motion is pending and discovery is not required

15 to address the issues raised by the motion. *See Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)

16 (no abuse of discretion for stay of discovery pending hearing on motion to dismiss because

17 discovery not required to address issues raised in motion to dismiss). Courts in general are charged

18 with protecting the goal of Rule 1 of the Federal Rules of Civil Procedure, which directs that the

19 Rules shall "be construed and administered to secure the just, speedy, and inexpensive

20 determination of every action." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011).

21          **2.**    **Courts In This District Apply A Two-Part Test For Determining The Propriety Of A Stay Of Discovery While A Case-Dispositive Motion, Such As A Motion To Dismiss, Is Pending**

22

23       In evaluating whether to issue a stay of discovery while a dispositive motion is pending,

24 district courts in the Ninth Circuit apply a two-part test. *Pacific Lumber Co. v. National Union*

25 *Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 351–52 (N.D. Cal. 2003); *Stavrianoudakis v. U.S.*

26 *Dep't of Fish & Wildlife*, No. 118CV01505LJOBAM, 2019 WL 9667685, at *3 (E.D. Cal. Dec. 20,

27 2019). First, the moving party must demonstrate that the "pending motion is ***potentially*** dispositive

28 of the entire case, or at least dispositive on the issue at which the discovery is directed." *Pacific*

*Lumber Co.*, 220 F.R.D. 349 at 352 (emphasis added).  Second, "the court must determine whether the pending dispositive motion can be decided absent additional discovery." *Id.*

"In applying the two-factor test, the court deciding the motion to stay must take a 'preliminary peek' at the merits of the pending dispositive motion to assess whether a stay is warranted." *Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife,* 288 F.R.D. 500, 503 (D. Nev. 2013); *Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 2019 WL 9667685, at *3 (courts in the Eastern District of California and Northern District of California apply the test "by conducting a preliminary review of the pending dispositive motion [] without exhaustively reviewing the merits").  This "preliminary peek" is not intended to prejudge the underlying motion's outcome, but to determine if an order limiting or staying discovery would accomplish the objectives of Federal Rule of Civil Procedure 1:

> [T]his court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1.  With Rule 1 as its prime directive, this court must decide whether it is more just to speed the parties along in discovery and other proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery and other proceedings to accomplish the inexpensive determination of the case.

*Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011).

### 3. The Court Should Issue A Stay Of Discovery Until Defendants' Motion To Dismiss Is Decided Because The Motion Will Very Likely Dispose Of The Entire Case And Can Be Determined Absent Additional Discovery

Here, a stay of discovery pending resolution of Defendants' Motion to Dismiss is warranted under the two-part test discussed above.  First, a "preliminary peek" at the Motion to Dismiss reveals that it is more likely than not to resolve this case in its entirety.  The Motion to Dismiss seeks to dismiss the Complaint in its entirety, and makes compelling arguments that Plaintiff both lacks antitrust standing and fails to plead facts sufficient to state a claim for relief.  (*See* Dkt. 78.).  Indeed, the Motion to Dismiss makes clear that the Complaint cannot state a claim for relief because it was brought purely as an intimidation tactic designed to impose massively expensive and invasive litigation to punish those farmers that already sold to Flannery and/or to force those farmers who prefer to continue to farm to sell to Flannery.  (*See id.*)  Additionally, the Motion to Dismiss seeks dismissal for various individual Defendants because the complaint fails to allege

1   sufficient facts as required under *Twombly. Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).[10]

2   Furthermore, Plaintiff's opposition to the Motion to Dismiss did not set forth any factual matter not

3   already alleged in the complaint.  (*Id.*)  In sum, Plaintiff's "utterly frivolous" Complaint, brought

4   merely to force further sales by Solano County's farmers, is more likely than not to be dismissed,

5   making a stay of discovery until such dismissal is ordered appropriate. *See Optronic Techs., Inc. v.*

6   *Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16,

7   2018) (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).)

8          With respect to the second part of the two-prong test, Plaintiff does not argue that discovery

9   is necessary to resolve the pending Motion.  Indeed, the Motion has already been fully briefed and

10   taken under submission and there is no indication that discovery is necessary to resolve it.  It would

11   be an enormous waste of effort and expense to require the parties, or third parties, to engage in

12   discovery—including Defendants having to respond to Plaintiff's burdensome RFPs and 11 third

13   parties having to respond to Plaintiff's third party subpoenas—if the Motion to Dismiss resolves

14   the action.  A stay of discovery will promote the "just, speedy and inexpensive determination" of

15   this case as encouraged by Federal Rule of Civil Procedure 1.

16          This Court has previously granted complete stays of discovery under materially similar

17   circumstances.  *See e.g.*, *Giraldes v. Nicolai et al.*, No. 2:16-cv-00497-KJM-AC, 2018 WL 558729

18   (E.D. Cal., January 25, 2018) (Hon. Claire) ("Defendants seek a stay on the ground that their

19   motions to dismiss and for summary judgment . . . remain pending and are potentially dispositive

20   of this case. . . . . The court agrees, and will therefore order that discovery be stayed pending the

21   resolution of defendants' dismissal and summary judgment motions."); *see also Stavrianoudakis v.*

22   *U.S. Department of Fish & Wildlife*, No. 1:18-cv-01505-LJO-BAM, 2019 WL 9667685 (E.D. Cal.,

23   December 20, 2019) (Hon. McAuliffe) ("Here, the Court finds that Defendants have shown good

24   cause for the requested stay of discovery. No scheduling order has issued in this case and no

25   deadlines have been set. Accordingly, if Defendants' motions to dismiss do not resolve this case,

26   _____

27   [10] For example, Flannery does not (and cannot) allege specific facts about William Dietrich's
connection to the alleged conspiracy. (*See* Dkt. No. 78 at p. 28-29 (motion to dismiss) and Dkt. No.

28   82 at p. 11-13 (reply brief).

1    Plaintiffs will not be prejudiced by a modest delay in proceeding with discovery. In contrast,

2    proceeding with discovery will result in unnecessary motion practice, litigation costs, and a waste

3    of judicial resources.").

4           The same is true here.  There is no current need for the discovery.  If the motion is granted,

5    the stayed discovery will never need to be responded to.  Moreover, the complaint does not allege a

6    right to specific performance or any other imminent factor.  Indeed, Flannery has stated publicly

7    that it has already acquired all the land it needs. Andrew Paul, *Billionaire-backed company has*

8    *bought all the land it needs for its 'city of yesterday'*, Popular Science (Nov. 7, 2023)

9    https://www.popsci.com/technology/silicon-valley-utopian-city/

10                  **4.      This Court's Is Empowered to Issue a Protective Order in This Action**

11          Pursuant to Federal Rule of Civil Procedure 26, this Court may, for good cause, issue an

12   order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

13   expense by, among other methods, prohibiting the discovery or identifying a particular time and

14   place for its exchange. Fed R. Civ. P. 26(c)(1).  In addition, as set for the above, this Court must

15   limit discovery if it determines that the discovery is unreasonably cumulative or duplicative, or the

16   burden or expense outweighs its likely benefit.  *See* Fed R. Civ. P. 26(b)(2)(C).

17          As set forth above, the requests for production of documents issued by Plaintiff are entirely

18   unnecessary unless the action were to proceed.  The only reason to seek compliance now, despite

19   the pending motion to dismiss, is Plaintiff's continuing campaign of exerting financial and

20   community pressure against the Defendants.  This financial pressure is an especially critical factor

21   here where several Defendants have raised arguments in the Motion to Dismiss under *Twombly*.

22   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("Thus, it is one thing to be cautious before

23   dismissing an antitrust complaint in advance of discovery, but quite another to forget that

24   proceeding to antitrust discovery can be expensive.") (internal citations omitted).

25          If the Court were to deny the present Motion, it is clear that Flannery will continue in full

26   force with discovery that is not only burdensome and expensive, but also obviously intended to

27   intimidate and silence Defendants.  Despite Flannery characterizing its discovery as narrow,

28   Flannery's RFPs broadly seek any and all documents or communications that touch on the

1  following topics: 1) communications with Flannery's agents, to which Flannery of course already

2  has access; 2) communications between the numerous individual Defendants, without limit as to

3  time or subject matter; 3) documents or communications reflecting any contemplated sale of real

4  property interests, again without limit as to time or specification of a sale that would remotely

5  resemble Flannery's demands; 4) tax records or other records reflecting the value of the properties;

6  and, in a transparent attempt to dissuade Defendants from making public Flannery's inexcusable

7  pressure tactics 5) any communications with journalists, media consultants, and government

8  representatives and agents.  (Smith Decl., Ex. A.)  Flannery's counsel also acknowledged in its

9  portion of the parties 26(f) report that Flannery will seek to exceed the presumptive ten-deposition

10  limit under Federal Rule of Civil Procedure 30, *and depose each of the 23 individual named*

11  *defendants who have not settled as well as take third-party depositions*.  (ECF No. 88, at 17.)

12  In addition to the time and expense necessary to respond to the foregoing discovery and

13  defend or attend depositions, Flannery's discovery is particularly oppressive when taken in the

14  greater context of Flannery's widely publicized land grab and litigious pressure tactics.  Flannery's

15  litigation and discovery make Defendants personas non grata in their own community.  Given the

16  spurious nature of Flannery's claims and the fact that Flannery named many Defendants in the

17  present action based only on family relations or tenuous community connections, any landowners

18  considering doing business with Defendants would reasonably fear being dragged to court simply

19  by association with Defendants.  Flannery's lawsuit amounts to a public demand that Defendants

20  forfeit their land, which naturally impedes Defendants' ability to negotiate long term arrangements

21  and leases in connection with their agricultural properties.  Opening the door for Flannery to

22  engage in third-party discovery to other Solano County land owners and farmers would allow

23  Flannery to further isolate, annoy, oppress, and embarrass Defendants, even though it is more

24  likely than not that the entire action, or at minimum numerous individual Defendants, will be

25  dismissed at the pleadings stage.

26  On the other hand, Flannery loses nothing from a brief stay of discovery.  Flannery makes a

27  specious argument that there is risk of spoliation of evidence, but this entire argument is premised

28

on a mischaracterization of a now-settled party's prior testimony in a separate unrelated matter.[11]

Defendants' preservation obligations were set forth in formal "Document Retention and Preservation Notices" issued by Flannery along with the original service packets of the Complaint. (Smith Decl., ¶ 14, Ex. C.)  Defendants understand their obligations to preserve evidence since Flannery initiated this action, and Flannery offers no evidence to suggest otherwise.[12]

Accordingly, this Court should issue a protective order staying Defendants' obligations to respond to the pending discovery, and directing Plaintiff to withdraw the third party subpoenas until the motion to dismiss is decided.

### B.    Plaintiff's Statement

The Court should deny Defendants' request to stay all discovery pending resolution of their meritless motion to dismiss.  It is well-settled that "courts look unfavorably upon such blanket stays of discovery."  *Driscoll's, Inc. v. Cal. Berry Cultivars*, LLC, No. 2:19-cv-00493-TLN-CKD, 2021 WL 4942877, at *6 (E.D. Cal. Oct. 22, 2021) (citation omitted), *reconsideration denied,* 2021 WL 5989711, at *3 (E.D. Cal. Dec. 17, 2021) (Nunley, J.).  Unsurprisingly, Defendants themselves cite multiple cases ***denying*** the very relief they seek.  (Defs.' Stmt. at 11.)[13]

In seeking a protective order, a movant "carries the heavy burden of making a strong

---

[11] Contrary to Flannery's accusations, Kirk Beebe did not testify that he actively deleted text messages nor does his testimony provide any evidence that he acted in bad faith.  Rather, when asked if he recalled deleting a text message, Mr. Beebe testified: "I don't recall. I mean, I was forwarding it on, and I could have deleted it. You know, I'm not, I'm not tech savvy like a 25 year old is. I'm 64 years old."  (Menitove Decl. Ex. 8 at 81:22-83:7.)  Mr. Beebe simply did not have the technical sophistication to explain potential reasons why a text message was not included with records of his phone imaged by a third-party vendor.

[12] The premise that Flannery would be prejudiced by a brief stay in discovery is frankly absurd given the nature of the relief Flannery seeks and the ways in which Flannery would use the land at issue if it could force a sale.  Put simply, a brief discovery stay is negligible in the context of this action.  Even if Flannery had a good faith argument that it could force such sales (it does not), there is no urgency given the extensive regulatory and administrative hurdles Flannery faces before it could begin proposed development.

[13] *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[I]t was error to grant the stay."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005) (a "stay is improper in the circumstances of this case"); *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 220 F.R.D. 349, 354 (N.D. Cal. 2003) ("[T]he demand for a stay of all discovery must also be denied.").  Nor do Defendants advance their position by citing *Ricotta v. Allstate Insurance Co.*, 211 F.R.D. 622 (S.D. Cal. 2002), which addresses a "motion to compel production of documents," not a motion to stay.  *Id.* at 624.

showing why discovery should be denied." *Driscoll's*, 2021 WL 4942877, at *5 (citation omitted). To carry this heavy burden, a movant cannot "mak[e] stereotyped or conclusory statements." *In re Valence Tech. Sec. Litig.*, No. C 94-1542-SC, 1994 WL 758688, at *2 (N.D. Cal. Nov. 18, 1994) (citation omitted). Nor can a movant rest on "[i]dle speculation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). Instead, a movant must identify facts establishing "good cause," i.e., that "specific prejudice or harm will result if no protective order is granted." *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2018 WL 4027024, at *2 (E.D. Cal. Aug. 23, 2018) ("Conclusory or speculative statements . . . are insufficient.").

When a party argues that discovery should be stayed during the pendency of a purportedly dispositive motion, courts assess good cause by "tak[ing] a 'peek' at the merits" of the motion and deny a stay unless a movant shows "by clear and convincing evidence[] that it will prevail." *Seven Springs Ltd. P'ship v. Fox Cap. Mgmt. Corp.*, No. S-07-0142 LKK GGH, 2007 WL 1146607, at *2 (E.D. Cal. Apr. 18, 2007). As this Court explained, "a stay of discovery should ***only*** be ordered if the court is ***convinced*** that a plaintiff will be ***unable to state a claim*** for relief." *Huene v. U.S. Dep't of Treasury, I.R.S.*, No. 2:11-cv-2110 JAM AC PS, 2013 WL 417747, at *8 (E.D. Cal. Jan. 31, 2013) (Claire, J.) (emphases added); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018) (refusing to stay antitrust case because court was "unconvinced" that "the plaintiff will be unable to state a claim for relief") (citation omitted).[14]   Courts also "must balance the harm produced by a delay in discovery against the possibility that the motion will be granted." *Driscoll's*, 2021 WL 4942877, at *5.

Here, Defendants' self-serving arguments fail to satisfy their "heavy burden" to establish good cause to stay all discovery. ***First***, Defendants cannot demonstrate that their pending motion to dismiss—which not all Defendants have even joined—has ***any*** chance to dispose of this case, much less the clear and convincing evidence required to obtain their requested relief. ***Second***,

---

[14] "Any lesser standard encourages blanket discovery stays," in violation of their general prohibition under the Federal Rules of Civil Procedure. *Seven Springs*, 2007 WL 1146607, at *2. In fact, antitrust authority within this Circuit has called the standard "onerous," requiring that there be "***no question*** in the court's mind that the dispositive motion will prevail." *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-01667-RFB-BNW, 2020 WL 2114352, at *5 (D. Nev. May 4, 2020).

Defendants rely on vague insinuations about the supposedly "undue" burdens of party discovery based on conclusory objections to certain requests, which, in any event, are belied by the record, including Defendants' own assertions.  With regard to third-party discovery, Defendants speculate that they will be "blamed" for the targeted subpoenas that Flannery served, but cite no authority suggesting that such a concern could provide a cognizable basis for a protective order, and again, this contention is devoid of the required factual support.  **Third**, unlike Defendants, Flannery likely would suffer substantial prejudice from further delay, including because Flannery has already uncovered examples of deleted and lost evidence relevant to Defendants' illegal conspiracy.

### 1.     Defendants Fail To Make a Clear and Convincing Showing That They Will Prevail On Their Motion To Dismiss

Defendants argue that "the only reason to seek [discovery] now" is to "pressure" Defendants (Defs.' Stmt. at 14), but ignore the reality that their request for a stay is contrary to the process envisioned by the Federal Rules of Civil Procedure, under which "courts have generally rejected parties' requests for a stay of discovery while a dispositive motion is pending." *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00698-KJM-CKD, 2019 WL 3080808, at *1 (E.D. Cal. July 15, 2019).  "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect." *Id.* (citation omitted).  But they do not.

Recognizing that "a pending dispositive motion is not a situation that in and of itself would warrant a stay of discovery," this Court has rejected arguments—much like Defendants' here (Defs.' Stmt. at 11-14)—"that a stay of discovery is warranted" if a party contends that its motion raises "only a [purportedly dispositive] legal question." *Huene*, 2013 WL 417747, at *8.  Indeed, this Court has refused to stay a case when the legal questions raised were not narrow ones of "th[e] court's jurisdiction, the propriety of venue . . . , or whether there exists an immunity defense." *Id.* Here, Defendants do not invoke such issues.[15]  And any "peek" at their "arguments on the pending

---

[15] Thus, Defendants get nowhere by pointing to inapposite cases (Defs.' Stmt. at 11-13) involving such issues.  *See, e.g.*, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("Here, the judge stayed discovery until the issue of immunity was decided."); *Giraldes v. Nicolai*, No. 2:16-cv-00497 KJM AC, 2018 WL 558729, at *1 (E.D. Cal. Jan. 25, 2018) (staying discovery where
*(cont'd)*

1    motion to dismiss, compared to the governing law," confirms that they cannot show clear and

2    "convinc[ing] [evidence] that [Flannery] will be unable to state a claim for relief."  *See Driscoll's*,

3    2021 WL 4942877, at *6.

4          As Flannery explained in its opposition to Defendants' motion to dismiss, Flannery has

5    amply alleged—through direct and circumstantial evidence, including Defendants' own texts and

6    emails—that each Defendant engaged in the illegal price-fixing conspiracy.  (ECF No. 80 at 6-11.)

7    Flannery also adequately alleged that it has antitrust standing because of the overcharges and lost

8    profits it has suffered as a direct result of Defendants' illegal conspiracy.  (*Id.* at 14-18.)

9          In the face of these pleadings, Defendants resort to absurd arguments that misstate the law

10   and cannot support a stay.   Defendants primarily argue that the Sherman Act applies only to

11   "commodities" and, therefore, does not condemn conspiracies to fix prices of real property.  (ECF

12   No. 78 at 10-12.)   But as Flannery explained, Defendants' argument rests on misleading

13   representations of case law interpreting ***Hawaii's antitrust statute*** and ***Section 3 of the Clayton***

14   ***Act***, which are both limited to "commodity" products.  (ECF No. 80 at 12-14.)  If Congress wanted

15   Section 1 of the Sherman Act to only forbid conspiracies involving "commodities," it plainly knew

16   how to do so, as the limitations in Section 3 of the Clayton Act make clear, *see* 15 U.S.C. § 14.[16]

17   But Congress drafted Section 1 to broadly condemn "[e]very" conspiracy in restraint of trade, 15

18   U.S.C. § 1, including those involving real property and non-commodities, as the statute's plain text,

19   decades of case law, and the routine prosecution of antitrust conspiracies involving the purchase

20   and sale of real property establish.   (ECF No. 80 at 12-14 (collecting cases); ECF No. 1 ¶ 9

21   (describing criminal prosecutions by the Department of Justice).)   Tellingly, Defendants cite ***no***

22   ***case*** holding that Section 1 of the Sherman Act tolerates conspiracies to fix prices of real property

23

24   (cont'd from previous page)
     defendants raised "non-exhaustion of administrative remedies" and stay had previously been issued

25   pending settlement conferencing); *Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*, 288
     F.R.D. 500, 506 (D. Nev. 2013) (involving "purely questions of law" as to "the jurisdiction of this

26   court and the alleged immunity of the defendants" after plaintiff had already amended the
     complaint); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 608 (D. Nev. 2011) (involving

27   "pure[] . . . issues of law" on "subject matter jurisdiction").
     [16] In their briefing, Defendants misrepresent inapplicable law concerning Section 3 of the Clayton

28   Act as involving "Section 3 of the ***Sherman Act***." (ECF No. 82 at 2.)

1   (or any other product).  Thus, Flannery's complaint is far from the one found "deficient as a matter
2   of law" in *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987), on which Defendants wrongly rely.

3       Confusing the legal issues further, Defendants mischaracterize Flannery's claims as based
4   on their "refusal to sell" (Defs.' Stmt. at 8), and quote discussion concerning **Section 2** of the
5   Sherman Act to argue that **Section 1** of the Sherman Act "does not regulate the price **between an**
6   **owner and a buyer**."  (ECF No. 82 at 1-2.)  But Flannery claims that **multiple sellers** conspired to
7   **fix prices at supracompetitive levels**—precisely what Section 1 forbids.  *See Flextronics Int'l USA,*
8   *Inc. v. Panasonic Holdings Corp.*, No. 22-15231, 2023 WL 4677017, at *1 (9th Cir. July 21, 2023)
9   (reversing dismissal of claim against producers who "conspired to fix supra-competitive prices").
10  And contrary to Defendants' assertions (Defs.' Stmt. at 7), a buyer's offer to pay **some** premium
11  does not entitle sellers to collude to extract even higher prices.  (ECF No. 80 at 16.)

12      Next, Defendants hinge multiple arguments on the puzzling—and inappropriately fact-
13  bound—contention that they are not competitors.  (ECF No. 78 at 10-13; ECF No. 82 at 2, 4, 6.)
14  Yet nowhere in their moving or reply briefs do Defendants address Conspirators' own words
15  confirming that they do compete and conspired "[s]o [Flannery] cannot play owners against
16  owners."  (ECF No. 1 Ex. A.)  Instead, Defendants seek to avoid their own communications and
17  conduct by repeatedly disparaging Flannery's motives, such as by arguing that "Flannery cannot
18  state a claim . . . because [the complaint] was brought purely as an intimidation tactic."  (Defs.'
19  Stmt. at 12.)  But Flannery's detailed complaint—not baseless insinuation unmoored from the
20  pleadings—controls whether Flannery has stated a claim.  And Flannery has done so in spades.

21      In addition, Defendants do not—and cannot—explain how a stay could possibly be justified
22  based on their contention that Flannery "fails to allege sufficient facts" to state claims against
23  "various individual Defendants."  (Defs.' Stmt. at 12-13 & n.10.)  These unfounded contentions are
24  not, as Defendants wrongly assert, "more likely than not to resolve this case in its entirety."  (*Id.*)
25  Notably, nine Defendants—including Richard Anderson, the Mahoney Defendants, and Ian and
26  Margaret Anderson—did not join this argument, conceding that the allegations against them are
27  sufficient.  And even crediting the other Defendants' arguments, they would result in no more than
28  a ruling "with leave to amend," which "favors proceeding with discovery."  *Strickland v. Nevada*

1   *Cnty.*, No. 2:21-cv-00175 MCE AC, 2021 WL 2003119, at *2 (E.D. Cal. May 19, 2021) (Claire,

2   J.).

3       Moreover, Defendants make too much of their assertion that no "discovery is necessary" to

4   resolve the issues above.  (Defs.' Stmt. at 13.)  Even ignoring the factual issues their own motion

5   implicates, Defendants' assertion "is of no moment" because all motions to dismiss are "generally

6   decided with reference only to the complaint," and "granting a stay on such a basic notion is

7   unwarranted." *Optronic Techs.*, 2018 WL 1569811, at *2.  Otherwise, every case with a motion to

8   dismiss could warrant a stay—an "inefficient and chaotic" outcome that "is not contemplated by

9   the Federal Rules." *Id.*; *see also Adelson*, 2020 WL 2114352, at *10 (finding antitrust "litigation

10  should not be delayed simply because a non-frivolous motion has been filed" (citation omitted));

11  *accord Huene*, 2013 WL 417747, at *8 (denying stay request raising "only a legal question").

12      Finally, in wrongly insisting that the motion is case dispositive, Defendants ignore that

13  regardless of its outcome, this case will proceed against Richard Anderson, who answered the

14  complaint.  Thus, Richard Anderson has no basis to seek a protective order.  And even if the

15  motion to dismiss were granted, conducting discovery now would not be a "waste" (Defs' Stmt. at

16  13) because Defendants would remain subject to discovery as third parties in a case against

17  Richard Anderson.  *See Harper v. Cent. Wire, Inc.*, No. 19 CV 50287, 2020 WL 5230746, at *4

18  (N.D. Ill. Sept. 2, 2020) (denying stay pending motion to dismiss because "even if Defendants were

19  not parties," plaintiff "could obtain discovery" from them as third parties "by way of subpoena").

20      Accordingly, the Court should reject Defendants' position—which is "directly at odds

21  with" Flannery's right to "expeditious resolution of [this] litigation"—and adhere to the usual rule

22  that "[t]he mere filing of a motion to dismiss" does not "stop the discovery process, derail a case

23  schedule, and delay proceedings." *Optronic*, 2018 WL 1569811, at *2 (citations omitted).[17]

24      **2.     Defendants Show No Undue Burden To Avoid Discovery as Usual**

25      Defendants also fail to show any "undue burden or expense" as required to circumvent the

---

26  [17] Defendants' effort to stay discovery is also at odds with the "particularly great" interest "[t]he
27  public[]" has in the "vigorous[] enforce[ment] [of] national antitrust laws through the expeditious
    resolution of a private antitrust action."  *Castro v. Sanofi Pasteur Inc.*, No. 11-7178 (JLL), 2012
28  WL 12918261, at *2 (D.N.J. July 18, 2012) (citation omitted) (denying motion to stay).

1    orderly progression of both party and third-party discovery.  (Defs.' Stmt. at 14-16.)

2         ***First***, in seeking to avoid party discovery as usual, Defendants vaguely contend that they

3    will incur "enormous" and "unnecessary expense" through responding to discovery and attending

4    depositions.  (*See, e.g.*, *id.* at 1-2, 5, 8-9, 13-15.)  But as this Court has explained, conclusory

5    contentions like Defendants' "[t]hat discovery may involve inconvenience and expense [are] not

6    sufficient to support a stay of discovery."  *Huene*, 2013 WL 417747, at *8; *see also Optronic*, 2018

7    WL 1569811, at *1 (similar).  Nor, as Defendants' own authorities acknowledge, is "being required

8    to defend a suit" grounds for a stay.  *Lockyer*, 398 F.3d at 1112.

9         Next, Defendants pivot to equally unsupported suggestions that certain of Flannery's ten

10   targeted RFPs are somehow so burdensome that all discovery should be stayed.  (Defs.' Stmt. at

11   14-15.)  Contrary to Defendants' argument, Flannery does not seek communications it already

12   possesses (Defs.' Stmt. at 15), and has stated as much to Defendants.  (Menitove Decl. ¶ 7.)  Nor,

13   as Defendants contend, does Flannery seek all communications between all individual Defendants.

14   (Defs.' Stmt. at 15.)  Indeed, Flannery has explained that it tailored the definition of "Conspirator"

15   in each set of requests for production to exclude intragroup communications from the request for

16   all communications with Conspirators.  (*See, e.g.*, Smith Decl., Ex. A at 2 (carving out nine

17   Defendants in RFPs to Janet Blegen).)  Similarly misguided is Defendants' contention that

18   Flannery's requests for communications with media and politicians could somehow dissuade

19   public discourse (Defs.' Stmt. at 15) when Flannery has made clear—including in the 26(f) report

20   (ECF No. 86 at 16)—that a protective order can govern discovery.  (Menitove Decl. ¶ 8.)[18]

21   Finally, there is nothing improper or burdensome about Flannery's requests: (i) for tax records,

22   which are highly relevant to establish the value of Defendants' land (absent the conspiracy), simple

23   to gather, and may be produced confidentially pursuant to a protective order; or (ii)

24   communications relating to potential sales of property in Solano County, which go to the heart of

25   the conspiracy.

26        Regardless, Defendants acknowledge that even if they could show that specific discovery

27   ───────────────
     [18] Defendants also do not show undue burden by reporting that the parties "agreed to meet and
28   confer regarding limitations on depositions."  (ECF No. 88 at 16-17 (cited by Defs.' Stmt. at 15).)

would cause undue burden, the remedy is standard discovery practice, not the highly disfavored blanket stay they seek.  As courts rejecting stays recognize, Defendants can lodge appropriate objections, confer with Flannery, and, if necessary, seek the Court's intervention on narrowed issues.[19]  Defendants concede as much here, referencing their "right to object to any request, as in the normal case."  (Defs.' Stmt. at 2.)  That alone undermines their bid for such disfavored relief.

Moreover, Defendants' argument that discovery will unduly burden them is belied by their out-of-court positions, including that:  (i) Paul Dietrich claims to have **no documents** responsive to nine of ten RFPs (Menitove Decl. Ex. 9); (ii) John Alsop claims to have **no documents** responsive to six of ten RFPs (*id.* Ex. 10); (iii) Nancy Roberts claims to have **no documents** responsive to six of ten RFPs (*id.* Ex. 11); (iv) Janet Zanardi claims to have **no documents** responsive to six of ten RFPs (*id.* Ex. 12); and (v) Ronald Gurule claims to have **no documents** responsive to six of ten RFPs (*id.* Ex 13).  Counsel for William Dietrich, who also responded to Flannery's RFPs, indicated that he possesses little discovery.  (Menitove Decl. ¶ 20 & Ex. 14.)

***Second***, Defendants fail to identify any undue burden they would endure if third parties comply with subpoenas.  Instead, Defendants speculate that they "will inevitably be 'blamed'" and rendered "personas non grata" for that discovery.  (Defs.' Stmt. at 9, 15.)  But Defendants provide no reasoning, much less ***any*** law establishing that such concerns provide a cognizable basis to stay third-party discovery, particularly when, as here, the movant does not contest its relevance.  Regardless, Defendants' "[c]onclusory [and] speculative statements" that they will be blamed for routine discovery "are insufficient."  *Aerojet*, 2018 WL 4027024, at *2.[20]  Defendants' speculation is also illogical; third parties are far more likely to attribute the subpoenas to Flannery because Flannery served them, and 10 of the 11 recipients have litigated against Flannery before—as

---

[19] *See, e.g.*, *Driscoll's*, 2021 WL 4942877, at *10 & n.11 (denying stay, as endorsed by Judge Nunley, and directing parties to the court's "discovery resolution procedures" for "more limited requests for protection that defendants might find necessary to raise in response to certain of plaintiffs' discovery requests"); *Gray*, 133 F.R.D. at 40 ("[D]efendants may only seek to attack the discovery requests by means of objections, if appropriate, as provided in the Federal Rules.").

[20] *See also Gray*, 133 F.R.D. at 40 ("Idle speculation does not satisfy Rule 26(c)'s good cause requirement."); *accord Strickland*, 2021 WL 2003119, at *4 ("[B]roadly" invoking "fear of intimidation or physical harm" is "not sufficiently specific to constitute good cause.").

1  Defendants observe.  (Defs' Stmt. at 6-7.)[21]   That Defendants reach for such illogical arguments

2  reveals their true concern: evidence out of their control will further reveal their illegal conspiracy.

3        Absent specific evidence showing any undue burden, Defendants lastly invoke *Twombly* to

4  decry the costs of antitrust discovery (Defs.' Stmt. at 14), but ignore that *Twombly* "did not hold,

5  implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint

6  survives a Rule 12(b)(6) challenge."  *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA,

7  2008 WL 62278, at *3 (N.D. Cal. Jan. 4, 2008).   Indeed, courts routinely require antitrust

8  defendants to proceed with discovery while purportedly dispositive motions are pending.[22]

9        In fact, Defendants do not (and cannot) show that *Twombly*'s reference to the cost of

10  discovery in antitrust cases (Defs.' Stmt. at 14) has any import in this case.  The violation alleged

11  here is far simpler than in *Twombly*, where a class of "'all subscribers of local telephone and/or

12  highspeed internet services' since 1996" sued America's four largest telecommunications firms

13  that "control[led] 90 percent or more of the market for local telephone service in the 48 contiguous

14  States.'"  *SOLIDFX*, 2011 WL 4018207, at *3 (citation omitted) (denying stay).  Nor is this case "a

15  sprawling multidistrict litigation or a class action" in which discovery might carry a high burden.

16  *Optronic*, 2018 WL 1569811, at *2.  Indeed, Defendants' own view is that this case "do[es] not

17  remotely compare" to the kind of "complex, multinational, conspiracy case[]" involving "hundreds

18  of meetings between competitors, joint ventures" and others.  (ECF No. 82 at 10.)  Here, the

19  conspiracy involves property in one county beginning five years before Flannery filed its

20  complaint, and many Defendants are individuals who claim to have minimal relevant discovery.

21      **3.**    <u>**Flannery Likely Would Be Severely Prejudiced By Further Delay**</u>

22        Finally, Defendants' motion fails because unlike Defendants, Flannery likely would suffer

23  substantial prejudice from further delay.  In addition to "creat[ing] unnecessary litigation expenses

24  ---

25  [21] Defendants baselessly label Flannery's suit seeking damages as a "public demand that Defendants forfeit their land," even as Defendants concede that Flannery "does not allege a right to specific performance."  (Defs.' Stmt. at 14.)

26  [22] *See, e.g.*, *Optronic*, 2018 WL 1569811, at *2 (refusing to stay antitrust case); *Adelson*, 2020 WL 2114352, at *10 (same); *U.S. All Star Fed'n, Inc. v. Open Cheer & Dance Championship Series, LLC*, No. 6:21-cv-2135-WWB-DCI, 2022 WL 20655920, at *2 (M.D. Fla. Aug. 29, 2022) (same);

27  *Castro*, 2012 WL 12918261, at *2 & n.1 (same); *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2011 WL 4018207, at *3-4 (D. Colo. Sept. 8, 2011) (same).

28

and case management problems," *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318-KJM-EFB, 2015 WL 6537813, at *1 (E.D. Cal. Oct. 28, 2015), stays are inappropriate because a "delay in discovery risks prejudice" given that "memories will fade, witnesses will change jobs, move, or possibly pass away." *Aerojet*, 2018 WL 4027024, at *4; *Driscoll's*, 2021 WL 5989711 (similar).

The same is true here, where the record already substantiates that memories have faded, and importantly, critical evidence has been destroyed. For example, in a deposition in a separate case, now-settled Conspirator Kirk Beebe admitted to deleting his texts with Conspirator Richard Hamilton, including the texts that directly evidence the price-fixing conspiracy. (Menitove Decl. Ex. 8 at 81:22-83:7.) In the same deposition, Mr. Beebe also responded—over 30 times—that he did not recall information about Flannery and the sale of real property in Solano County. (*Id.* at 14:18-16:6, 21:1-6, 22:12-15, 26:11-25, 28:8-18, 43:17-45:16, 57:7-10, 59:15-60:16, 64:11-19, 78:4-8, 80:2-6, 81:1-84:12, 91:13-21, 93:24-94:2, 98:18-23, 107:3-17.) Attacking a strawman, Defendants argue that Mr. Beebe did not testify that he "actively deleted" texts or acted "in bad faith." (Defs.' Stmt. at 16 n.11.) But the undisputed reality—and Flannery's argument—is that Mr. Beebe's testimony establishes that texts relating to the alleged conspiracy have been deleted, and further delay risks similar loss of evidence.[23]

An indefinite stay of discovery would be especially prejudicial given the lengthy stay Defendants already achieved by refusing to timely comply with their obligations under the Federal Rules of Civil Procedure. As explained above, Defendants manufactured over a month and a half of delay by refusing to confer as Rule 26(f) requires,[24] forcing Flannery to the brink of a motion to compel. Then, Defendants stalled further by demanding an in-person meeting they ultimately refused to attend. (Pl.'s Stmt. at 3-4.) This procedural jockeying has already deprived Flannery of months of discovery, and, though Defendants misleadingly refer to "modest delay" (Defs.' Stmt. at 14), they now request a blanket stay of indefinite duration. To avoid further prejudice to Flannery

---

[23] Preservation notices do not, as Defendants suggest, wholly eliminate the risks that memories will fade or that evidence will be lost over time. (Defs.' Stmt. at 16.)

[24] Despite Defendants' insinuation to the contrary (Defs.' Stmt. at 3), parties are "jointly responsible for arranging the conference." Fed. R. Civ. P. 26(f).

and the risk that additional evidence is lost, the Court should reject Defendants' request for a highly disfavored blanket stay and order discovery to proceed as usual.

Dated:  December 6, 2023

GLYNN, FINLEY, MORTL, HANLON & FRIEDENBERG, LLP
CLEMENT L. GLYNN
ADAM FRIEDENBERG
ROBERT C. PHELPS
MORGAN K. LOPEZ

By  */s/ Clement L. Glynn (auth 12/6/23)*
Attorneys for Defendants Ian Anderson (Individually and as Trustee of the Ian and Margaret Anderson Family Trust), Margaret Anderson (Individually and as Trustee of the Ian and Margaret Anderson Family Trust), Neil Anderson, and Maryn Anderson

Dated: December 6, 2023

DAVIS WRIGHT TREMAINE LLP
ALLISON A. DAVIS
SANJAY M. NANGIA

By: */s/Allison A. Davis (auth 12/6/23)*
Attorneys for Defendant
William C. Dietrich
(individually and as trustee of the Child's Trust FBO William C. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich)

1   Dated: December 6, 2023

2

3

4

BUCHALTER, A Professional Corporation
KEVIN T. COLLINS
PHILLIP CHAN
ADAM SMITH
NATALIYA SHTEVNINA

5   By  /s/ *Kevin T. Collins*
    Attorneys for Defendants

6   Ned Anderson (individually and as trustee
    of the Ned Kirby Anderson Trust), Neil

7   Anderson, Glenn Anderson, Janet Blegen
    (individually and as trustee of the Janet

8   Elizabeth Blegen Separate Property
    Trust), Robert Anderson (individually and

9   as trustee of the Robert Todd Anderson
    Living Trust), Stan Anderson, Lynne

10  Mahre, Sharon Totman, Amber Bauman
    and Christopher Wycoff

11

12  Dated: December 6, 2023

13

RIMON, P.C.
GABRIEL G. GREGG
A Professional Corporation

14

15  By  /s/ *Gabriel G. Gregg (auth 12/6/23)*
    Attorneys for the Mahoney Defendants

16  Dated:  December 6, 2023

17

HOGE FENTON JONES & APPEL INC.
STEVEN J. KAHN
ALEXANDER H. RAMON

18

19  By  /s/ *Steven J. Kahn (auth 12/6/23)*
    Attorneys for Defendant Ronald Gurule

20  (individually and as trustee of the Ronald
    Gurule 2013 Family Trust)

21

22

23

24

25

26

27

28

1    Dated:  December 6, 2023                    ROPERS MAJESKI PC
                                                MICHAEL J. IOANNOU (SBN: 95208)
2                                               DAVID B. DRAPER (SBN: 107790)
                                                KEVIN W. ISAACSON (SBN: 281067)
3

4

                                                By   */s/ David B. Draper (auth 12/6/23)*
5                                                    Attorneys for Paul Dietrich (individually
                                                     and as trustee of the Child's Trust FBO
6                                                    Paul S. Dietrich, a subtrust under the
                                                     Trust of William C. Dietrich and Ivanna
7                                                    S. Dietrich; John Alsop (individually and
                                                     as trustee of the John G. Alsop Living
8                                                    Trust), Nancy Roberts (individually and
                                                     as trustee of the Nancy C. Roberts Living
9                                                    Trust), Janet Zanardi (individually and as
                                                     trustee of Trust A under the Zanardi
10                                                   Revocable Trust)

11   Dated:  December 6, 2023                    HOUK & HORNBURG, INC.
                                                WILLIAM N. HANNAH
12                                              C. MATTHEW GAEBE

13

14                                              By   */s/ William N. Hannah (auth 12/6/23)*
                                                     Attorneys for Defendant Richard
15                                                   Anderson, (Individually and as Trustee of
                                                     the REA Properties Trust)
16

17

18   Dated:  December 6, 2023                    SKADDEN,  ARPS,  SLATE,  MEAGHER  &
                                                FLOM LLP
19                                              MATTHEW MARTINO
                                                MICHAEL H. MENITOVE
20                                              LANCE A. ETCHEVERRY

21

22

23                                              */s/ Michael H. Menitove (authorized 12/6/23)*
                                                     *Attorneys for Plaintiff*
24                                                   *Flannery Associates LLC*

25

26

27

28

**ATTESTATION**

I, KEVIN T. COLLINS, attest that for all conformed signatures indicated by a "/s/," the signatory has concurred in the filing of this document.

DATED: December 6, 2023                                      _/s/ KEVIN T. COLLINS_