**EXHIBIT "1"**

MATTHEW M. MARTINO (*pro hac vice*)
matthew.martino@skadden.com
MICHAEL H. MENITOVE (*pro hac vice*)
michael.menitove@skadden.com
EVAN LEVICOFF (*pro hac vice*)
evan.levicoff@skadden.com
THOMAS J. SMITH (*pro hac vice*)
thomas.smith@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (917) 777-3000

LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Plaintiff*
*FLANNERY ASSOCIATES LLC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Flannery Associates LLC, | Case No.: 2:23-cv-00927-TLN-AC |
| Plaintiff, | **JOINT STATEMENT RE DISCOVERY DISAGREEMENTS BETWEEN PLAINTIFF FLANNERY ASSOCIATES LLC AND DEFENDANT RICHARD ANDERSON** |
| v. | |
| Barnes Family Ranch Associates, LLC, *et al.*, | Judge: Hon. Allison Claire |
| Defendants. | Date: September 18, 2024 |
| | Time: 10 A.M. |
| | Courtroom: 26 |

Pursuant to Eastern District of California Local Rule 251(c), Plaintiff Flannery Associates LLC ("Flannery") and Defendant Richard Anderson ("Anderson") submit this joint statement in connection with Flannery's Notice of Motion and Motion to Compel Production of Documents ("Motion," ECF No. 124). Flannery seeks a Court order compelling Anderson to conduct a diligent search for and produce all non-privileged documents responsive to Requests Nos. 1-7 of Flannery's First Set of Requests for Production ("RFPs").

## I.   THE NATURE OF THE ACTION AND FACTUAL DISPUTES

### A.   Flannery's Statement

This is a straightforward antitrust action brought against Anderson and other Defendants for illegally conspiring to fix prices for real property in Solano County, California. Flannery is a Delaware LLC that began purchasing property in Solano County in 2018 in support of an initiative to create a new, walkable community in the area. Conspirators (as defined in the complaint) are wealthy owners of rangeland properties in Solano County and consist of four groups: BLK Defendants (ECF No. 1 ¶¶ 35-47) (who have since settled with Flannery), Mahoney Defendants (*id.* ¶¶ 48-54) (who have also since settled), Anderson Defendants (*id.* ¶¶ 55-79) (including Anderson), and Hamilton Conspirators (*id.* ¶¶ 80-91). Beginning in 2018 and continuing to the present, Conspirators illegally agreed to eliminate competition, fix prices, and overcharge Flannery in purchasing their properties. (*Id.* ¶¶ 7, 28, 35-79, 94-131, 257, 317.)

Flannery filed its complaint on May 18, 2023, alleging violations of Section 1 of the Sherman Act, California's Cartwright Act, and California's Unfair Competition Law. (ECF No. 1 ¶¶ 314-39.) On June 9, 2023, Anderson answered the complaint. (ECF No. 53.) In his answer, Anderson denied participation in the conspiracy, but admitted to knowing other Conspirators including Christine Mahoney, Daniel Mahoney, Ian Anderson, Margaret Anderson, Paul Dietrich, John Alsop, Nancy Roberts, Janet Zanardi, Ronald Gurule, David Anderson, Deborah Workman, Richard Hamilton, Stacy Hamilton, David Hamilton Sr., David Hamilton Jr., and Peter Hamilton. (*Id.* ¶¶ 52-53, 55-56, 60-63, 66-68, 80-83, 85.) Anderson also admitted he had knowledge of the intentions of Conspirators Paul Dietrich and Nancy Roberts (*id.* ¶¶ 222, 266), referred to Conspirator Kirk Beebe's lawyer in communications with Flannery (*id.* ¶ 264), and that he "did speak with some of the [Anderson] family

2

1 members" (*id.* ¶ 255).

2   The remaining Defendants moved to dismiss the complaint on July 11, 2023 (ECF No. 78),

3 and the Court denied that motion in its entirety on March 29, 2024 (ECF No. 111).  The Court held

4 that Flannery stated a claim against all Defendants through both direct and circumstantial evidence.

5 (*Id.*)  Flannery now seeks to compel the production of documents in response to RFPs served nearly

6 one year ago, in response to which Anderson has yet to produce a single document.

7   **B.**   <u>**Anderson' Statement**</u>

8   The Requests for Production at issue are not limited to the complaints and grievances

9 regarding issues like those presented to the Court in this case.  In the Requests at issue, Flannery has

10 conflated the Complaint to include all of Solano County, which is not supported by the Complaint.

11 As alleged in the Complaint, Flannery approached individuals to buy their properties in the Jepson

12 Prairie and Montezuma Hills area of Solano County, California (ECF No. 1 ¶ 5).  This area hosts

13 several utility-scale commercial wind farms and transmission lines, substations, and other energy

14 infrastructure as well as numerous environmental conservation and mitigation projects (ECF No. 1

15 ¶ 5).  Since 2018 Flannery has been purchasing rangeland properties in the Jepson Prairie and

16 Montezuma Hills area of Solano County (ECF No. 1 ¶ 12).  It is clear that Flannery believes it is

17 entitled to discovery regarding all properties in Solano County including people's primary residences

18 and single-family rentals, regardless of whether or not it falls within the scope of the Complaint.

19 **II.**   <u>**THE DETAILS OF THE DISCOVERY CONFERENCES**</u>

20   **A.**   <u>**Flannery's Statement**</u>

21   Flannery first propounded its RFPs on September 7, 2023, in advance of the parties' Rule

22 26(f) conference.  (Menitove Decl. Ex. 1.)  Counsel for the parties discussed those requests during

23 their conferences on September 12 and 19, during which Anderson's counsel first raised some of the

24 disputed issues, including the use of the defined term "Conspirator" in certain RFPs.  (*See* ECF No.

25 88 at 11-12.)  The RFPs were deemed served as of September 19, when the parties completed their

26 Rule 26(f) conference, pursuant to Federal Rule of Civil Procedure 26(d)(2)(A).

27   Defendants, including Anderson, subsequently moved to stay their obligations to respond to

28 the RFPs during the pendency of the motion to dismiss (ECF Nos. 85, 91), and obtained a stay on

3

1  December 21, 2023, for 100 days or until the motion to dismiss was decided (ECF No. 99).  The stay

2  expired with the denial of the motion to dismiss on March 29, 2024.  (ECF No. 111.)  Anderson then

3  served objections to the RFPs via mail on April 9, 2024, stating that he would withhold all responsive

4  documents based on various objections.  (Menitove Decl. Ex. 2.)

5  Counsel for the parties met and conferred to discuss Anderson's objections via a Zoom

6  conference on July 17, 2024.  (Menitove Decl. at 2.)  During that conference, the parties reached

7  several compromises, but Anderson's counsel confirmed that the parties were at impasse with respect

8  to the core issues addressed below.  For example, the parties agreed on a relevant time period for

9  each RFP (January 1, 2018 to the present), that Anderson need not produce documents equally

10 available to Flannery, that Anderson would withdraw his objections regarding estoppel, that any

11 documents withheld based on claims of privilege or work product would be identified in a privilege

12 log, and that privilege objections would not be a basis to refuse to produce non-protected, responsive

13 documents.  (*See id.* Ex. 3.)  But Anderson asserted an overarching refusal to collect electronically

14 stored information ("ESI") and search it using agreed-upon search terms, as well as certain additional

15 objections with respect to specific RFPs as described below.  (*Id.*)

16 On July 22, Flannery sent Anderson's counsel a letter summarizing the parties' discussion at

17 the meet-and-confer and the resulting impasses and stating Flannery's intention to move to compel

18 responses to its RFPs.  (*Id.*)  On the same day, Anderson's counsel responded that he would need

19 multiple weeks to consider Flannery's letter but did not dispute any of the impasses (*id.* Ex. 4), and

20 Flannery responded with an email reiterating the impasses and its belief that additional meet-and-

21 confers would be unproductive if Anderson would not change his positions (*id.* Ex. 5).  On July 24,

22 Anderson's counsel requested more time to respond to Flannery's letter (*id.* Ex. 6), and Flannery

23 agreed to extend the time to respond until August 15 (*id.* Ex. 7).

24 On August 15, nearly a month after the parties' meet-and-confer, Anderson's counsel

25 responded with a letter withdrawing Anderson's objection as to lack of service by mail, but stating

26 that additional meet-and-confers were necessary.  (*Id.* Ex. 8.)  Anderson still did not address the

27 impasses identified in Flannery's correspondence.  (*Id.*)  Flannery responded on August 16, with a

28 letter stating that it would proceed with a motion to compel if Anderson could not commit to

4

1  collecting and searching his ESI using agreed-upon search terms and then producing documents

2  responsive to RFPs Nos. 1-7.  (*Id.* Ex. 9.)  Anderson's counsel responded on August 19, with an

3  email stating that he required at least an additional week to respond but failing to commit to the

4  collection and search of ESI using agreed-upon search terms.  (*Id.* Ex. 10.)  Anderson's counsel again

5  failed to dispute any of the impasses Flannery identified, stating instead that he "never stated [his]

6  client would not agree with search terms."  Flannery responded that it would proceed to move to

7  compel (*id.* Ex. 11), and accordingly filed this Motion on August 20.

8  **B.    Anderson's Statement**

9  1.    Flannery Failed to Meaningfully Meet and Confer

10  Anderson has offered to continue the meet and confer efforts regarding this discovery dispute,

11  but it has not been met with good faith.  The initial e-mail requesting a meet and confer was incredibly

12  vague and merely stated "[w]e would like to meet and confer regarding Richard Anderson's attached

13  objections and responses to Flannery's requests for production." (Menitove Decl. Ex. 3 p. 3 - July

14  12, 2024 e-mail).  This request was made over 100 days after Flannery had received Anderson's

15  responses, and started the meet and confer process on rocky ground considering it was unknown

16  what was going to be discussed.  There was a one hour meet and confer over Zoom with three

17  attorneys representing Flannery and one attorney representing Anderson participating.  (Hannah

18  Decl. at ¶4).  Having multiple attorneys on one side, each with their own opinions and ideas,

19  drastically encumbered the meet and confer process.  (Hannah Decl. at ¶5).  For example, limiting

20  the scope of Request No. 1 to the year 2018 to present was agreed upon, but time limitations for the

21  rest of the requests were glossed over during the rest of the discussion.  (Hannah Decl. at ¶6).  It was

22  explained during the meet and confer process that Mr. Anderson is a retired truck driver in his 60s,

23  and the demands Flannery was making of him would take time to discuss.  (Hannah Decl. at ¶7).

24  The meet and confer was stopped precisely on the hour mark at the suggestion of Flannery's counsel.

25  (Hannah Decl. at ¶9).

26  In response to the July 22nd letter, it was pointed out that the parties "agreed the meet and

27  confer was not finished."  (Menitove Decl. Ex. 4).  Additionally, counsel for Anderson contested

28  what Flannery had stated in the letter.  (Menitove Decl. Ex. 4).  In the July 22nd e-mail from

5

1   Flannery's attorney it was clear they were not interested in the meet and confer process anymore and

2   stated "if you do not respond by July 25th, we will move to compel." (Menitove Decl. Ex. 5).

3        In the August 15th letter Anderson represented that he would supplement his discovery

4   responses and stated he was "still open to participating in good faith efforts to resolve any current

5   discovery disputed." (Menitove Decl. Ex. 8). This representation was made before Flannery filed

6   their motion to compel. Anderson then supplemented his discovery responses as he stated on August

7   30, 2024. Notably, the unfinished meet and confer was again brought up in the August 15th letter.

8   (Menitove Decl. Ex. 8).

9        When a case is proceeding in federal court, the parties' good faith participation in discovery

10  is mandatory, not optional. *Claire v. Hollis*, 2023 U.S. Dist. LEXIS 217968, *5, 2023 WL 8477981.

11  A motion to compel "must include a certification that the movant has in good faith conferred or

12  attempted to confer with the person or party failing to make . . . discovery in an effort to obtain it

13  without court action." <u>*Federal Rules of Civil Procedure 37(a)(1) ("FRCP")*</u>. *Crawford v. Truss Co.*

14  *& Bldg. Supply, Inc.*, 2020 U.S. Dist. LEXIS 228504, *2, 2020 WL 7056058. "[T]he parties [must]

15  'present to each other the merits of their respective positions with the same candor, specificity, and

16  support during the informal negotiations as during the briefing of discovery motions." *Cardoza*, 141

17  F. Supp. 3d at 1145. Here the single meet and confer did not have the candor, specificity, and support

18  as is in this briefing, and there was not nearly enough time, nor was there time for Anderson's

19  attorney to prepare as to what Flannery was going to discuss during the meet and confer. This

20  unfinished meet and confer held on July 17th was not done in good faith to resolve the parties

21  differences without court intervention.

22       Additionally, Local Rule 251(b) requires that the parties meet and confer prior to filing a

23  motion to compel discovery. The Standing Orders of this Court further provide that "[w]ritten

24  correspondence between the parties, including email, is insufficient to satisfy the parties' meet and

25  confer obligations under Local Rule 251(b). Prior to the filing of a Joint Statement, the parties must

26  confer in person or via telephone or video conferencing in an attempt to resolve the dispute." *See*

27  *https://www.caed.uscourts.gov/caednew/assets/File/Judge Claire Standing Orders (updated March*

28  *2023).pdf.* Further "the parties must meaningfully and meet and confer in person or via telephone or

video conferencing before bringing a motion…" *Novotech Australia Pty Ltd. v. Sureclinical, Inc.*, 2023 U.S. Dist. LEXIS 72692, *3.  The burden of ensuring that proper meet and confer discussions take place is on the moving party.  *E.D. Cal. R. 251(b)*.

Neither side denies that progress was made during the limited meet and confer process. However, due to the short nature and subsequent breakdown of the process to a letter and e-mail exchange, it left much to be desired.  Anderson is still willing to meet and confer over the supplemental discovery responses, if Flannery deems they are not adequate.  Anderson is also willing to participate in an informal discovery conference to some of the discrete issues, a topic which was not addressed due to insufficiency of the meet and confer process.

(a)      Joint Statement Timing

Flannery e-mailed the draft Joint Statement at 6:28 a.m. on August 30, 2024, the Friday before the Labor Day weekend asking that Anderson complete his portion by close of business on Tuesday September 3, 2024. (Hannah Decl. Ex. 2).  This left Anderson with only two business/court days to complete his portion of the Joint Statement in haste.  Additionally, Flannery's draft Statement consisted of 16 pages without Anderson's inserts, leaving Anderson significantly less space to meet the 25-page limit.  (Hannah Decl. at ¶16).  This is indicative of Flannery's position regarding the meet and confer process of the discovery in question.   If it is not done on their timeline and terms, they will file a motion to compel regardless of whether Anderson is willing to continue the meet and confer process.

This Court has similarly found demanding such a short time for a response is not a good faith effort to obtain a joint statement, such that serving a joint statement and demanding the opposing side's portion be completed by the next business day, was not done in good faith.  *California Sportfishing Prot. All. v. Allison*, 2022 U.S. Dist. LEXIS 182435, *3, 2022 WL 5186638. Admittingly, that case's demand was during the middle of the week, but nonetheless it demanded the opposing side's portion the next business day such as we see here.

2.      Anderson Provided Supplemental Responses

In the August 15th letter Anderson represented he would supplement his discovery responses in two weeks as an effort of good faith.  (Menitove Decl. Ex. 8).  This was further confirmed in the

1   August 19, 2024 e-mail.  (Menitove Decl. Ex. 10).  Yet, Flannery filed this Motion on August 20,

2   2024.  Anderson provided supplemental responses on August 30, 2024.  (Hannah Decl. Ex. 1).  These

3   supplemental discovery responses removed some objections and represented searches were made

4   and what documents would be withheld.  Documents will be produced on September 4, 2024.

5   (Hannah Decl. at ¶17).  This was done to Anderson's best understanding from the limited meet and

6   confer process.    Anderson has always been and is still willing to continue the meet and confer

7   process.

8        *FRCP 34(b)(2)(B)* explains how a party is required to respond to requests for production. It

9   states that "[f]or each item or category, the response must either state that inspection and related

10   activities will be permitted as requested or state with specificity the grounds for objecting to the

11   request, including the reasons.  Anderson has now done this with the supplemental discovery

12   responses for Request Nos. 1-7.  (Hannah Decl. Ex. 1).

13   **III.    DISPUTED DISCOVERY REQUESTS**

14        **REQUEST NO. 1**

15        All Documents relating to Flannery or any person acting for or on behalf of Flannery,

16   including Richard Melnyk, Rosa La Cerva, Christine Oh, or Roam Realty.

17        **RESPONSE TO REQUEST NO. 1**

18        Responding Party objects that this discovery request was served electronically without the

19   consent in writing of Responding Party in violation of *Federal Rules of Civil Procedure (b)(2)(E)*

20   *("FRCP")*.  Responding Party objects that Propounding Party is estopped from taking the position

21   that these requests were served on September 19, 2023, (or served properly) after negotiations during

22   the Rule 26(f) conference indicated that there would be an agreement to limit discovery in this case,

23   only to be informed on September 28, 2023, that there was no agreement.  This is highly prejudicial

24   gamesmanship clearly planned to give Responding Party the least amount of time possible to

25   respond.  Responding Party objects to this request in that it is overbroad such that it is not described

26   with reasonable particularity.  The Request is vague and ambiguous as to time.  This Request seeks

27   information equally available to Plaintiff, for example Richard Melnyk is an attorney for Plaintiff

28   Flannery.  Responding Party objects that this request invades the Responding Party's right to privacy

8

protected under the California and U.S. Constitutions.  *Cal. Const., art. I, §§1 & 13; U.S. Const., 4th &14th Amends.*  When discovery of information, which is private and protected under the California Constitution, is sought, the information must be directly relevant to the instant litigation and must be obtained through the least-intrusive means available, designed only to reach the directly relevant information, while still protecting all private information.  Responding Party objects to this Request to the extent that it seeks Documents or Communications subject to the attorney-client privilege or the attorney work product doctrine.

### A.   **Flannery's Position**

At the July 17 meet-and-confer, the parties agreed that the scope of this request would be limited to documents relating to Flannery and/or the individuals and entities expressly listed in the RFP, and, as with all RFPs, that the temporal scope of this RFP would be from January 1, 2018 to the present.  (*See* Menitove Decl. Ex. 3.)  The sole remaining dispute related to this RFP is Anderson's refusal to collect ESI and search it using agreed-upon search terms, which Anderson's counsel stated he found laughable during the parties' meet-and-confer because Anderson is a retired long-haul truck driver.  (Menitove Decl. at 2.)[1]  Flannery's position is that Anderson must collect his ESI, including emails and text messages, and subject it to reasonable, agreed-upon search terms in order to fulfill his discovery obligations under the Federal Rules of Civil Procedure.

"It is well settled that a party responding to a discovery request has a duty to make a reasonable search of all sources reasonably likely to contain responsive documents."  *Est. of Moreno by & through Moreno v. Corr. Healthcare Companies, Inc.*, No. 4:18-CV-5171-RMP, 2020 WL 5739747, at *3 (E.D. Wash. Jan. 8, 2020) (citation omitted).  In light of this duty, courts regularly order parties refusing to conduct a reasonable search of ESI to engage in a search process employing search terms.  *See, e.g.*, *MGA Ent., Inc. v. Nat'l Prod. Ltd.*, No. CV 10-07083 (JAK) (SSX), 2012 WL 12886446, at *3 (C.D. Cal. Jan. 26, 2012) (ordering defendant to conduct ESI search using agreed-upon search terms after inadequate client-led search without attorney supervision); *Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 536 (E.D. Cal. 2023) (ordering search of ESI); *Fenerjian v.*

---

[1] Anderson's counsel did not stand on the privacy objection to this RFP during the parties' meet-and-confer, or explain how privacy could be impacted by this RFP.  As discussed below, privacy concerns provide no basis to withhold documents because a protective order has been entered.

---

1  *Nong Shim Co.*, Ltd, No. 13-CV-04115 (WHO) (DMR), 2016 WL 1019669, at *6 (N.D. Cal. Mar.

2  15, 2016) (ordering use of specific search terms requested by plaintiff).

3      Here, Anderson refuses to collect and search ESI based on assertions that he is a "retired

4  long-haul truck driver" who purportedly has limited responsive ESI, but such assertions do not

5  provide any basis for refusing to conduct a reasonable search.  And Anderson's counsel "does not

6  explain how [he] could know what information [Anderson's] emails contain in light of the fact that

7  [he] has yet to find them." *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035 GEB

8  AC, 2015 WL 502697, at *7 (E.D. Cal. Feb. 5, 2015) (Claire, J.).  Nor is the fact that Anderson is an

9  individual any basis to refuse to conduct a reasonable search for ESI.  Indeed, other individual

10  Conspirators, including the Mahoney and Hamilton Conspirators, already have conducted such

11  searches using search terms agreed upon with Flannery in response to third-party subpoenas.

12  Anderson should be compelled to do the same.

13      **B.**   **Anderson's Position**

14      A party seeking to compel discovery has the initial burden to establish that its request is

15  proper under Rule 26(b)(1).  *FRCP 26(b)(1).*  If the request is proper, the party resisting discovery

16  has the burden of showing why discovery was denied; they must clarify and support their objections.

17  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975).  In a motion to compel, the moving

18  party bears the burden of showing why the other party's responses are inadequate or their objections

19  unjustified. *Williams v. Cate*, 2011 U.S. Dist. LEXIS 143862, 2011 WL 6217378 at *1 (E.D. Cal.

20  Dec.14, 2011), citing *Ellis v. Cambra*, 2008 U.S. Dist. LEXIS 109050, 2008 WL 860523 at *4 (E.D.

21  Cal. Mar.27, 2008).

22      Though Flannery did not attempt to meet its burden establishing that its request is proper

23  under Rule 26(b)(1), the fact is Anderson still supplemented his discovery response with a statement

24  that "Responding Party states that after having made a diligent search and reasonable inquiry there

25  are no documents in his possession that are responsive to this Request that are not already in

26  Flannery's possession. Discovery is ongoing."  (Hannah Decl. Ex. 1).  This is in line with the party's

27  stipulation that documents equally available to Flannery, such as communications with Melnyk, need

28  not be produced.  (Menitove Decl. Ex. 3.)

1    **REQUEST NO. 2**

2    All Communications between You and any Conspirator.

3    **RESPONSE TO REQUEST NO. 2**

4    Objection.  Responding Party objects that this discovery request was served electronically without the

5    consent in writing of Responding Party in violation of *FRCP (b)(2)(E)*.  Responding Party objects

6    that Propounding Party is estopped from taking the position that these requests were served on

7    September 19, 2023, (or served properly) after negotiations during the Rule 26(f) conference indicated

8    that there would be an agreement to limit discovery in this case, only to be informed on September

9    28, 2023, that there was no agreement.  This is highly prejudicial gamesmanship clearly planned to

10   give Responding Party the least amount of time possible to respond.  The Request for Production

11   unilaterally defines Responding Party as a "Conspirator."  Responding Party objects to this unilateral

12   definition as it seeks to make a legal claim or fact without any evidentiary or legal basis.  Responding

13   Party will not respond to any discovery requests as a "Conspirator" due to the highly prejudicial nature

14   of the definition.  For example, if a cross complaint were filed asserting a cause of action for financial

15   elder abuse, then Plaintiff should be defined as "Elder Abuser" in future discovery requests.

16   Responding Party further objects that this Request is overly broad, unduly burdensome, not

17   proportional and seeks information that is not reasonably calculated to lead to the discovery of

18   admissible evidence.  Responding Party objects that this Request is vague and ambiguous as to time,

19   it is unclear if these communications include things such as childhood birthday cards exchanged

20   between distant relatives, holiday greeting cards, graduation announcements, and personal letters

21   received by Responding Party.  Responding Party objects to this Request to the extent that it seeks

22   Documents or Communications subject to the attorney-client privilege or the attorney work product

23   doctrine.

24   **A.    Flannery's Position**

25   During the meet-and-confer, the parties agreed to limit this request to the time period from

26   January 1, 2018 to the present, but Anderson indicated that he would stand on his objection to the

27   use of the defined term "Conspirator" and objections related to overbreadth and undue burden.

28   Anderson's counsel expressly stated that Flannery must move to compel any response to this RFP.

11

Anderson's objections are baseless.  The use of the defined term "Conspirator," which Flannery used to reflect the fact that many Conspirators have reached settlement agreements with Flannery already and are not currently defendants in the litigation, provides no basis to withhold responsive, non-privileged documents that are plainly relevant.  Anderson's objection that the RFP "unilaterally defines Responding Party as a 'Conspirator'" also is factually baseless, as the definition of Conspirator in the RFPs *omits* Anderson.[2]  Even if the use of a defined term could somehow result in prejudice, a position for which Anderson cites no authority, Anderson expressly wrote in his objections that "[n]othing herein shall be construed as an admission . . . regarding . . . the truth or accuracy of any characterization contained in [an RFP]."  (Menitove Decl. Ex. 2.)  And Flannery has explained that merely producing documents would not constitute an admission or acceptance that any group of parties are "Conspirators."  (*Id.* Ex. 3.)

Anderson's remaining objections are similarly without merit.  As this Court has explained, "[d]iscovery may be obtained as to 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'"  *Timmerman Starlite Trucking, Inc. v. Ingredion Inc.*, No. 2:19-CV-01876-JAM-AC, 2020 WL 6158241, at *2 (E.D. Cal. Oct. 21, 2020) (Claire, J.) (quoting Fed. R. Civ. P. 26(b)(1)).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  *Id.* (quoting Fed. R. Evid. 401).  A party resisting discovery is "required to carry a heavy burden of showing why discovery was denied."  *Id.* (quoting *Blankenship v Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  "[B]oiler plate objections, without explanation, are . . . insufficient as a sole basis for an objection."  *Bumpus v. U.S. Fin. Life Ins. Co.*, No. 2:20-CV-00926 MCE AC, 2023 WL 5002935, at *4 (E.D. Cal. Aug. 4, 2023) (Claire, J.).

Here, communications among alleged Conspirators are directly relevant to proving the existence of the conspiracy, and Anderson does not explain his boilerplate objections as to overbreadth and undue burden.  To the contrary, during the meet-and-confer, Anderson's counsel represented that he expected a small volume of such communications would exist.  Nor does

---

[2] "Conspirator" is defined as "any of the parties described in paragraphs 35-64, 66-78, and 80-91 of the Complaint and any person acting for or on their behalf, including their attorneys and brokers." (Menitove Decl. Ex. 1.)

1  Anderson explain his position that this request for communications with an enumerated list of

2  specific parties is so vague that he purportedly cannot identify responsive documents.   Thus,

3  Anderson should be compelled to search for and produce responsive documents, including through

4  the use of agreed-upon search terms.

5      **B.      Anderson's Position**

6      A party seeking to compel discovery has the initial burden to establish that its request is

7  proper under Rule 26(b)(1).   *FRCP 34(b)(2)(B)*.   Relevancy to the subject matter of the litigation

8  "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to

9  other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v.*

10 *Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).   Relevance, however, does not

11 establish discoverability.   In 2015, a proportionality requirement was added to Rule 26.   Under the

12 amended Rule 26, relevance alone will not justify discovery; discovery must also be proportional to

13 the needs of the case.   "If the requirement for proportionality in discovery means anything, however,

14 it must mean that burdensome, tangential discovery should not be permitted based on the mere

15 possibility that something may turn up to support what is otherwise only speculation." *VibrantCare*

16 *Rehab., Inc. v. Deol*, 2022 U.S. Dist. LEXIS 116923, *8-9, 2022 WL 2392478 citing *McCall v. State*

17 *Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2017 U.S. Dist. LEXIS 117250, 2017 WL

18 3174914, at *9 (D. Nev. July 26, 2017).

19     The court has broad discretion in determining relevancy for discovery purposes.  *Surfvivor*

20 *Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett*, 296 F.3d at 751)

21 (superseded by statute on other grounds).   Additionally, "District courts need not condone the use of

22 discovery to engage in "fishing expeditions." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir.

23 2004).

24     As stated in the objections, this Request has the overbreadth of potentially asking items such

25 as birthday cards or Christmas cards.   As to justification for relevance of this Request, Flannery

26 simply states that "communications among alleged Conspirators are directly relevant to proving the

27 existence of the conspiracy".   This does not attempt to limit the scope of this Request in any

28 meaningful way.   It was not agreed to during the meet and confer process that this Request was

13

limited to 2018, that issue was glossed over as stated above.  This Request is not limited to the complaints and grievances regarding issues like those presented to the court in this case.  As alleged in the Complaint, Flannery approached individuals to buy their properties in the Jepson Prairie and Montezuma Hills area of Solano County, California.  ECF No. 1 ¶ 5.  This area hosts several utility-scale commercial wind farms and transmission lines, substations, and other energy infrastructure as well as numerous environmental conservation and mitigation projects. ECF No. 1 ¶ 5.  Asking for all communication with a laundry list of people is an unlicensed fishing expedition without tying it to what is asserted in the Complaint.

The term "Conspirator" is also overbroad.  The definition states "[a] "Conspirator" shall mean any of the parties described in paragraphs 35-64, 66-78, and 80-91 of the Complaint and any person acting for or on their behalf, including their attorneys and brokers.  This leaves Anderson with over 50 pages of the Complaint to decipher.  Additionally, it adds the extremely expansive "any person acting on their behalf" request.  This makes 50 pages of individuals in addition to whoever may have been acting on their behalf.   This is burdensome, tangential discovery and should not be permitted on the possibility that something may turn up.

The term "Conspirator" is highly prejudicial.  The optics and future use of these discovery responses lend itself towards the prejudice.  Even the statements of Flannery in this Joint Statement lean towards this prejudice. For example, Flannery's statement above that "other individual Conspirators, including the Mahoney and Hamilton Conspirators"' is quite prejudicial.  When there is a deposition of Mr.  Anderson, he will be asked a question regarding the responses with the term Conspirators.  The transcript would show Anderson having to respond to improper prejudicial questions regarding the purported "Conspirators", which would be objected to and lead to further discovery disputes.  District courts exercise "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).  Having a prejudicial definition such as "Conspirators" would lead to unnecessary future discovery disputes.  If Flannery wants Anderson to search for documents for a particular individual or individuals, they should state that individual's name or use a neutral definition.   This would make the entire process for amicable and easier for all participants.

1    However, in good faith effort, Anderson represented he would and did supplement its discovery

2    response to this Request.  (Hannah Decl. Ex. 1).

3              **REQUEST NO. 3**

4              All Documents relating to any actual or potential Meeting between You and any

5    Conspirator.

6              **RESPONSE TO REQUEST NO. 3**

7              Objection.  Responding Party objects that this discovery request was served electronically

8    without the consent in writing of Responding Party in violation of *FRCP (b)(2)(E)*.  Responding

9    Party objects that Propounding Party is estopped from taking the position that these requests were

10   served on September 19, 2023, (or served properly) after negotiations during the Rule 26(f)

11   conference indicated that there would be an agreement to limit discovery in this case, only to be

12   informed on September 28, 2023, that there was no agreement.  The Request is vague and ambiguous

13   as to time.  Responding Party further objects that this Request is overly broad, unduly burdensome,

14   not proportional and seeks information that is not reasonably calculated to lead to the discovery of

15   admissible evidence.   The Request for Production unilaterally defines Responding Party as a

16   "Conspirator."  Responding Party objects to this unilateral definition as it seeks to make a legal claim

17   or fact without any evidentiary or legal basis.  Responding Party will not respond to any discovery

18   requests as a "Conspirator" due to the highly prejudicial nature of the definition.  For example, if a

19   cross complaint were filed asserting a cause of action for financial elder abuse, then Plaintiff should

20   be defined as "Elder Abuser" in future discovery requests.  Responding Party objects to this Request

21   to the extent that it seeks Documents or Communications subject to the attorney-client privilege or

22   the attorney work product doctrine.

23        **A.      Flannery's Position**

24             Anderson's objections to this RFP track those to RFP 2, consisting of his baseless objection

25   to the defined term "Conspirator" and boilerplate objections regarding overbreadth and burden.

26   Anderson should be compelled to produce documents responsive to this RFP for the same reasons

27   as RFP 2.   Meetings between conspirators are clearly relevant to proving the existence of a

28   conspiracy because they are probative of opportunities to conspire and may reveal how the

                                          15

conspiracy was formed or conducted.  As with RFP 2, Anderson does not explain his boilerplate objections or how this request would be unduly burdensome, especially in light of Anderson's counsel's assertion that Anderson only has limited interactions with Conspirators.  Thus, Anderson should be compelled to search for and produce responsive documents, including through the use of agreed-upon search terms.

**B.    Anderson's Position**

Due to the short time that was given Anderson to provide his argument in this Joint Statement and the page constraints, Anderson incorporates his law and argument from Request No. 2. Additionally, Flannery does not meet its burden that its request is proper under Rule 26(b)(1) and its relevancy.  Flannery states that "[m]eetings between conspirators are clearly relevant to proving the existence of a conspiracy because they are probative of opportunities to conspire and may reveal how the conspiracy was formed or conducted."  This is not limited to the complaints and grievances regarding issues like those presented to the court in this case.  If this request was limited to meetings regarding property in Jepson Prairie and Montezuma Hills area of Solano County or meetings regarding Flannery, that would make more logical sense that it was reasonably calculated to lead to the discovery of admissible evidence.   Such a broad request without limitations makes it difficult determine what Anderson should be searching for.  However, in good faith effort, Anderson represented he would and did supplement his discovery response to this Request. (Hannah Decl. Ex. 1).

**REQUEST NO. 4**

All Documents relating to selling or not selling interests in real property in Solano County, California, including any actual or contemplated transactions involving interests in real property in Solano County.

**RESPONSE TO REQUEST NO. 4**

Objection.  Responding Party objects that this discovery request was served electronically without the consent in writing of Responding Party in violation of *FRCP (b)(2)(E)*.  Responding Party objects that Propounding Party is estopped from taking the position that these requests were served on September 19, 2023, (or served properly) after negotiations during the Rule 26(f)

conference indicated that there would be an agreement to limit discovery in this case, only to be informed on September 28, 2023, that there was no agreement.  The Request is vague and ambiguous as to time.  For example, it is unclear if this Request is also referring to interests in oil, gas, or minerals, or other interests in real property besides the property itself.  This Request does not specify who would be selling or not selling interest in real property in Solano County, or who the parties to any actual or contemplated transactions are.  Responding Party further objects that this Request is overly broad, unduly burdensome, not proportional and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party objects that this request invades the Responding Party's right to privacy protected under the California and U.S. Constitutions.  *Cal. Const., art. I, §§1 & 13; U.S. Const., 4th &14th Amends*.  When discovery of information, which is private and protected under the California Constitution, is sought, the information must be directly relevant to the instant litigation and must be obtained through the least-intrusive means available, designed only to reach the directly relevant information, while still protecting all private information.  Responding Party objects to this Request to the extent that it seeks Documents or Communications subject to the attorney-client privilege or the attorney work product doctrine.

### A.  **Flannery's Position**

During the meet-and-confer, the parties discussed Anderson's objection to the phrase "selling or not selling," and Flannery subsequently proposed in its July 22 letter that "or not selling" could be considered deleted from this RFP and RFP 5 based on the understanding (discussed during the meet-and-confer) that documents "relating to selling" interests in real property include documents relating to whether or not to sell such interests.  (Menitove Decl. Ex. 3.)  Nonetheless, in subsequent correspondence, Anderson asserts concerns about overbreadth and vagueness with respect to this RFP.  (*Id.* Ex. 8 (referring to uncertainty about the phrase "property right," which does not appear in the RFPs).)  This objection, and the general dispute regarding collection and searching of ESI, are the remaining disputes with respect to this RFP.[3]

Anderson's objection that the phrase "selling interests in real property in Solano County" is

---

[3] To the extent Anderson intends to reassert a privacy-based objection, it fails as described below.

incomprehensible does not provide sufficient basis to withhold all responsive documents.  As this Court has explained, a party objecting that discovery is "vague or ambiguous" must "explain the particular ways in which a request is vague . . . by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Stingley v. Sacramento*, No. 2:23-CV-00255-TLN-AC, 2023 WL 6296867, at *3 (E.D. Cal. Sept. 27, 2023) (Claire, J.) (citations omitted).  Where "requests are perfectly amenable to reasonable construction," a resisting party "will be ordered to respond to the best of [his] ability," particularly where the propounding party has "attempted to resolve ambiguities where counsel claimed something was unclear." *Id.*

Flannery has explained to Anderson that this RFP includes interests in oil, gas, or minerals and the other interests referred to in Anderson's objection, but Anderson's counsel still maintains that he cannot comprehend what an interest in real property means.  Nevertheless, the RFP is both susceptible to interpretation based on the ordinary meaning of its terms and has been explained by Flannery, such that this objection provides no basis to withhold all responsive documents.  Indeed, even if certain (hypothetical) potential interests were still unclear to Anderson's counsel, "[i]t is improper to withhold production of a document to which a party has no valid objections, solely on the grounds that the request is too broad . . . .  Instead, the requested party must produce the un-objectionable documents." *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, No. 2:11-CV-3471 KJM AC, 2016 WL 304564, at *3 (E.D. Cal. Jan. 26, 2016) (Claire, J.).

Boilerplate objections regarding overbreadth and burden are similarly unavailing.  Documents related to selling interests in real property in Solano County are directly relevant because they speak to Anderson's (or other parties') intentions with regard to property subject to the conspiracy.  And unelaborated claims of burden ring hollow in light of Anderson's counsel's representations that Anderson did not intend to sell his remaining property, which would presumably result in a low volume of responsive documents.  Thus, Anderson should be compelled to search for and produce responsive documents, including through agreed-upon search terms.

//

18

**B.**   <u>**Anderson's Position**</u>

Due to time and length constraints, Anderson incorporates the law cited in his position in the preceding Requests.  The request to search for documents regarding "selling interests in real property in Solano County, California" is far too broad and at a minimum was a contentious point during the meet and confer process that needed to be fleshed out more.  There was a considerable time spent discussing what Flannery considered an "interest in real property", which can be referred to as a property right.  (Menitove Decl. Ex. 8.).  Flannery took the position during the meet and confer process that a single-family residence rental in a city would be encompassed by this RFP. (Hannah Decl. at ¶8).  Flannery also took the position that Mr. Anderson should produce any rental agreements he has in the County because that would have to do with property valuation.  (Hannah Decl. at ¶8).  It is unknown how information about single-family residences has any relation to the allegations in the Complaint regarding the properties in the Jepson Prairie and Montezuma Hills area of Solano County.  It is unknown why Flannery needs to delve into all of the properties in Solano County, when the Complaint is clearly limited to the Jepson Prairie and Montezuma Hills area of Solano County.  This request is not limited to the complaints and grievances regarding issues like those presented to the court in this case.  There is no logical correlation between a purported conspiracy regarding property in Jepson Prairie and Montezuma Hills area of Solano County and single-family rentals in major cities like Vacaville, Vallejo, Rio Vista, and Fairfield.  This Request for Production even has the breadth to bring in Anderson's own primary residence which is completely unrelated to this case.  In the above statement "with regard to property subject to the conspiracy", Flannery seems to now be limiting the requests to the properties Flannery purports was subject to a conspiracy.  This point was not discussed during the meet and confer and it would have been productive to discuss in a good faith meet and confer process.

Additionally, this request delves into protected financial information, such as Anderson's financial dealings with his rentals and tenants.  The right of privacy is not bar to discovery; instead, the court must balance the need for the information against the claimed privacy right.  *Stallworth v. Brollini*, 288 F.R.D. 444 (N.D. Cal. 2012). A "balancing approach in federal court is consistent with California law[.]"  *BRV, Inc. v. Superior Court*, 143 Cal.App.4th 742, 752, 49 Cal. Rptr. 3d 519

19

(2009).  This balancing test is articulated in *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 698 (E.D. Cal. Feb. 2, 1993).  "The court considers the following factors in determining the scope of protection to be accorded in the privacy context: (1) the probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of that encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment."  *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 698 (E.D. Cal. Feb. 2, 1993).

Due to page and time constraints (See Joint Statement Section above), Anderson asks that if this Court intends to rule on the privacy objection, the Court find good cause to allow supplemental briefing on this matter.

As for the presence of a protective order, it is not enough to protect Anderson's privacy interests.  Additionally, it would put Anderson at a disadvantage in negotiating a settlement in this case.  The issue lies with Flannery's counsel negotiating settlements in this case.  As stated above in Flannery's position, they have negotiated settlements with other defendants.  Allowing Flannery's counsel to view financial affairs of Anderson, such as his rental properties, allows them undue leverage in any settlement negotiation.  However, in a good faith effort, Anderson represented he would and did supplement his discovery response to this Request.  (Hannah Decl. Ex. 1).

**REQUEST NO. 5**

All Communications between You and any of your Representatives relating to selling or not selling interests in real property in Solano County, California, including all Communications with Gary Archer, Curtis Stocking, Peter Nixon, or any other person employed by or affiliated with Archer & Ficklin, Inc., United Country – Green Fields Real Estate, or Newcastle Properties Group.

**RESPONSE TO REQUEST NO. 5**

Objection.  Responding Party objects that this discovery request was served electronically without the consent in writing of Responding Party in violation of *FRCP (b)(2)(E)*.  Responding

Party objects that Propounding Party is estopped from taking the position that these requests were served on September 19, 2023, (or served properly) after negotiations during the Rule 26(f) conference indicated that there would be an agreement to limit discovery in this case, only to be informed on September 28, 2023, that there was no agreement.  The Request is vague and ambiguous as to time.  Responding Party further objects that this Request is overly broad, unduly burdensome, not proportional and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  This request seems to be asking for information about "not selling" property which could be anything.  This Request seeks information equally available to Plaintiff, for example Richard Melnyk is an attorney for Plaintiff Flannery and has information pertaining to this request.  Responding Party objects to this Request to the extent that it seeks Documents or Communications subject to the attorney-client privilege or the attorney work product doctrine.  Responding Party objects that this request invades the Responding Party's right to privacy protected under the California and U.S. Constitutions.  *Cal. Const., art. I, §§1 & 13; U.S. Const., 4th &14th Amends*.  Responding Party objects to this Request to the extent that it seeks Documents or Communications subject to the attorney-client privilege or the attorney work product doctrine.

### A.   Flannery's Position

The parties' positions as to this RFP mirror those of RFP 4, and Anderson should be compelled to search for and produce responsive documents, including through the use of agreed-upon search terms, for the same reasons.

### B.   Anderson's Position

Due to time and page length constraints, Anderson incorporates the law and arguments cited in his position in the preceding Requests.  Additionally, in a good faith effort, Anderson represented he would and did supplement his discovery response to this Request.  (Hannah Decl. Ex. 1).

### REQUEST NO. 6

All Documents relating to the valuation of real property or any interest in real property in Solano County, California.

### RESPONSE TO REQUEST NO. 6

Objection.  Responding Party objects that this discovery request was served electronically

21

1  without the consent in writing of Responding Party in violation of _FRCP (b)(2)(E)_.  Responding

2  Party objects that Propounding Party is estopped from taking the position that these requests were

3  served on September 19, 2023, (or served properly) after negotiations during the Rule 26(f)

4  conference indicated that there would be an agreement to limit discovery in this case, only to be

5  informed on September 28, 2023, that there was no agreement.  The Request is vague and ambiguous

6  as to time and seeks information that is publicly available.  Responding Party further objects that this

7  Request is overly broad, unduly burdensome, not proportional and seeks information that is not

8  reasonably calculated to lead to the discovery of admissible evidence.  This Request is vague in that

9  it is unclear whether the Request is referring to property owned by Responding Party or any interest

10  held by Responding Party in any property.  Responding Party objects that this request invades the

11  Responding Party's right to privacy protected under the California and U.S. Constitutions.  _Cal._

12  _Const., art. I, §§1 & 13; U.S. Const., 4th &14th Amends_.  Responding Party objects to this Request

13  to the extent that it seeks Documents or Communications subject to the attorney-client privilege or

14  the attorney work product doctrine.

15      **C.    Flannery's Position**

16      During the July 17 meet-and-confer, the parties agreed as to the time period for this request,

17  and Flannery explained that it sought documents related to the valuation of any property or any

18  interest in real property in Solano County.  Anderson's counsel nonetheless stated that Anderson

19  would withhold all documents responsive to this RFP based on both relevance and privacy grounds.

20  Neither objection justifies withholding documents responsive to this RFP.

21      Documents relating to the valuation of real property in Solano County are relevant to

22  Flannery's claims because they will help establish: (i) that Defendants acted against their self-

23  interests—and pursuant to the conspiracy—when declining offers from Flannery at prices above their

24  own valuations; and (ii) the prices at which properties would have sold absent the price-fixing

25  conspiracy.  Anderson's counsel has not disputed this first point.  As for the second, Anderson

26  disputed whether Flannery's damages can be estimated using the requested documents, but a

27  "discovery motion is neither the time nor the place to adjudicate the issue of competing [merits

28  arguments]."  _Timmerman Starlite_, 2020 WL 6158241, at *3.  While Anderson may raise arguments

22

1  about the validity of Flannery's damages analysis at later stages of the litigation, he cannot avoid

2  discovery on that basis.

3         Purported privacy rights also do not provide a basis to withhold responsive documents, as

4  any privacy concerns are adequately addressed by the parties' stipulated protective order, which

5  Anderson joined and this Court entered.  (ECF Nos. 116, 117.)  Anderson's counsel represented

6  during the meet-and-confer that he would furnish Flannery with case law supporting his position that

7  California privacy rights shield Anderson's financial information from discovery notwithstanding

8  the entry of a protective order (*see* Menitove Decl. Ex. 3), but Anderson's counsel failed to do so in

9  the month that followed.  Moreover, any privacy protection under California state law is not binding

10  in this federal court litigation based on federal question jurisdiction.  *See Agster v. Maricopa Cnty.*,

11  422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law

12  claims present, the federal law of privilege applies.").

13         In any event, courts, including this Court, regularly hold that any such privacy concerns may

14  be resolved through a protective order.  *See, e.g.*, *Cal. Sportfishing Prot. All. v. Chico Scrap Metal,*

15  *Inc.*, No. 2:10-CV-1207-GEB-AC, 2014 WL 5093398, at *5 (E.D. Cal. Oct. 9, 2014) (Claire, J.)

16  (compelling production because "defendants' privacy rights can be adequately protected with a

17  protective order"); *Sanchez v. Cnty. of Sacramento,* No. 2:19-CV-01545-MCE-AC, 2020 WL

18  605882, at *4 (E.D. Cal. Feb. 7, 2020) (Claire, J.) (compelling production subject to stipulated

19  protective order).  Anderson does not argue that the parties' stipulated protective order, under which

20  documents may be produced as confidential or attorneys' eyes only, is inadequate to address his

21  concerns.  Accordingly, Anderson should be compelled to search for and produce all responsive

22  documents, including through the use of agreed-upon search terms.

23         **D.    <u>Anderson's Position</u>**

24         Due to time and length constraints, Anderson incorporates the law cited in its position in the

25  preceding Requests.  Flannery has not articulated why this Request must encompass all of Solano

26  County rather than just the areas at issue in the case.  It is not stated how a single-family residence

27  in a city would be reasonably calculated to show that "i) that Defendants acted against their self-

28  interests—and pursuant to the conspiracy—when declining offers from Flannery at prices above their

23

1   own valuations; and (ii) the prices at which properties would have sold absent the price-fixing

2   conspiracy."  In fact, this strengthens Anderson's position that this Request is overbroad.

3       To the extent Flannery is seeking current basis/values of property in California, they are under

4   the mistaken assumption that valuations are reflective of the fair market value of property.  "In June

5   1978, California voters adopted Proposition 13, an initiative measure which amended the state

6   Constitution by adding article XIII A (article XIII A). 2 CA(1) (1) The general purpose of Proposition

7   13 (to avoid confusion, all further references to Prop. 13 shall be to article XIII A) was to afford tax

8   relief to California real property owners by imposing (1) limitations upon the tax rate applicable to

9   real property, (2) restrictions on the valuation and assessment of real property…"  *Cal. Bldg. Indus.*

10  *Ass'n v. Governing Bd.*, 206 Cal. App. 3d 212, 219.  Further, Cal. Const. Art. XIIIA converts

11  California from a current value method of real property taxation to an acquisition value system of

12  taxation. *Lynch v. State Bd. of Equalization* (Cal. App. 3d Dist. Jan. 25, 1985), 164 Cal. App. 3d 94.

13  Since 1978, the valuation of property for California tax purposes no longer has any bearing on the

14  current value or fair market value of property.  If Flannery seeks only valuations where there has

15  been a realization event which triggers the real value of property, that was never relayed to Anderson.

16  Flannery could have narrowed this to appraisals and reassessment events relating to the fair real value

17  of property in Jepson Prairie and Montezuma Hills area of Solano County, but that was never

18  discussed due to the insufficient meet and confer process.

19      Due to page and time constraints (See Joint Statement Section above), Anderson asks that if

20  this Court intends to rule on the privacy objection, the Court find good cause to allow supplemental

21  briefing on this matter.  Additionally, in a good faith effort, Anderson represented he would and did

22  supplement his discovery response to this Request.  (Hannah Decl. Ex. 1).

23  ### **REQUEST NO. 7**

24      All Documents relating to the valuation of property interests in Solano County submitted to

25  the Internal Revenue Service, the California Franchise Tax Board, or any other government entity,

26  whether local, state, or federal.

27  ### **RESPONSE TO REQUEST NO. 7**

28      Objection.  Responding Party objects that this discovery request was served electronically

without the consent in writing of Responding Party in violation of *FRCP (b)(2)(E).*  Responding Party objects that Propounding Party is estopped from taking the position that these requests were served on September 19, 2023, (or served properly) after negotiations during the Rule 26(f) conference indicated that there would be an agreement to limit discovery in this case, only to be informed on September 28, 2023, that there was no agreement.  The Request is vague and ambiguous as to time and seeks information that is publicly available.  Responding Party further objects that this Request *13; U.S. Const., 4th &14th Amends*.  When discovery of information, which is private and protected under the California Constitution, is sought, the information must be directly relevant to the instant litigation and must be obtained through the least-intrusive means available, designed only to reach the directly relevant information, while still protecting all private information.  Responding Party objects to this Request to the extent that it seeks Documents or Communications subject to the attorney-client privilege or the attorney work product doctrine.

### E.    **Flannery's Position**

The parties' positions as to this RFP mirror those of RFP 6, and Anderson should be compelled to search for and produce responsive documents, including through the use of agreed-upon search terms, for the same reasons.

### F.    **Anderson's Position**

Due to time and page length constraints, Anderson incorporates the law and arguments cited in its position in the preceding Request No. 6.  Additionally, in a good faith effort, Anderson represented he would and did supplement his discovery response to this Request.  (Hannah Decl. Ex. 1).

Dated: September 4, 2024                    By:  ___/s/ *Michael H. Menitove*___

Matthew Martino (*pro hac vice*)
matthew.martino@skadden.com
Michael H. Menitove (*pro hac vice*)
michael.menitove@skadden.com
Evan Levicoff (*pro hac vice*)
evan.levicoff@skadden.com
Thomas J. Smith (*pro hac vice*)

thomas.smith@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (917) 777-3000

Lance A. Etcheverry (SBN 199916)
lance.etcheverry@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Plaintiff*
*Flannery Associates LLC*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS                    CASE NO. 2:23-CV-00927-TLN-AC