UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLANNERY ASSOCIATES, LLC, | No. 2:23-cv-0927 TLN AC |
| Plaintiff, | |
| v. | ORDER |
| BARNES FAMILY RANCH ASSOCIATES, LLC, et al., | |
| Defendants. | |

This matter is before the court on a motion to compel brought by plaintiff against non-party BLK Entities. ECF No. 135. This discovery motion was referred to the magistrate judge pursuant to E.D. Cal. R. 302(c)(1). The motion was taken under submission. ECF No. 136. For the reasons set forth below, the motion to compel is GRANTED.

**I.    Relevant Background**

Plaintiff Flannery Associates, LLC ("Flannery") is a Delaware limited liability company which, since 2018, has been purchasing rangeland properties in the Jepson Prairie and Montezuma Hills areas of Solano County, California. ECF No. 1 at 5. Flannery has purchased or is under contract to purchase approximately 140 properties. Id. Plaintiff contends that defendants, a group of landowners, repeatedly engaged with Flannery to discuss possible sales, only to defer further negotiations under various pretenses, and have conspired with one another to

1

drive up the cost of their properties through a price-fixing conspiracy. Id. at 5-8.

Flannery filed a state court case against BLK Entities in 2022 arising out of Flannery's efforts to purchase land owned by BLK Entities. ECF No. 137 at 3; Gassy Lassy L.P. v. Barnes Family Ranch Corporation, No. 34-2022-00329551-CU-FR-GDS (Cal Super. Ct. 2002). While litigating that case, Flannery uncovered communications that it alleges demonstrate a price fixing conspiracy in violation of federal Antitrust law, including an exchange between alleged conspirators Richard Hamilton and Kirk Beebe. ECF No. 137 at 2-3. The "smoking gun" email that was discovered in the state court case and gave rise to the federal action at bar was obtained from Kirk Beebe's employer, CBRE. ECF No. 137 at 3-4. Flannery and the BLK Entities settled the state court case on July 3, 2023, entering into a "Purchase and Sale and Joint Release Agreement" or "PSA." Id. at 5. In relevant part, the PSA (ECF No. 137-1 at 149) states that Flannery and the BLK Entities agreed to release each other from "any and all claims," but the release expressly excludes "conduct that occurs after the Effective Date" of the PSA. ECF No. 137-1 at 227. The PSA also included language that obligated Kirk Beebe and Susan Beebe Furay to undertake certain "continuing discovery obligations." With respect to Kirk Beebe, the PSA states:

> Kirk shall provide to Buyer any and all text, SMS, iMessage, WhatsApp, or other electronic messages, excluding emails (collectively, "Messages") in his possession, custody, or control as of May 15, 2023 that are responsive to the discovery requests that have been served on Kirk (in his capacity as a Managing Member of Barnes Seller, Lambie Seller, and Kirby Seller) . . .

ECF No. 137-1 at 154.

The PSA contains a "Governing Law/Forum Selection" clause. At §7.4. ECF No. 137-2. This clause reads, in relevant part as follows:

> [A]ny and all Claims and court orders arising out of or relating to the subject matter of this Agreement (including all tort Claims and court orders arising from such tort Claims), and the enforcement of any such orders, shall be governed by the substantive laws of the State of California without regard to the conflicts of laws principals thereof. Any litigation or other legal proceeding of any kind (including tort Claims) based upon or in any way related to this Agreement, its subject matter, its construction and interpretation, the enforcement of any court order in any way related to this Agreement, or the rights

>and obligations of the Parties to this Agreement shall be brought exclusively in Sacramento County Superior Court of California or the United States District Court, Northern District of California.

ECF No. 137-2 at 25.

Flannery filed the federal lawsuit at bar on May 18, 2023, for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, and derivative violations of the California Business and Professions Code. ECF No. 1. The BLK defendants and Flannery settled, submitting their notice of voluntary dismissal on October 17, 2023. ECF No. 83. On or about November 10, 2023, counsel for Flannery caused non-party subpoenas to be served on the BLK Entities pursuant to Rule 45, Federal Rules of Civil Procedure. ECF No. 137 at 6. The subpoenas were accompanied by an email from Andrew J. Fuchs, one of Flannery's attorneys, that stated, "We are serving these pursuant to Section 5.8(c) of the Purchase Agreement[.]" ECF No. 137-2.

In August 2024, the BLK Entities produced documents responsive to Flannery's subpoenas. These documents were identified using search terms that Flannery provided and that were broader than the terms previously applied (pursuant to the parties' agreement under the PSA) to search Mr. Beebe's and Susan Beebe Furay's phones. ECF No. 137 at 15. Upon reviewing the BLK Entities' production, Flannery noticed that documents had been redacted for privilege, including emails sent to and from Mr. Beebe's CBRE account. Id. The dispute now before the court arises out of the decision to withhold the documents sent to and from Mr. Beebe's CBRE account on claims of attorney-client privilege: Flannery claims that by sending otherwise privileged communication through the CBRE email server, Mr. Beebe caused a general waiver of attorney-client privilege as to those communications.

## II. Motion to Compel

Flannery moves to compel the BLK Entities to produce documents sent to or from Kirk Beebe's email account maintained by his employer, CB Richard Ellis, Inc. ("CBRE") that are responsive to the subpoena issued to BLK Entities but that have been withheld or redacted on the basis of attorney-client privilege. ECF No. 137 at 2. It is undisputed by the parties that CBRE maintains policies in both its Employee Handbook and its Standards of Business Conduct that make clear CBRE retains the right to monitor employees' use of its systems and cautions

3

employees that they have no expectation of personal privacy with respect to any content or communications stored therein. ECF No. 137 at 4.

The question at the heart of the motion to compel is whether Kirk Beebe, by virtue of sending otherwise privileged emails to his attorneys using his CBRE email account, caused a waiver of attorney-client privilege as to those emails. The parties dispute whether California or federal privilege law applies in answering the question of waiver. The BLK Entities argue that because the subpoenas are related to the prior state lawsuit it is governed by the PSA, which contains a California choice of law provision. ECF No. 137 at 7-9. Flannery, on the other hand, argues the federal common law applies. Id. at 18-22. Accordingly, the court must first determine whether federal or state privilege law applies, and then address the question of waiver.

### III.    Analysis

#### A.    Applicable Law

"Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005). Here, Kirk Beebe was served with a non-party subpoena pursuant to Fed. R. Civ. P. 45 as part of discovery in this federal case, which is before the court on federal question jurisdiction. ECF No. 137-1 at 196, 200. The subpoena itself contains no direct reference to the earlier state action between Flannery and the BLK Entities or the associated PSA, though the subpoena does note that documents "already produced to Flannery in separate litigation do not need to be produced again in response to these requests for production." ECF No. 137-1 at 202. In the email sending the subpoenas to BLK's counsel, however, Flannery's counsel stated that the subpoenas were served "pursuant to Section 5.8(c) of the Purchase Agreement[.]" ECF No. 137-2 at 11.

Upon full review of the applicable law, the facts presented, and the parties' arguments, the court concludes that the federal common law applies to the issue of privilege in this case, as it does in all cases before a federal court acting pursuant to federal question jurisdiction. Except for the reference to the PSA in counsel's email serving the subpoena, there is nothing to indicate that the PSA would govern the subpoena. A review of the PSA itself supports this position, as its provisions expressly exclude "conduct that occurs after the Effective Date" of the PSA (i.e., July

4

3, 2023), and these subpoenas were served in an unrelated case in November of 2023.  ECF No. 137-1 at 227.  Additionally, the choice of laws provision applies to "and all Claims and court orders *arising out of or relating to* the subject matter of this Agreement," and this federal Antitrust action is a distinct and separate lawsuit.  ECF No. 137-2 at 25 (emphasis added).  The strongest link between the subpoena and the PSA is Flannery's counsel's email stating that the subpoenas were served pursuant to a provision in the PSA, but in light of the fact that the subpoena itself was served pursuant to Fed. R. Civ. P. 45, the court finds that this single remark does not carry the necessary weight to alter the applicable law.  Simply put, the BLK Entities have not demonstrated a strong enough link between the earlier state court case and the associated PSA to show that the PSA's choice of laws provision overrides the default application of federal common law to privilege in this case.  Accordingly, the court will apply federal common law to the question of privilege waiver.

    B. <u>Waiver of Attorney-Client Privilege</u>

"Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure." <u>Clarke v. Am. Com. Nat. Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992).  "An eight-part test determines whether information is covered by the attorney-client privilege: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" <u>United States v. Graf</u>, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting <u>United States v. Martin</u>, 278 F.3d 988, 999 (9th Cir. 2002)).  "As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it.  One of the elements that the asserting party must prove is that it has not waived the privilege." <u>Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.</u>, 647 F.2d 18, 25 (9th Cir. 1981).

Voluntary disclosure of a communication to a third party who is not bound by the privilege, or deliberate disregard for the privilege by making the information public, constitutes an express waiver which destroys the privilege.  See <u>United States v. Sanmina Corp. &</u>

Subsidiaries, 968 F.3d 1107, 1116-1117 (2020).  The attorney-client privilege "is designed to protect confidentiality, so that any disclosure outside the magic circle is inconsistent with the privilege[.]"  Id. at 1120 (quoting United States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997).

The BLK Entities have the burden of demonstrating that privilege is not waived by Mr. Beebe's use of his employer's email system to communicate with his attorney.  To make this showing, BLK relies exclusively on California law, which as discussed above, is inapplicable.  ECF No. 137 at 11-12.  The only federal case mentioned by BLK, cited as "Quon v. Arch Wireless Operating Co, Inc., (9th Cir. 2008) reversed by City of Ontario v. Quon (2010) 130 S Ct. 2619", ECF No. 137 at 13, involves expectations of privacy within the meaning of the Fourth Amendment's prohibition on unreasonable law enforcement searches.  This authority is inapposite.  While Fourth Amendment privacy doctrine is not entirely without value in the waiver of privilege context, the constitutional and evidentiary issues are not identical.  Citation to general privacy principles does not satisfy BLK's burden to demonstrate that the privilege is not waived.  And the undersigned will not rely on general principles where there is persuasive federal authority on point.

Although the Ninth Circuit has yet to address the specific waiver question presented in this case, some district courts have done so.  Applying the federal common law, the court in Alamar Ranch, LLC v. County of Boise wrote:

> Does use of work e-mail waive any privilege?  Although there are no Ninth Circuit cases on-point, cases from other jurisdictions have developed a four factor test to balance the expectation of privacy against the lack of confidentiality: (1) Is there a company policy banning personal use of e-mails?; (2) Does the company monitor the use of its e-mail?; (3) Does the company have access to all e-mails?; and (4) Did the company notify the employee about these policies?

Alamar Ranch, LLC v. County of Boise, No. CV-09-004-S-BLW, 2009 WL 3669741, at *3, 2009 U.S. Dist. LEXIS 101866 (D. Idaho Nov. 2, 2009).  Applying this test, the Alamar court held that where the company policy clearly notifies employees that they do not have an expectation of privacy in their company email, a client waives attorney-client privilege by communicating with

their attorney through their company email.[1]  Id.; see also, Am. Career Coll., Inc. v. Medina, No. 2:21-cv-00698-PSG-SK, 2022 WL 18142503, at *1, 2022 U.S. Dist. LEXIS 235294 (C.D. Cal. Dec. 9, 2022) (party waived attorney-client privilege by sending to or from his work email account otherwise facially privileged emails).  The undersigned finds the reasoning of these cases persuasive.

Here, it is indisputable that Mr. Beebe's employer, CBRE, clearly notified its employees, including Mr. Beebe, that company email was not private.  ECF No. 137 at 20-21.  Both the CBRE Employee Handbook (ECF No. 137-1 at 9) and its Standards of Business Conduct (ECF No. 137-1 at 13) make clear that CBRE retains the right to monitor and access employee email.  Further, CBRE's corporate representative testified that Mr. Beebe: (1) was expected to "agree to" and be "familiar with [CBRE's] general rules and policies"; (2) "was told" that his CBRE emails would be subject to inspection; and (3) "had no reasonable expectation of privacy in his emails . . . on CBRE's servers."  Thorpe Decl. (ECF No. 137-1 at 143) at 93:3-19, 94:15-18, 102:24-103:3.  It is therefore clear that Mr. Beebe had no reasonable expectation of privacy in emails sent via his CBRE account, and that he was on notice that using that account exposed his communications to

////

////

////

---

[1]  In an interesting but easily distinguished case, a court in the Central District of California held that the same rule may not apply when the *attorney* is the one using an employer's email.  In Eastman v. Thompson, the court held that an attorney working for a university that had an email policy allowing some level of university-monitoring did not waive privilege when he communicated with clients through his university email account.  594 F. Supp. 3d 1156, 1177 (C.D. Cal. 2022).  The court explained, "this is not a question of whether an employee can use a work computer for purely personal use.  The questions here are whether to penalize clients of law professors for not understanding university email policies, and how professors should navigate mixed signals about what legal work is allowed as part of their academic jobs."  Id.  In analyzing the question, the Eastman court explained that "though the Ninth Circuit has not explicitly ruled on the issue, the majority of other circuits consider 'whether the client reasonably understood the [conversation] to be confidential' in determining whether communications are privileged. Determining the client's intent hinges on the circumstances of the communication, such as whether disclosure to third parties was intended or considered."  Id.  The court concluded that because the attorney's *client* reasonably believed their communications with him were private, there was no waiver of privilege.  Id.

7

persons not covered by the privilege.  Accordingly, attorney-client privilege is waived as to email sent from that account.[2]

### IV.     Conclusion

For the forgoing reasons the motion to compel (ECF No. 135) is GRANTED and BLK Entities is ORDERED to produce documents sent to or from Mr. Beebe's CBRE email account that are responsive to Flannery's subpoena requests, but have been withheld based on claims of privilege, within 5 days of this order.

IT IS SO ORDERED.

DATED: December 13, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[2]  There is some confusion in the briefing as to whether BLK Entities is arguing that Flannery is collaterally estopped from asserting waiver in this action because it failed to raise the issue in the state court action.  ECF No. 137 at 9.  BLK confirms that its "argument is not one of collateral estoppel but of substantive law."  Id.  Accordingly, the court finds the issue need not be addressed.