| | |
|---|---|
| 1 | MATTHEW M. MARTINO (*pro hac vice*) |
| | matthew.martino@skadden.com |
| 2 | MICHAEL H. MENITOVE (*pro hac vice*) |
| | michael.menitove@skadden.com |
| 3 | EVAN LEVICOFF (*pro hac vice*) |
| | evan.levicoff@skadden.com |
| 4 | THOMAS J. SMITH (*pro hac vice*) |
| | thomas.smith@skadden.com |
| 5 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | One Manhattan West |
| 6 | New York, New York 10001 |
| | Telephone: (212) 735-3000 |
| 7 | Facsimile: (917) 777-3000 |
| 8 | LANCE A. ETCHEVERRY (SBN 199916) |
| | lance.etcheverry@skadden.com |
| 9 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | 525 University Avenue |
| 10 | Palo Alto, California 94301 |
| | Telephone: (650) 470-4500 |
| 11 | Facsimile: (650) 470-4570 |
| 12 | *Attorneys for Plaintiff* |
| | *FLANNERY ASSOCIATES LLC* |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Flannery Associates LLC,<br><br>      Plaintiff,<br><br>    v.<br><br>Barnes Family Ranch Associates, LLC, *et al.*,<br><br>      Defendants. | Case No.: 2:23-cv-00927-TLN-AC<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE SCHEDULING ORDER TO EXTEND THE DISCOVERY DEADLINE** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    I.    DEFENDANTS FAIL TO REFUTE FLANNERY'S DILIGENCE ..................... 2

    II.   DEFENDANTS FACE NO PREJUDICE FROM THE REQUESTED EXTENSION ............................................................................................................ 5

    III.  THE EXTENSION WILL LIKELY ALLOW FLANNERY TO FIND RELEVANT EVIDENCE ................................................................................ 6

    IV.  THE MAJORITY OF THE OPPOSITION IS BASED ON IMPROPER, PREMATURE, AND UNSUPPORTED MERITS ARGUMENTS ...................... 7

    V.   THE MAGISTRATE JUDGE'S DECISION TO GRANT FLANNERY'S MOTION TO COMPEL DOES NOT UNDERMINE THE PROPRIETY OF THE REQUESTED EXTENSION ................................................................... 9

CONCLUSION ........................................................................................................................... 9

**INTRODUCTION**

In their opposition ("Opp."), Defendants Paul and William Dietrich ("Defendants") improperly focus on the merits of Flannery's claims, instead of the good cause standard governing Flannery's Motion to Amend the Scheduling Order (ECF No. 141-1) ("Mot."). If Defendants are so confident that further discovery will not uncover any evidence against them, it is unclear why they so fervently resist Flannery's requested extension to complete discovery largely directed toward *third parties*. Defendants' desperate (and baseless) attempt to bar further discovery is apparent in their blatant mischaracterizations of the record. Notably, Defendants falsely contend that they could not have participated in the alleged price-fixing conspiracy because "[t]he manner in which their property is held in Trust does not allow them to sell" (Opp. at 3)—even though the Trust agreement *expressly allows* them to sell.

Regardless, Defendants' unsupported predictions about the ultimate outcome of this case have no bearing on the proper focus of the Court's analysis—Flannery's diligence in progressing its claims and pursuing discovery thus far. Flannery respectfully requests that the Court grant its motion for a six-month extension of fact discovery for the following reasons.

*First*, Flannery has amply demonstrated diligence in pursuing discovery and advancing this litigation through amicable resolution with 38 of the original 40 defendants. Defendants make no attempt to distinguish the case law Flannery cites, and their conclusory arguments do not reference legal authority. Defendants' suggestions that Flannery has not been diligent are entitled to no weight because they are predicated on factual misrepresentations and, in any event, do not dispute the core facts of Flannery's diligence, which has resulted in the production of over 80,000 pages of documents so far. Defendants also fail to refute Flannery's diligence with entirely baseless speculation that Flannery's Motion is an excuse to avoid supplementing its responses to Defendants' interrogatories. Flannery served its supplemental responses on December 31, as the parties had agreed.

*Second*, Defendants will not face any meaningful prejudice from the requested extension of discovery. Defendants' conclusory assertions of prejudice ring hollow because the requested extension aims to allow Flannery to conduct additional third-party discovery. Defendants contend

1

that they will be prejudiced if such discovery results in evidence that warrants depositions, but Defendants do not explain how any hypothetical depositions—part of the normal costs of litigation—would prejudice them.  And Defendants' contentions that they will ultimately prevail on the merits do not establish any prejudice from allowing Flannery to obtain discovery from third parties.

*Third*, Defendants do not make a showing that the requested discovery is unlikely to yield relevant evidence.  Defendants' self-serving speculation about the documents that will be produced in response to Flannery's subpoenas is not entitled to any weight, and Defendants get nowhere by attempting to argue the merits as to the evidence Flannery has elicited thus far.  Their arguments misrepresent the significance of discovery to date and do not speak to Flannery's diligence.

*Fourth*, Defendants' premature merits arguments provide no basis to deny the requested extension.  Defendants cite no legal authority supporting their misguided attempt to convert a motion to amend the scheduling order into an adjudication of the merits.  Worse still, as noted above, Defendants' arguments ***blatantly misrepresent*** the Trust agreement that purportedly demonstrates Defendants' inability to sell their land.  These misrepresentations provide no basis to prevent Flannery from seeking discovery from former defendants and, if anything, illustrate Defendants' desperation to prevent Flannery from taking further discovery.

*Fifth*, although Flannery's motion to compel against the BLK Entities was resolved (and granted in full) after this Motion was filed, that outcome does not undermine the good cause to grant Flannery's requested extension.  Flannery still has not received discovery from many of the former defendants, and the several months it took for Flannery to obtain documents from the BLK Entities demonstrate why its requested six-month extension is justified.

## ARGUMENT

### I.     DEFENDANTS FAIL TO REFUTE FLANNERY'S DILIGENCE

As Flannery explained in its Motion, good cause exists to amend the scheduling order because Flannery has been diligent in pursuing discovery and advancing its case. (Mot. at 10-13.) Defendants' opposition does not negate this showing.  Rather, they expressly concede that "[t]here is no dispute as to the legal authorities" (Opp. at 5), and nowhere in their opposition do they

attempt to distinguish the decisions Flannery cites or submit any legal authority in support of their proposed application of the law to the facts.  Nor can Defendants dispute the core facts of Flannery's diligence—including Flannery's efforts to issue "subpoenas and request[s] for production [that] elicited the production of more than 89,000 documents."  (*Id.* at 7.)

Defendants instead attempt to distort the record to hide Flannery's diligence, but these distortions do not withstand even minimal scrutiny.  For example, Defendants claim that "Flannery did nothing between September 19 and December 4" (*id.* at 11), but even a cursory glance at the docket shows that Flannery did all of the following in that time period: file a motion to compel against the BLK Entities (ECF No. 133), amend that motion after negotiations with the BLK Entities (ECF No. 135), cooperate with the BLK Entities to prepare a joint statement regarding the disagreement (ECF No. 137), and settle its claims against Defendant Richard Anderson (ECF No. 139).  Similarly, Defendants repeatedly misrepresent the timeline of Flannery's settlements with different defendants.  For example, Defendants contend that "[a]ll the Defendants except the Dietrichs had been released and dismissed by September 2024" (Opp. at 8), despite the fact that Richard Anderson did not settle until November 2024 (ECF No. 139).  More egregiously, Defendants represent that Flannery settled with "the Andersons" in "June 2023" (Opp. at 10), even though Flannery did not settle with the majority of the Anderson Defendants until ***15 months later in September 2024*** (ECF No. 139 (noticing settlement with 14 Anderson Defendants)).

Defendants also fail to refute Flannery's diligence by repeatedly insisting that Flannery provides "no explanation" for the timeline on which it pursued discovery.  (Opp. at 11.)  As Flannery detailed in its Motion, it was impractical for Flannery to press then-defendants for discovery as it settled its claims against 38 of the initially named defendants and reasonable for Flannery not to incur (or to force those third parties to incur) additional expenses in light of the success with which Flannery was able to reach amicable resolutions with the vast majority of initially named defendants. (Mot. at 11-12.)  When Defendants acknowledge these explanations, they contend that the Court should reject them because Flannery representatives other than its litigation counsel were involved in the negotiation of settlements with John Alsop, Nancy Roberts, and Janet Zanardi (Opp. at 10-11), but their argument does nothing to address the underlying issue

3

that aggressively pressing for discovery in parallel with settlement negotiations would likely have interfered with—and undermined—the amicable resolution of Flannery's claims.

Flannery also explained that its efforts should be evaluated in the context of the complexity of the underlying antitrust case, Defendants' successful motion to stay discovery, and the initial evasiveness and incompleteness of the discovery responses received from Conspirators. (Mot. at 11-13.) In response, Defendants once again resort to biased distortions of the record rather than meaningfully disputing Flannery's showing of diligence. Defendants' treatment of the stay of discovery during the pendency of the motion to dismiss is telling. Defendants devote nearly a half page of their opposition to quibbling that the stay with respect to third-party discovery did not take effect until November 21, 2023, as opposed to October 18, 2023—when the stay of party discovery took effect. (Opp. at 6.) But this description is *entirely consistent* with Flannery's account of its service of third-party subpoenas on November 10 and 13, 2023 (Mot. at 5), and Defendants ignore that the vast majority of the recipients of Flannery's December 2024 subpoenas were parties to the litigation when the October 18, 2023 stay went into effect. Nor is there any relevance at this stage of the litigation to Magistrate Judge Claire's finding that the stay would not be prejudicial (Opp. at 6-7) because that finding was issued in advance of the stay, and Defendants do not dispute that, as a result of the stay, Flannery *did not receive any documents* in response to its discovery requests from October 2023 until March 2024.

In a final attempt to imply a lack of diligence, Defendants make the puzzling contention that it is "fairly obvious" that the Motion is "an effort to avoid providing substantive answers to the Dietrichs' discovery requests." (Opp. at 1, 4.) At no point has Flannery suggested that it would not supplement its interrogatory responses at the end of December 2024 as the parties agreed during their negotiations. Indeed, Flannery served its supplemental responses on December 31. (Second Menitove Decl. ¶ 2.) Defendants' baseless misrepresentation of Flannery's intentions does nothing to refute Flannery's showing of good cause.

Defendants concede in their opposition that "Flannery refers to what seems to be a lot of activity" (Opp. at 1), and Defendants do not refute this showing of diligence with their repeated distortions and misrepresentations. Thus, good cause exists to grant the requested extension.

4

## II. DEFENDANTS FACE NO PREJUDICE FROM THE REQUESTED EXTENSION

Defendants also fail to show that extending fact discovery will cause them any meaningful prejudice. Defendants contend that "discovery is the most expensive part of any lawsuit" and that "[d]epositions are expensive" (Opp. at 12-13), but they "do not provide any specific argument showing how they would be prejudiced" by the requested extension. *Soto v. Cnty. of Sacramento*, No. 2:19-cv-00910-TLN-DB, 2021 WL 2402524, at *4 (E.D. Cal. June 11, 2021) (Nunley, J.). The primary purpose of the requested extension is to pursue document discovery from former defendants who are now third parties, along with any necessary follow-up discovery. To the extent that Defendants' prejudice argument is based on an assumption that further discovery will result in evidence that warrants taking depositions, this argument is contrary to Defendants' conclusory and speculative refrain that Flannery will not discover additional relevant evidence.

In addition, Defendants' assertion that depositions "can exceed $2,500 to $3,000 per witness just in court reporter fees and copies" (Opp. at 12) does not suggest that they would suffer any prejudice, or that Flannery should be barred from taking depositions if they are warranted by documents revealed through further discovery. If Flannery notices depositions, ***Flannery—not Defendants***—will be responsible for paying those fees. Defendants also do not explain how Flannery taking depositions, a normal aspect of discovery, would constitute prejudice to the Dietrichs. Moreover, it is standard practice for extensions of fact discovery to permit the party seeking an extension to perform any warranted follow-up discovery in the permitted time. *See, e.g.*, *Trove Brands, LLC v. TRRS Magnate LLC*, No. 2:22-cv-02222-TLN-CKD, 2024 WL 1974452, at *4 (E.D. Cal. May 3, 2024) (granting extension for requested discovery along with "necessary follow-up" discovery).

Defendants' remaining argument regarding prejudice amounts to nothing more than the contention that they will prevail on the merits and stating their desire for "an end to the case." (Opp. at 13.) As Flannery pointed out in its opening brief, this Court has rejected similar conclusory arguments that a party "will prevail on summary judgment and prolonging discovery would prejudice Defendant." *Davis v. New York Life Ins. Co.*, No. 2:24-cv-00131-TLN-DB, 2024 WL 4505607, at *2 (E.D. Cal. Oct. 16, 2024) (Nunley, J.). Defendants' desire to curtail Flannery's

5

ability to develop the factual record against them does not demonstrate that they would be prejudiced by the requested six-month extension. (*See also infra* § IV.)

### III. THE EXTENSION WILL LIKELY ALLOW FLANNERY TO FIND RELEVANT EVIDENCE

Defendants also err to the extent they contend that the extension should not be granted based on their speculation that further discovery will not yield relevant evidence. In their opposition, Defendants once again misrepresent the record in contending that the subpoenas ask only for the "same" documents as earlier requests. (Opp. at 4-5.) Defendants' own supporting exhibits reveal that the subpoenas include a new request for communications with other Solano County landowners that was not included in the initial party requests for production. (*Compare* Draper Decl. Ex. 2 at 4-9; *with* Draper Decl. Ex. 19 Ex. A at 4.) Defendants also disregard that subpoena recipients Ronald Gurule, Deborah Workman, Carol Hoffman, and David Anderson did not produce *any* documents in response to requests for production from Flannery, and that other former defendants made only *de minimis* productions—as detailed in Flannery's Motion. (Mot. at 8-9.) Defendants further ignore that the course of this litigation has shown that former defendants subpoenaed as third parties have produced much higher volumes of documents than defendants who remain parties. (*Id.* at 14.) In fact, one third-party subpoena recipient, John Alsop, who is represented by the same counsel as Defendants, has already responded that he will produce additional documents (beyond those he produced when he was a defendant) in response to Flannery's December 2024 subpoena. (Second Menitove Decl. Ex. 1.) And Paul Dietrich himself has shown that Flannery's following up on discovery requests can result in the production of additional documents, as he produced 50 additional pages of documents after initially representing that he possessed only six pages of responsive documents. (Mot. at 8.)

Defendants also erroneously contend that Flannery's examples of relevant evidence produced thus far have "no substance." (Opp. at 8-10.) For example, Defendants dismiss the significance of a text message in which Richard Anderson told Christine Mahoney about a conversation with Paul Dietrich regarding a proposal to lease land in Solano County because it "had nothing to do with Flannery's land purchases." (*Id.* at 9.) But this message is valuable

6

evidence contradicting Defendants' representations that "[t]here is zero evidence that the Dietrichs ever participated in . . . any discussions with any other landowners." (*Id.* at 3.) And the subject of the message (i.e., offers received in connection with Solano County real property) is not "unrelated" to this litigation, which involves how Conspirators coordinated their responses to offers to buy Solano County property. Similarly, Paul Dietrich's email to former defendant John Alsop describing "Flannery info" as "***verrrry interesting***" in 2019 also reveals the falsity of Defendants' representations that they did not discuss Flannery with other Conspirators and that they were never interested in Flannery's offers. (*See* Menitove Decl. Ex. 4, ECF No. 141-2 (emphasis added).) Nor do Flannery's examples of additional direct evidence of the conspiracy in Stacy Hamilton's text messages (*id.* Ex. 2 (misidentified by Defendants as involving the Mahoney Conspirators (*see* Opp. at 9))) and Richard Hamilton's emails (Menitove Decl. Ex. 1, ECF No. 141-2) somehow exonerate the Dietrichs (*see* Opp. at 9). These documents directly evidence the existence of the conspiracy and serve as additional circumstantial evidence against the Dietrichs. At any rate, these examples certainly do not weigh against allowing additional time for discovery to reveal the extent of Defendants' involvement in the conspiracy.

### IV. THE MAJORITY OF THE OPPOSITION IS BASED ON IMPROPER, PREMATURE, AND UNSUPPORTED MERITS ARGUMENTS

Although Defendants do not dispute that the relevant inquiry is whether good cause exists in light of Flannery's diligence, they nonetheless devote much of their opposition to improper contentions about the underlying merits of Flannery's claims. (*E.g.*, Opp. at 4, 11, 12.) But as explained in Flannery's Motion (Mot. at 14-15), premature arguments about the outcome of an eventual summary judgment motion do not provide a basis to deny Flannery's requested relief. *See Davis*, 2024 WL 4505607, at *2. Defendants' repeated assertions about the purported lack of evidence against them do not speak to Flannery's diligence or any prejudice Defendants supposedly would sustain. Nor does Defendants' desire to curtail Flannery's investigation before it can receive responsive documents from third parties project confidence in their arguments that further discovery will yield no relevant evidence.

Moreover, Defendants' improper merits arguments are based on ***blatant misrepresentations***

7

of the record.  Defendants contend that "Flannery also does not mention that it has been in possession of the irrevocable Trust documents pertaining to the Dietrich's [sic] property which detail[] the fact that the Dietrichs are Trustees, only have life estates in the property and cannot sell to anyone."  (Opp. at 12; *see also id.* at 3 (representing that the "Trust does not allow [the Dietrichs] to sell and Flannery knows this")).)  But the Trust agreement ***expressly contradicts*** Defendants' claim that they cannot sell their property.  In reality, it ***grants*** the trustee "the power to . . . sell (for cash or on deferred payments with or without security), convey, exchange, partition, [and] divide . . . trust property" (Trust § 9.4, ECF No. 144-6 at 92) and "the power to invest and reinvest the trust estate in every kind of property, real, personal, or mixed" (*id.* § 9.6, ECF No. 144-6 at 93).  Defendants also mischaracterize the Trust documents with their argument that Paul and William Dietrich are merely trustees because the agreement makes clear that they also are both income and principal beneficiaries of the Child's Trust.  (*Id.* § 7.4, ECF No. 144-6 at 88.)  Nor is there any support in the Trust documents for Defendants' contention that they "only enjoy life estates."  (Opp. at 12.)[1]  Accordingly, the Trust documents in no way exonerate Defendants.  While Defendants' misrepresentations about these documents illustrate their desperation to avoid discovery, such a rationale clearly does not warrant denying Flannery's Motion.

      Defendants' other "omitted fact" does nothing to negate Flannery's showing of good cause and only serves as additional evidence linking William Dietrich to the conspiracy.  Defendants concede that William Dietrich "talked . . . barely to his brother" about land sales to Flannery and that Paul Dietrich "told Flannery that ***they*** were not interested in selling."  (*Id.* (emphasis added).)  This admission corroborates Flannery's allegations in the complaint that Paul Dietrich spoke on behalf of the Dietrich property owners (ECF No. 1 ¶ 220), and—contrary to Defendants' suggestion—it does not refute Flannery's diligence or the propriety of an extension.

      Likewise, Defendants' assertion that "there has been no evidentiary finding of the existence [of] a conspiracy" is no more than a non sequitur.  (Opp. at 4 (capitalization omitted).)  The Court

---

[1] Even if Defendants' misrepresentations were accepted at face value, the Trust documents still would not establish that "[t]here was no reason or motive for Paul and William Dietrich" to enter into the conspiracy.  (Opp. at 12.)  Defendants do not explain why they would lack any motive to enter into a price-fixing conspiracy that would benefit Paul Dietrich's children.

denied Defendants' motion to dismiss in its entirety, and Flannery is accordingly entitled to conduct discovery in support of its claims. (ECF No. 111.) While Defendants argue that the evidence from the Hamiltons that is cited in Flannery's Motion does not relate specifically to the Dietrichs, they do not dispute that these documents provide evidence of the price-fixing conspiracy. (Opp. at 9-10.)

### V. THE MAGISTRATE JUDGE'S DECISION TO GRANT FLANNERY'S MOTION TO COMPEL DOES NOT UNDERMINE THE PROPRIETY OF THE REQUESTED EXTENSION

After Flannery filed this Motion, Magistrate Judge Claire granted Flannery's motion to compel against the BLK Entities in its entirety on December 13, 2024, three days before the close of fact discovery. (ECF No. 143.) Although this discovery is no longer outstanding, good cause still exists to extend discovery to allow Flannery to collect documents from the other former defendants. If anything, the extended timeline of the BLK discovery dispute only confirms the propriety of the duration of Flannery's requested extension. Flannery first served its subpoenas on the BLK Entities in November 2023 (Mot. at 5), and Flannery promptly reopened communication with the BLK Entities about their responses in April 2024 after the stay of discovery was lifted (*id.* at 7). Despite Flannery's diligence, Flannery was not able to obtain the final production from the BLK Entities until December 18, 2024, over one year after the subpoenas were served and eight months after the discovery stay was lifted. This experience belies Defendants' suggestion that an extension of merely 30 days would be sufficient for Flannery to obtain discovery in response to its outstanding subpoenas (Opp. at 14), as such an abbreviated timeline likely would necessitate additional requested extensions to allow for anticipated motion practice and follow-up discovery.

### CONCLUSION

For the foregoing reasons, Flannery respectfully requests that the Court grant its motion to extend the time for completing fact discovery by six months, in order to allow Flannery to complete discovery from third parties, including any necessary motion practice and follow-up discovery.

| | | |
|---|---|---|
| Dated: January 2, 2025 | By: | /s/ *Michael H. Menitove* |

Matthew Martino (*pro hac vice*)
matthew.martino@skadden.com
Michael H. Menitove (*pro hac vice*)
michael.menitove@skadden.com
Evan Levicoff (*pro hac vice*)
evan.levicoff@skadden.com
Thomas J. Smith (*pro hac vice*)
thomas.smith@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (917) 777-3000

Lance A. Etcheverry (SBN 199916)
lance.etcheverry@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Plaintiff*
*Flannery Associates LLC*