1   MICHAEL J. IOANNOU (SBN 95208)
    DAVID B. DRAPER (SBN 107790)
2   KEVIN W. ISAACSON (SBN 281067)
    ROPERS MAJESKI PC
3   333 W. Santa Clara St., Suite 930
    San Jose, CA 95113
4   Telephone: 408.287.6262
    Facsimile: 408.918.4501
5   Email: michael.ioannou@ropers.com
           david.draper@ropers.com
6          kevin.isaacson@ropers.com

7   Attorneys for Defendant Paul S. Dietrich (individually
    and as trustee of the Child's Trust FBO Paul S.
8   Dietrich, a subtrust under the Trust of William C.
    Dietrich and Ivanna S. Dietrich; William C. Dietrich
9   (individually and as trustee of the Child's Trust FBO
    William C. Dietrich, a subtrust under the Trust of
10  William C. Dietrich and Ivanna S. Dietrich)

11

12              UNITED STATES DISTRICT COURT

13           EASTERN DISTRICT OF CALIFORNIA

14

15   Flannery Associates LLC,              Case No. 2:23-cv-00927-TLN-AC

16        Plaintiff,                       **DEFENDANTS PAUL S. DIETRICH
                                           AND WILLIAM C. DIETRICH'S
17        v.                               NOTICE OF MOTION AND MOTION
                                           FOR SUMMARY JUDGMENT;
     Barnes Family Ranch Associates, LLC, et al.,  MEMORANDUM OF POINTS AND
18                                         AUTHORITIES**
          Defendants.
19                                         Date:      March 20, 2025
                                           Time:      2:00 p.m.
20                                         Courtroom: 2, 15th Floor
                                           Judge:     Hon. Troy L. Nunley
21

22   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

23          NOTICE is HEREBY GIVEN that on March 20, 2025, at 2:00 p.m., or as soon thereafter

24   as the matter can be heard, in Courtroom 2, 15th Floor, of the above-entitled Court located at

25   501 I Street, Sacramento, CA 95814, Defendants Paul S. Dietrich and William C. Dietrich

26   ("Dietrichs") will move the Court for an order granting judgment in favor of Paul and William

27   Dietrich and against Flannery Associates LLC pursuant to FRCP 56. This Motion is based upon

28   the grounds that there are no genuine, triable issues of material fact that Paul and

ROPERS
MAJESKI
A Professional Corporation
San Jose

4901-8744-6551.1

1    William Dietrich participated in a price-fixing conspiracy against Flannery Associates LLC in

2    violation of 15 U.S.C. §1, Cal. Bus. & Prof. Code §§167200 *et. seq.* or Cal. Bus. & Prof. Code

3    §§17200, *et seq.* or any of the allegations made in the Complaint in this action.

4         This Motion is based upon this Notice, the Memorandum of Points and Authorities, the

5    Declarations of Paul S. Dietrich, William C. Dietrich and David B. Draper, and other supporting

6    papers, the Court's records and files herein, and upon such other oral or documentary evidence or

7    showing as may be made at the hearing of said motion.

8

9    Dated:  February 6, 2025                    ROPERS MAJESKI PC

10

11   By:  /s/ *David B. Draper*
          MICHAEL J. IOANNOU
12        DAVID B. DRAPER
          KEVIN W. ISAACSON
13        Attorneys for Defendants
          Paul S. Dietrich (individually and as trustee of
14        the Child's Trust FBO Paul S. Dietrich, a
          subtrust under the Trust of William C. Dietrich
15        and Ivanna S. Dietrich; William C. Dietrich
          (individually and as trustee of the Child's Trust
16        FBO William C. Dietrich, a subtrust under the
          Trust of William C. Dietrich and Ivanna S.
17        Dietrich)

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................... 1

III.  LEGAL ARGUMENT .................................................................................................. 4

    A.   FLANNERY'S CASE AGAINST THE DIETRICHS IS ENTIRELY CIRCUMSTANTIAL AND FLANNERY MUST PROVIDE UNAMBIGUOUS, SPECIFIC, EXPLICIT EVIDENCE OF THE DIETRICHS' PARTICIPATION IN THE ALLEGED CONSPIRACY ............... 4

    B.   THE NINTH CIRCUIT APPLIES A TWO-PART TEST ON MOTIONS FOR SUMMARY JUDGMENT FOR PLAINTIFFS WHO RELY ON CIRCUMSTANTIAL EVIDENCE OF CONSPIRACIES ................................... 6

    C.   FLANNERY HAS NO DIRECT OR SPECIFIC EVIDENCE THAT THE DIETRICHS PARTICIPATED IN THE ALLEGED PRICE-FIXING CONSPIRACY ............................................................................................... 8

    D.   FLANNERY CANNOT PROVE THE DIETRICHS PARTICIPATED IN AN ALLEGED CONSPIRACY ....................................................................... 8

IV.   FLANNERY WILL ASK FOR A CONTINUANCE TO DO ADDITIONAL DISCOVERY .............................................................................................................. 12

    A.   FLANNERY'S CONTINUED INSISTENCE THAT EVIDENCE OF THE DIETRICHS' PARTICIPATION IN A CONSPIRACY MAKES NO SENSE ...................................................................................................... 13

V.    FLANNERY HAS NOT IDENTIFIED OR PRODUCED DOCUMENTS IN DISCOVERY THAT EVIDENCE THE DIETRICHS' PARTICIPATION IN THE ALLEGED PRICE-FIXING CONSPIRACY ................................................................ 15

VI.   CONCLUSION ........................................................................................................... 18

ROPERS
MAJESKI

A Professional Corporation
San Jose

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*7-UP Bottling Co. v. Archer Daniels Midland Co. (In Re Citric Acid Litig.)*
 191 F.3d 1090 (9th Cir. 1999)..................................................................6, 9, 11, 12, 18

*Adickes v. S.H. Kress & Co.*
 398 U.S. 144 (1970)........................................................................................9

*In Re Baby Food Antitrust Litig.,*
 166 F.3d 112 (3d Cir. 1999)..........................................................................6, 11

*In Re Beef Indus. Antitrust Litig.,*
 907 F.2d 510 (5th Cir. 1990)...........................................................................6

*Celotex Corp. v. Catrell*
 477 U.S. 317 (1986)......................................................................................8, 9

*City of Long Beach v. Standard Oil Co. of California,*
 872 F.2d 1401 (9th Cir. 1989)..........................................................................6

*City of Tuscaloosa v. Harcros Chems, Inc.,*
 158 F.3d 548 (11th Cir 1998)...........................................................................6

*Clorox Co. v. Sterling Winthrop, Inc.*
 117 F.3d 50 (2nd Cir. 1997)..............................................................................6

*Corner Pocket of Sioux Falls, Inc. v. Video Lottery Techs, Inc.*,
 123 F.3d 1107 (8th Cir. 1997)...........................................................................6

*First Nat'l. Bank of Arizona v. Cities Service Co.,*
 391 U.S. 253 (1968).........................................................................................5

*Martinez v. City of Stockton*
 1993 U.S. App. LEXIS 30919 (9th Cir. 1993) ..................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
 475 U.S. 574, 89 L. Ed. 2d 538, 106 S.Ct. 1348 (1986) ...............................5, 6

*Mitchael v. Intracorp,*
 179 F.3d 847 (10th Cir. 1999).............................................................................6

*Mutual Fund Investors v. Putnam Mgmnt. Co.*
 553 F.2d 620 (9th Cir. 1977)...............................................................................8

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
 210 F.3d 1099 (9th Cir. 2000).............................................................................9

*Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*
   971 F.2d 37 (7th Cir. 1992)............................................................................6

*Richards v. Neilson Freight Lines*,
   810 F.2d 898 (9th Cir. 1987).........................................................................6

*Schowengerdt v. U.S.*
   944 F.2d 483 (9th Cir. 1991).........................................................................8

*Solomon v. Peat, Marwick, Main & Co.*
   1992 U.S. App. LEXIS 24326 .......................................................................8

*T.W. Electrical Service v. Pacific Electric Contractors*,
   809 F2d 626 (9th Cir. 1987).........................................................................5

*Thompson Everett, Inc. v. National Cable Adver., L.P.*,
   57 F.3d 1317 (4th Cir. 1995).........................................................................6

*U.S. v. Foster*
   711 F.2d 871 (9th Cir. 1983).......................................................................11

*U.S. v. Layton*
   720 U.S. 548 (9th Cir. 1983).......................................................................11

*United States v. Nazemian*
   948 F.2d 522 (9th Cir. 1991).......................................................................11

*Wallace v. Bank of Bartlett*,
   55 F.3d 1166 (6th Cir. 1995).........................................................................6

*Wilcox v. First Interstate Bank of Oregon*,
   815 F.2d 522 (9th Cir. 1987).........................................................................6

*William Ingalls & Sons Baking Co. v. Itt Cont'l Baking Co.*
   668 F.2d 1014 (9th Cir. 1981).......................................................................8

**Statutes**

15 U.S.C. §1 ...............................................................................................5, 6, 11

**Other Authorities**

FRCP 11 .......................................................................................................3, 13

FRCP 56(e) ........................................................................................................8

Local Rule 260(b) ............................................................................................13

Rule 26 ...........................................................................................................2, 8

ROPERS
MAJESKI

A Professional Corporation
San Jose

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Paul and William Dietrich (the "Dietrichs") are the last two remaining Defendants in this action. They are the last two remaining Defendants because they do not and have never wanted to sell their Solano County property to Flannery Associates LLC ("Flannery"). Flannery seeks to force them into selling their property by accusing them of being part of an antitrust price-fixing conspiracy. Flannery has no evidence to support its claims.

**II.    STATEMENT OF FACTS**

The Dietrichs are Trustees to an irrevocable trust created by their parents in 1994 which holds title to real property in Solano County (the "Property"). The Property consists of three parcels and is identified in the Complaint, page 18, para. 121:21-22 (ECF 1). The Property has been in the Dietrichs' family for generations. It is a family legacy. The 1994 Trust is referred to as the Child's Trust. (Declarations of Paul and William Dietrich) Flannery made unsolicited offers to purchase the Property between 2019 and 2021 and was rejected. Paul Dietrich told Flannery's representative that he was not interested in selling. (Decl. of Paul Dietrich) William Dietrich ignored Flannery completely, never communicating with them. (Decl. of William Dietrich)

As Trustees to the Child's Trust, Paul and William have present interests in the use of the Property and any income generated upon it. Those interests terminate upon their deaths and, pursuant to the terms of the Child's Trust, the entirety of the Property will then pass to their children. Paul has two children. William has no children and therefore any interest that he has will pass to Paul's children. (Declarations of Paul and William Dietrich) (Decl. of David B. Draper, Ex. G.)

Flannery filed its Complaint in May 2023 alleging a price-fixing conspiracy amongst forty (40) Defendants covering each Defendant's property interests in Solano County. Flannery alleges that all of the Defendants worked together to create property values greatly in excess of actual market values. Flannery claims Defendants did this by communicating with each other as to Flannery's offers and encouraging each other to keep their sales prices or demands high. Flannery

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  claims that this alleged conspiracy forced it to pay more than it should have for the properties it

2  eventually purchased. (Complaint ECF 1, pages 53-56).

3       Flannery bases its alleged conspiracy claims on four or five emails or texts between four

4  or five Defendants talking about Flannery's offers. None of those emails or texts mentions or

5  involves the Dietrichs. (Complaint ECF 1, pg. 4, para. 10). The Defendants who remained in the

6  action filed a joint motion to dismiss the Complaint on July 11, 2023. (ECF 78) That motion was

7  denied on March 28, 2024. (ECF 111) The Court's ruling stated that Flannery's Complaint made

8  sufficient allegations against all of the Defendants to maintain the action at the pleading stage.

9  The Court's ruling also stated that at some point in the litigation, Flannery was going to have to

10 produce evidence as to the specific involvement of the specific Defendants in the alleged

11 conspiracy. (Court's Order ECF 111, pg. 21:7-9)

12      In August 2023, Paul Dietrich's attorneys initiated a discussion with Flannery's lawyers as

13 part of scheduling the Rule 26(f) conference about what evidence Flannery had that supported its

14 claims against Paul Dietrich since Paul Dietrich never wanted and did not want to sell to

15 Flannery.  Flannery did not respond to the inquiry. (Decl. of David B. Draper Ex. A). The subject

16 of Flannery's evidence against Paul Dietrich and any evidence of his participation in the alleged

17 conspiracy was raised again on September 11, 2023. Flannery did not respond to that inquiry.

18 (Decl. of David B. Draper Ex. B).

19      On October 17, 2023, Flannery served its Initial Disclosures under Rule 26(f). Flannery

20 stated that it had general categories of documents that supported its claims. Nothing specific or

21 specifically related to Paul or William Dietrich was disclosed (Decl. of David B. Draper Ex. C).

22      On March 14, 2024, Flannery was asked, once again, for a discussion about what, if

23 anything, Plaintiff had as evidence that Paul Dietrich had anything to do with Plaintiff's claims of

24 a conspiracy. Paul Dietrich had responded to Flannery's Request for Documents. None of the

25 documents he produced indicate any type of communication or conspiracy to fix the prices of any

26 real estate. Flannery responded that it was confident in its claims, but did not provide any

27 information on documents it had in its possession that indicated that Paul Dietrich was involved

28 in the alleged conspiracy. (Decl. of David B. Draper Ex. D).

ROPERS
MAJESKI
A Professional Corporation
San Jose

On April 30, 2024, an unfiled motion under FRCP 11 was delivered to Flannery which sought to have Plaintiff produce or at least identify any documents or evidence in its possession or control that supported its claims of liability against Paul Dietrich and three other Defendants. (Decl. of David B. Draper Ex. E). Flannery responded to the unfiled motion in a letter claiming that the motion sought to relitigate the motion to dismiss rather than seeking evidence against the Defendants. (Declaration of David B. Draper)

On May 31, 2024, Flannery was served with discovery requests for the production of documents relevant to Plaintiff's claims of liability against Paul Dietrich. Plaintiff responded to that discovery on July 8, 2024 with objections. No documents were produced or identified that had anything to do with Paul Dietrich. (Decl. of David B. Draper Ex. F)

On July 19, 2024, during a meet and confer discussion over the document discovery, Flannery stated it would not be able to provide substantive answers to the Dietrichs' discovery requests since Flannery had not completed its third-party discovery. It was Plaintiff's position that the evidence of the Dietrichs' involvement in the alleged conspiracy would be found in the former Defendants' communications, Defendants who had been released and dismissed from the action. The parties agreed that fact discovery would close on December 16, 2024 and that Flannery would provide answers and responses to the Dietrichs' discovery requests by the end of December 2024. (Decl. of David B. Draper)

As part of the meet and confer session on July 19, 2024, the Dietrichs offered to and did provide Flannery with the Child's Trust as it relates to the Dietrichs' Property. It was stated that the Dietrichs did not hold title to the Property personally, but as Trustees of the Child's Trust. The Child's Trust did not allow the Dietrichs to sell the Property, but to hold it as Trustees for the beneficiaries of the Trust, Paul Dietrich's two children as William Dietrich had no descendants. William and Paul essentially hold life estates in the Property. (Decl. of David B. Draper Ex. G). They could not sell the Property and their life estates had no value to third parties. This was one of the reasons they never wanted to sell the Property and were not interested in talking to Flannery. (Decls. of William and Paul Dietrich)

On December 9, 2024, seven days before the discovery cut-off, Flannery filed a motion to

1    amend the Court's initial scheduling order seeking to continue discovery for an additional six

2    months. (ECF 141) Flannery claimed that it had not completed its third-party discovery and

3    served seventeen (17) subpoenas on former Defendants asking them to produce the same

4    categories of documents they had been requested to produce in document production requests

5    served in 2023. (Decl. of David B. Draper Ex. I)

6        On December 31, 2024 Flannery responded to the Dietrich's discovery requests. Nothing

7    was identified or produced that places Paul or William Dietrich participating in the alleged price-

8    fixing conspiracy. (Decl. of David B. Draper Ex. J)

9    **III.    <u>LEGAL ARGUMENT</u>**

10       **A.    <u>Flannery's Case Against The Dietrichs Is Entirely Circumstantial And</u>**
         **<u>Flannery Must Provide Unambiguous, Specific, Explicit Evidence Of The</u>**
11       **<u>Dietrichs' Participation In The Alleged Conspiracy</u>**

12   Flannery's allegations against the Dietrichs are as follows:

13   ●    the Dietrichs own land that Flannery wants to purchase;

14   ●    the Dietrichs refuse to sell Flannery that land;

15   ●    the Dietrichs are related to several of their neighboring landowners;

16   ●    Paul Dietrich has communicated with neighboring landowners about the fact that

17   Flannery exists and has been making offers to purchase land in Solano County; and

18   ●    Flannery has four or five emails or texts that indicates that some of the Defendant

19   landowners, not involving the Dietrichs, were talking to each other about Flannery's offers and

20   that those landowners should get together. (Flannery settled with those Defendants paying

21   negotiated prices and released them from liability.)

22       Thus, Flannery contends, the Dietrichs, by refusing to sell their land, having cousins who

23   own land next to them, talking about Flannery and the public news articles about the land

24   purchases all makes the Dietrichs part of an antitrust price-fixing conspiracy. Nothing specific, all

25   circumstantial. While inferences may be allowed at the pleading stage, as this Court pointed out,

26   eventually Flannery has to produce specific evidence of participation as to the specific

27   Defendants. The Supreme Court of the United States and the Federal Circuit Courts of Appeal

28   agree.

ROPERS MAJESKI

A Professional Corporation
San Jose

1   In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 89 L. Ed. 2d 538, 106

2   S.Ct. 1348 (1986) the Supreme Court defined the question that the courts must address when

3   deciding a motion for summary judgment in an antitrust case asserting a violation of 15 U.S.C. §1

4   pursuant to an alleged price-fixing conspiracy: has plaintiff produced sufficient evidence such

5   that a reasonable factfinder could infer that a conspiracy existed.

6       The Court cautions, however, that although plaintiffs are to be given the benefit of the

7   doubt, they "must do more than simply show that there is some metaphysical doubt as to the

8   material facts." "Conduct as consistent with permissible competition as with illegal conspiracy

9   does not, standing alone, support an inference of antitrust conspiracy." An inference of

10  conspiracy is sustainable only if "in reasonable light of the competing inferences of independent

11  action" and "to survive a motion for summary judgment … a plaintiff seeking damages for a

12  violation of §1 must present evidence "that tends to exclude the possibility" that the alleged

13  conspirators acted independently. *Id* at 586 – 588.

14      When relying solely on circumstantial evidence, a plaintiff must present evidence from

15  which an inference of conspiracy is more probable than an inference of independent action. *First*

16  *Nat'l. Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 280 (1968). Plaintiff's burden is to

17  produce evidence "that is capable of sustaining a rational inference of a conspiracy and that tends

18  to exclude the possibility that the Defendant acted independently of the alleged co-conspirators,

19  and thus lawfully." *T.W. Electrical Service v. Pacific Electric Contractors*, 809 F2d 626, 632 (9th

20  Cir. 1987) Thus, antitrust law limits the range of permissible inferences from ambiguous

21  evidence. *Matsushita* 475 U.S. 574 (1986). Conduct as consistent with permissible competition as

22  with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy (*Id* at

23  764). As Flannery admits in its responses to the Dietrichs' interrogatories:

24          "Flannery further states that its claims against William Dietrich
            [and Paul Dietrich} are circumstantially supported by facts
25          evidencing the involvement of other Conspirators in the conspiracy,
            including the facts alleged in the rest of the Complaint and the
26          communications attached as Exhibits A through E of the
            Complaint." (Plaintiff's Responses to Dietrich Interrogatories, Decl.
27          of David B. Draper Ex. J)

28      To survive summary judgment Flannery cannot rely on its claim of circumstantial

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  evidence nor can it rest on the allegations of its Complaint to hold the Dietrichs liable.

2  **B.    The Ninth Circuit Applies A Two-Part Test On Motions For Summary**
3  **Judgment For Plaintiffs Who Rely On Circumstantial Evidence Of**
   **Conspiracies**

4       In following _Matsushita_, the Ninth Circuit has outlined a two-part test to be applied

5  whenever a plaintiff, as here, rests its case entirely on circumstantial evidence. _7-UP Bottling Co._

6  _v. Archer Daniels Midland Co. (In Re Citric Acid Litig.)_ 191 F.3d 1090, 1094, 1095 (9th Cir.

7  1999). First, the defendant can rebut an allegation of conspiracy by showing a plausible and

8  justifiable reason for its conduct that is consistent with proper business practice. _Id_. at 1094 citing

9  _Richards v. Neilson Freight Lines_, 810 F.2d 898, 902 (9th Cir. 1987); _Wilcox v. First Interstate_

10 _Bank of Oregon_, 815 F.2d 522, 526-28 (9th Cir. 1987). Second, the burden then shifts back to

11 plaintiff to provide specific evidence tending to show that the defendant was not engaging in

12 permissible behavior. _7-UP Bottling_, at 194, citing _City of Long Beach v. Standard Oil Co. of_

13 _California_, 872 F.2d 1401, 1404 (9th Cir. 1989); _Wilcox_, at 815; _Richards_, at 902-904. Direct

14 evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to

15 establish the proposition or conclusion being asserted. _7-UP Bottling_ at 1094.

16      This summary judgment framework must be applied whenever the plaintiff cannot

17 establish every element of its case without asking the court to draw an inference in its favor. _7-UP_

18 _Bottling_ at 1095. A plaintiff relying solely on circumstantial evidence of conspiracy, as Flannery

19 admits it does here, must produce evidence tending to exclude the possibility that Defendants

20 acted independently in order to avoid summary judgment. _7-UP Bottling_, at 1096. This

21 requirement has been followed in nearly all the other Circuits. _See Clorox Co. v. Sterling_

22 _Winthrop, Inc._ 117 F.3d 50, 55 (2nd Cir. 1997); _In Re Baby Food Antitrust Litig._, 166 F.3d 112,

23 113 (3d Cir. 1999_); Thompson Everett, Inc. v. National Cable Adver., L.P._, 57 F.3d 1317, 1323

24 (4th Cir. 1995); _In Re Beef Indus. Antitrust Litig._, 907 F.2d 510, 514 (5th Cir. 1990); _Wallace v._

25 _Bank of Bartlett_, 55 F.3d 1166, 1170 (6th Cir. 1995); _Reserve Supply Corp. v. Owens-Corning_

26 _Fiberglas Corp._ 971 F.2d 37, 49 (7th Cir. 1992), _Corner Pocket of Sioux Falls, Inc. v. Video_

27 _Lottery Techs, Inc._, 123 F.3d 1107, 1112 (8th Cir. 1997); _Michael v. Intracorp_, 179 F.3d 847, 858

28 (10th Cir. 1999); _City of Tuscaloosa v. Harcros Chems., Inc._, 158 F.3d 548, 569-70 (11th Cir

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    1998).

2        Pursuant to the declarations of Paul and William Dietrich filed in support of this motion,

3    they rebut the allegations that they were involved in Flannery's alleged price-fixing conspiracy.

4    William Dietrich never spoke to anyone representing Flannery and never spoke to any of the

5    other property owners about Flannery or the unsolicited purchase offers. William Dietrich states

6    his understanding and belief of the terms and conditions of the Child's Trust, that he is only a

7    Trustee and has only a life interest in the Property and any income it generates. William Dietrich

8    states that he never had any intent or desire to sell the Property due to the terms of the Child's

9    Trust. (Decl. of William Dietrich)

10        Paul Dietrich states that he never told or implied to Flannery's representative that he had

11    any intention or desire to sell the Property. Paul Dietrich states that he never told anyone that he

12    was speaking for his brother William or any other persons. Paul Dietrich states that he had an

13    email exchange with his cousin, John Alsop, about Flannery, and its land purchases in Solano

14    County when the unsolicited purchase offers were delivered. Paul Dietrich states that he never

15    had any discussions with any of the other property owners about the land sales, purchase offers or

16    prices. Paul Dietrich states his understanding and belief of the terms and conditions of the Child's

17    Trust, that he is only a Trustee and has only a life interest in the Property and any income it

18    generates. Paul Dietrich states that he never had any intent or desire to sell the Property due to the

19    terms of the Child's Trust and the fact that he wanted the Property to remain in his family as it

20    has been for generations. (Decl. of Paul Dietrich)

21        Both of the Dietrichs state that neither one of them was involved in any alleged price-

22    fixing conspiracy as claimed by Flannery. None of the documents identified by Flannery in

23    discovery place the Dietrichs in conversations or communications with any of the property

24    owners who were talking about sharing information on land sales and Flannery purchase offers.

25        Having rebutted Flannery's allegations of conspiracy with plausible, justifiable and

26    permissive reasons for their refusal to sell to Flannery, the burden shifts to Flannery to produce

27    specific, direct evidence tending to show that the Dietrichs were not engaging in permissible

28    behavior. To date, Flannery has not been able to do so.

ROPERS
MAJESKI

A Professional Corporation
San Jose

**C.    Flannery Has No Direct Or Specific Evidence That The Dietrichs Participated In The Alleged Price-Fixing Conspiracy**

Flannery has not produced or identified any direct, specific evidence that the Dietrichs have participated in the alleged price-fixing conspiracy. Flannery has been unable to substantively respond to the Dietrichs' discovery requests asking for this specific information. Flannery stated in its initial disclosures under Rule 26 that it had such documents that supported its claims against the Dietrichs. Flannery's discovery responses have been objections that essentially state that they need to keep looking for documents before they can answer the interrogatories and document requests. Flannery's hopes of finding specific information are pinned to December 2024 duplicative discovery requests made on the eve of the close of discovery to Defendants who have been dismissed.

**D.    Flannery Cannot Prove The Dietrichs Participated In An Alleged Conspiracy**

A conspiracy occurs only when the parties have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement. _William Ingalls & Sons Baking Co. v. Itt Cont'l Baking Co._ 668 F.2d 1014 (9th Cir. 1981); _Martinez v. City of Stockton_ 1993 U.S. App. LEXIS 30919 (9th Cir. 1993). An antitrust conspiracy, no less than other proscribed conspiracies, requires a plurality of actors concerting their efforts towards a common goal. _Mutual Fund Investors v. Putnam Mgmnt. Co._ 553 F.2d 620 (9th Cir. 1977).

Although a conspiracy may be inferred from circumstantial evidence, a plaintiff must show an understanding between the alleged coconspirators with the specific intent of each to restrain trade. _Ingalls, Id_ at 1055. To prove a civil conspiracy, plaintiff must present specific evidence of a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement. _Solomon v. Peat, Marwick, Main & Co._ 1992 U.S. App. LEXIS 24326. To survive a motion for summary judgment, plaintiff must provide specific evidence establishing these facts. _Celotex Corp. v. Catrell_ 477 U.S. 317, 325 (1986). Plaintiff cannot simply repeat the allegations in the Complaint based on inference and speculation. _Schowengerdt v. U.S._ 944 F.2d 483, 490 (9th Cir. 1991). FRCP 56(e) states that an adverse party may not rest upon mere allegations or denials of its pleadings or responses. Plaintiff must set forth specific

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  facts showing that there is a genuine issue of material for trial.

2         In _Nissan Fire & Marine Ins. Co. v. Fritz Cos._ 210 F.3d 1099, 1105-1106 (9th Cir. 2000)

3  the Court of Appeals discusses two different methods by which a moving party to a motion for

4  summary judgment can carry its initial burden of production. The Court reconciles _Adickes v._

5  _S.H. Kress & Co._ 398 U.S. 144 (1970) and _Celotex Corp. v. Catrett_ 477 U.S. 31(1986) as being

6  consistent in deciding when a moving party has carried its initial burden of production thus giving

7  the nonmoving party the obligation to produce any evidence in response. _Adickes_ and _Celotex_

8  simply provide two different methods by which a moving party can carry its initial burden of

9  production. _Nissan Fire & Marine Ins. Co._ at page 1104.

10        In _Adickes_ the issue was whether the moving party, without the ultimate burden of

11 persuasion at trial, had carried its initial burden of production in a motion for summary judgment

12 by producing affirmative evidence negating an essential element of the nonmoving party's claims.

13        In _Celotex_ the issue was whether the moving party carried its initial burden of production

14 "by 'showing' – that is pointing out to the district court that there is an absence of evidence to

15 support the nonmoving party's claims", _Celotex_ at 325, such that the nonmoving party did not

16 have enough evidence to carry its ultimate burden of persuasion at trial.

17        Here, the Dietrichs meet their initial burden of production under both methods by virtue of

18 the two-part test required in _7-UP Bottling_. Under _Adickes_ the Dietrichs have provided evidence

19 that rebuts Flannery's circumstantial claims that the Dietrichs were parties to the alleged

20 conspiracy. The Dietrichs' refusal to sell, Flannery's claim of illegal conduct, is due to the

21 constraints and terms of the Child's Trust and the fact that Paul and William do not have anything

22 to sell since they only "own" life estates. Under _7-UP Bottling_ Flannery is now required to

23 provide specific, direct evidence of the Dietrichs' participation in the alleged conspiracy and may

24 not rely on its claims in the Complaint, circumstantial evidence and the inferences circumstantial

25 evidence requires. The Dietrichs have provided affirmative evidence negating an essential

26 element of Flannery's claims: that the Dietrichs were parties to the alleged conspiracy.

27        Under _Celotex_ the Dietrichs point to Flannery's responses to interrogatories and document

28 requests which admit that all of Flannery's evidence is circumstantial (which is not sufficient

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  under *7-UP Bottling*) or is irrelevant in its substance. Flannery produces its own documents as

2  supposed evidence of the Dietrichs' intent, produces documents alluding to conspiracy that do not

3  mention the Dietrichs, produces documents on irrelevant subjects (carbon sequestration), provides

4  their lawyer's interpretation of Paul Dietrich's alleged statements to say what Paul was implying

5  he wanted to sell or that he was speaking for others and makes claims in answers to

6  interrogatories that have no basis in fact. The Dietrichs point to the discovery responses to 'show'

7  the Court that there is an absence of evidence to support Flannery's claims against the Dietrichs.

8      To date, Flannery has not identified any specific evidence, no emails, no texts, no letters,

9  no handwritten notes, no witness testimony, nothing supporting its claims that the Dietrichs had

10  any discussions or communications with anyone, not their relatives, not their neighbors, not even

11  between themselves, about or concerning the manipulation of the price of land in Solano County

12  and Flannery's efforts to purchase. Paul Dietrich specifically told Flannery's representative that

13  he did not want to sell his Property. (Decl. of Paul S. Dietrich) Paul mentioned to his cousin, John

14  Alsop, that he had no interest in selling. (Decl. of Paul S. Dietrich) William Dietrich never

15  communicated with Flannery. He ignored their offers and efforts to contact him as was his right

16  to do so because he never wanted to sell either. (Decl. of William C. Dietrich)

17      There is no motive for the Dietrichs to participate in the alleged conspiracy. Not only did

18  they not want Flannery's money, they would not and could not sell the Property due to the

19  constraints and terms of the Child's Trust. The Property generates income from a wind turbine

20  and a small farming/ranching lease. William and Paul split that income. The "principal" of the

21  Child's Trust is the land itself and that land is directed by the 1994 Trust and the Child's Trust to

22  be ultimately transferred to Paul's descendants. The terms of the Child's Trust and the Dietrichs'

23  position have been known to Flannery and its lawyers since July 2024. (Decl. of David B. Draper

24  Ex. G) Yet they keep looking for something that does not exist to put pressure on the Dietrichs to

25  sell.

26      Forcing the Dietrichs, as Trustees, to sell the Property would place them in an adversarial

27  relationship with the Child's Trust beneficiaries who are not parties to this action.  Even if the

28  beneficiaries independently convinced a state probate court that the sale of the Property now

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   would be a good idea, and not wait for the Child's Trust to terminate, neither Paul or William

2   would receive any of the proceeds. They have no individual motive for participating in the

3   alleged conspiracy. There is nothing for them to gain. There was never any action against their

4   own self-interests, no exchanges of confidential information with the other property owners.

5   Flannery claims that all of the Defendants refusal to sell was parallel conduct to drive up

6   Flannery's offers. As to the Dietrichs, there was no conduct at all except Paul telling Flannery he

7   did not want to sell. It is not reasonably plausible that their refusal to sell is because they were

8   involved in a price-fixing conspiracy to drive up a price they had no interest in discussing. The

9   Dietrichs' refusal to sell was and is proper and legal conduct, acts they took independent of the

10  other thirty-eight Defendants. The best proof of that independence is that they are the sole

11  remaining Defendants.

12      Facts, evidence of a person's participation in furtherance of a conspiracy would include

13  statements to induce enlistment or further participation in the group's activities; statements

14  prompting further action on the part of the conspirators; statements to reassure members of the

15  conspiracy's continued existence, statements to allay fears, statements to keep members abreast

16  of the conspiracy's activities, motivation and continued participation all of which statements had

17  to be made during the conspiracy. _United States v. Nazemian_ 948 F.2d 522, 529 (9th Cir. 1991).

18  Flannery has none of these types of statements or communications by, involving or even

19  mentioning the Dietrichs. Mere conversations between alleged coconspirators or merely narrative

20  declarations among them are not made in furtherance of a conspiracy. _U.S. v. Layton_ 720 U.S.

21  548, 556 (9th Cir. 1983).

22      The Ninth Circuit has strictly construed the "in furtherance of the conspiracy" requirement

23  _U.S. v. Nazemian, Id_; _U.S. v. Foster_ 711 F.2d 871 (9th Cir. 1983). There must be specific evidence

24  that there was a conspiracy involving the Dietrichs and the specific evidence of their

25  participation. Direct evidence in a Section 1 conspiracy must be evidence that is explicit and

26  requires no inferences to establish the proposition or conclusion asserted. _In Re Baby Food_

27  _Antitrust Litig._ 166 F3d 112, 118 (3rd Cir. 1999); _7-UP Bottling Co. v. Archer Daniels Midland_

28  _Co. (In Re Citric Acid Litig.)_ 191 F.3d 1090, 1094 1095 (9th Cir. 1999).  Courts should not permit

1   factfinders to infer conspiracies where such inferences are implausible.

2       Flannery fails to meet the test outlined in *7-Up Bottling* that the Dietrichs participated in

3   Flannery's contrived conspiracy. The "smoking guns" Flannery retreats to when faced with this

4   challenge to their narrative do not mention the Dietrichs. While there may be circumstantial

5   evidence that a conspiracy existed amongst other landowners, that circumstantial evidence is not

6   sufficient to cast the Dietrichs into the conspiracy unless an inference is made. Under *7-UP*

7   *Bottling* that inference is not permitted at this stage. Plaintiff now has to produce admissible,

8   explicit, specific evidence of the times, places and persons involved in their alleged conspiracy

9   that includes the Dietrichs. There is no such evidence because the Dietrichs never wanted to sell,

10  they do not want to sell now, the Child's Trust does not allow Paul and William to sell, Paul

11  specifically told Flannery he was not interested and William did not speak to anyone. Flannery's

12  claims that additional discovery will produce the explicit, specific evidence is a false hope.

13      Flannery cannot rebut the Dietrichs' statements that the reason they refuse to sell the

14  Property is because they choose not to and that the Child's Trust prevents them from doing so.

15  Perfectly plausible, logical, legal reasons for not selling.

16  **IV.    FLANNERY WILL ASK FOR A CONTINUANCE TO DO ADDITIONAL**
17  **DISCOVERY**

18      The discovery cut-off date in this action was December 16, 2024. Flannery has a motion

19  currently under submission with the Court (ECF 141) requesting a modification to the initial

20  scheduling order allowing an additional six months of discovery. Flannery claims that it should be

21  allowed additional time to issue more subpoenas and perhaps take depositions that it did not

22  consider taking prior to the cut-off date. The Dietrichs have opposed that motion (ECF 144).

23      Flannery issued seventeen subpoenas between December 4th and 9th, 2024. Those

24  subpoenas were served on former Defendants and request production of categories of documents

25  that were demanded in requests for production of documents previously served on those same

26  Defendants when they were parties to the lawsuit. Flannery believes that the duplicate production

27  requests, if allowed, will provide new documents pointing to the Dietrichs' direct participation in

28  the alleged conspiracy. Flannery has no explanation why these anticipated documents, if they

ROPERS
MAJESKI
A Professional Corporation
San Jose

existed, would not have been produced in response to the original document requests in 2023 and 2024. Seventeen Defendants would have had to have independently withheld and not produced the types of documents Flannery says exist. Kirk Beebe, Susan Furay, Richard Hamilton and Christine Mahoney produced documents indicating that they were talking amongst themselves about Flannery's offers and tactics. Why would they suppress anything else?

The Dietrichs put Flannery on notice in March 2023 that their alleged participation in the alleged conspiracy was an issue, that there was no evidence of that alleged participation. Flannery was given two chances under unfiled Rule 11 motions to produce the evidence they should have had prior to filing the Complaint. Nothing was produced or identified.

The Dietrichs' discovery requests were served in April 2024. The majority of what can be considered as substantive responses occurred on December 31, 2024. Flannery has not produced any specific, direct evidence of the Dietrichs' participation in the alleged conspiracy. Flannery has had plenty of time to conduct discovery and should not be allowed to delay the inevitable.

Should the Court consider Flannery's request to conduct additional discovery in order to respond to this motion Local Rule 260(b) provides that:

> "If a need for discovery is asserted as a basis for denial of the motion, the party opposing the motion shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary."

Flannery should be required to identify to the Court the specific facts it seeks and where it believes its discovery would reveal those facts. Currently, the additional discovery Flannery has issued is a duplication, by subpoenas, of its original requests for production to various former Defendants. (Decl. of David B. Draper Ex. I) Flannery should be required to explain why it believes the duplicative discovery will produce evidence now when that evidence, if it exists as Flannery believes, was not produced earlier.

**A.    Flannery's Continued Insistence that Evidence of the Dietrichs' Participation in a Conspiracy Makes No Sense**

Where is Flannery going to find evidence that rebuts William Dietrich's testimony that he did not talk to anyone about property values and prices and how to make Flannery pay more?

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   With whom was William conspiring, and how? If William did not want to sell, believed he could

2   not sell because of the Child's Trust and did not communicate with anyone about Flannery where

3   is Flannery going to find evidence to refute those facts? Who does Flannery believe is going to

4   come forward at this late date and confess that 1.) they withheld relevant discoverable

5   information earlier while they were Defendants and 2.) that Paul and William are not telling the

6   truth because they talked to them about how to force Flannery to pay big money by playing hard

7   to get. If Flannery wants a continuance they should be required to identify who is going to

8   suddenly give up this information. Not circumstantial evidence, but specific direct evidence of

9   participation in the alleged conspiracy.

10          And if all that were true why haven't the Dietrichs surrendered? Flannery is essentially

11   taking the position that the Dietrichs are lying. Why would the Dietrichs risk everything if they

12   knew that their alleged co-conspirators could turn on them now that those people have no liability

13   and the Dietrichs would incur all of Flannery's claimed damages all by themselves?

14          Flannery complains mightily that it has been taken advantage of by these forty Defendants

15   who have taken concerted action to inflate the price of their properties. Yet Flannery has paid

16   thirty-eight of them millions of dollars, in negotiated deals that are not confidential, and has

17   forgiven and released all of the people whom they claim caused them such financial hardship.

18   Why then do the Dietrichs simply not surrender, sell their Property and reap millions of dollars?

19   If the Dietrichs are in an alleged conspiracy to cause Flannery harm why are they insisting on

20   being the sole parties to incur possible liability in the hundreds of millions of dollars? Why do the

21   Dietrichs, seeing their alleged co-conspirators being paid millions and forgiven, decide the hell

22   with it let's incur the expense of continued litigation and trial and take the risk of losing

23   everything, when their reward and absolution is a phone call away? (Decl. of David B. Draper

24   Ex. H)

25          There are no logical answers to these questions that support Flannery's claims and their

26   desire or rationale to continue discovery.

27

28

**V.     FLANNERY HAS NOT IDENTIFIED OR PRODUCED DOCUMENTS IN DISCOVERY THAT EVIDENCE THE DIETRICHS' PARTICIPATION IN THE ALLEGED PRICE-FIXING CONSPIRACY**

In response to the Dietrichs' initial discovery requests and a final set of interrogatories, Flannery was asked to identify and produce documents it contends support its claims of liability against the Dietrichs. Specifically, what is Flannery's specific evidence that the Dietrichs participated in Flannery's alleged price-fixing conspiracy. (Decl. of David B. Draper Ex. J)

Flannery did not produce any new documents in December 2024. Flannery identified their own unsolicited purchase offers sent to the Dietrichs between May 2019 and May 2021. (Decl. of David B. Draper Ex. K). There is no explanation as to why Flannery's unsolicited offers are evidence of the Dietrichs' alleged conduct or intent. There are no written responses from the Dietrichs to those offers and communications.

Flannery identified six documents produced by former Defendant Richard Anderson which reflect information or a meeting between Richard Anderson, Christine Mahoney, Wes Stewart and a lawyer, David J. Bowie, where a carbon sequestration project, unrelated to Flannery's purchases, was being discussed in 2022. A company had approached various landowners in Solano County seeking leases to store, or sequester, liquid carbon dioxide underground. Richard Anderson sent a letter written by Bowie to Paul Dietrich as Richard Anderson and the Dietrichs have neighboring properties. There is no evidence that Paul attended any meeting with Bowie and the subject of that meeting had nothing to do with Flannery. (Decl. of David B. Draper Ex. L) Flannery, as a local property owner, was also aware of the carbon sequestration efforts and opposed it as did the existing landowners. (Decl. of David B. Draper Ex. Q). Flannery contends that Paul Dietrich's receipt of the email from Anderson is evidence of the alleged price-fixing conspiracy despite the unrelated topic and actual purpose of the communication.

Flannery identified documents produced by the Mahoney Defendants as evidence of the alleged conspiracy. The first document is an instant message from Richard Anderson informing Christine Mahoney that Paul Dietrich had received a phone call from someone at Chevron looking to lease some land for carbon sequestering. A hearsay statement that Paul Dietrich

- 15 -

1  received a phone call from someone not discussing Flannery's land offers and purchases is not

2  proof of participation in a price-fixing cabal. (Decl. of David B. Draper Ex. M)

3      The second Mahoney document is a map of a proposed Calpine CO2 pipeline across the

4  Mahoney's property. (Decl. of David B. Draper Ex. M) No one is quite sure what these

5  documents are supposed to evidence other than someone at Chevron supposedly called

6  Paul Dietrich and there is a map of a proposed pipeline not on the Dietrichs' Property.

7      Flannery identified documents produced by former Defendant Richard Hamilton in July

8  2022 which reflect discussions he had with former Defendant Kirk Beebe about Flannery's efforts

9  to purchase land near their respective properties and that they should talk to each other about

10 Flannery's efforts to buy into their respective LLC's in order to force sales. (Flannery would buy

11 out minority members and then use that voting power internally to have their purchase offers

12 considered.) There are also transcripts of messages between two members of the Hamilton family

13 concerning spreading a rumor that Flannery is paying $47,250 per acre and one of the family

14 members saying that the rumor should not be communicated to anyone outside the Hamilton

15 family. (Decl. of David B. Draper Ex. N) This does not look good for the Hamiltons, under

16 Flannery's claims, but there is no nexus between the Hamiltons and the Dietrichs. Flannery

17 claims that the Hamiltons' documents are evidence of the Dietrichs' participation in the alleged

18 conspiracy even though the Dietrichs are not mentioned in any way and the two Hamiltons having

19 the discussion say to keep it within the family.

20     Flannery identifies documents produced by former Defendant John Alsop as evidence of

21 the Dietrichs' alleged wrongful conduct. One document is from former Defendant Ian Anderson

22 where he provides information on his farming operation (Anderson leased land from the Dietrich,

23 Alsop and Gurule families). Wheat is at $140 per ton and the lamb business is decent. Anderson

24 talks about Flannery's purchases and how it has or might affect his farming operations. There is

25 no discussion about whether anyone should sell or not sell. (Decl. of David B. Draper Ex. O)

26     A second email exchange with the Alsops has Ian Anderson telling them that

27 Paul Dietrich is not planning on selling his land, that they need to build a new fence on the

28 properties and that Ian hopes that the expense of the fence does not make the Alsops want to sell.

ROPERS
MAJESKI
A Professional Corporation
San Jose

1    This is not Ian Anderson telling the Alsops not to sell. (Decl. of David B. Draper Ex. O)

2          A third email has Flannery's Richard Melnyk sending an email to former Defendant

3    Nancy Roberts in February 2022 about whether she wanted to meet to discuss a possible sale of

4    their property. Roberts tells her siblings, John and Janet, seven months later in September 2022,

5    that she had not read the Melnyk email in February and had no follow up with Mr. Melnyk at all.

6    (Decl. of David B. Draper Ex. O)

7          A fourth email has John Alsop sending Paul Dietrich a news article on Flannery in July

8    2019 and the two exchanging the fact that they each had received purchase offers from Flannery.

9    Both men state that they have no plans or intentions of selling their properties. (Decl. of David B.

10   Draper Ex. O)

11         A fourth letter from Ian Anderson, dated November 2022, again reports on the farm

12   operations (things are looking better) and discusses the Andersons' dealings with Flannery, which

13   they report were unpleasant. Ian reports that he and his family had decided not to sell and that

14   they were comforted by their decision due to the history their family had with farming and

15   ranching in the area for generations. Anderson's only comment on the possibility of someone else

16   selling is that his farming leases on the properties be allowed to continue on long-term leases.

17   (Decl. of David B. Draper Ex. P) There are no discussions on land prices, no discussions on

18   whether others should sell or not sell. No evidence of any alleged conspiracy to do anything with

19   the prices being offered.

20         The balance of the documents Flannery identifies as placing the Dietrichs in the alleged

21   price-fixing conspiracy are the Dietrichs' own documents. Two of the documents are between

22   John Alsop and Paul Dietrich discussing the fact that Flannery made offers to purchase. There are

23   no documents or communications discussing land prices or how to respond to Flannery's

24   unsolicited offers. Both men stated they had no plans or intentions of selling. (Decl. of David B.

25   Draper Ex. R)

26         Flannery also conflates the communications regarding the unrelated third-party carbon

27   dioxide sequestration inquiries with Flannery's purchase offers. The carbon sequestration

28   company was seeking to <u>lease</u> whatever land it could in Solano County to inject the liquid carbon

ROPERS
MAJESKI

A Professional Corporation
San Jose

- 17 -
MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:23-CV-00927-TLN-AC

1    dioxide into underground storage. These were not purchase and sale discussions and any lease

2    would leave the property owners with liquid carbon dioxide underground in old oil and gas wells

3    preventing any future wells, water, gas or oil, from being drilled. Flannery knew of the carbon

4    sequestration, was against it themselves and nothing further happened. (Decl. of David B. Draper

5    Ex. Q) Flannery wants the Court to read that if there were discussions of leasing the land for

6    carbon dioxide storage between some of the land owners, there must have been discussions about

7    Flannery's offers. There are no specific facts that allow that conclusion or inference. The

8    Dietrichs never wanted to sell, the Child's Trust prevents them from selling, a discussion of

9    leasing the land for whatever purpose is no different from Ian Anderson's farm lease or the wind

10   turbine lease. Discussions about income generation from leasing is decidedly different from

11   outright selling.

12        After all this, Flannery still has not produced or identified any documents or specific

13   evidence of the Dietrichs being involved in, or part of, the alleged price-fixing conspiracy.

14   **VI.    <u>CONCLUSION</u>**

15        The Dietrichs have never wanted to sell their Property. Not to Flannery, not to anyone.

16   The Child's Trust prevents the Property from being sold. The Dietrichs' refusal to sell to Flannery

17   is a direct result of their following the terms of the Child's Trust and their overall desire to keep

18   their family Property, not from being involved in Flannery's alleged conspiracy.

19        Flannery has no specific, explicit evidence that the Dietrichs participated in any type of

20   alleged price-fixing conspiracy.  William Dietrich did not speak to or communicate with anyone

21   from Flannery. There is no evidence that William and Paul talked about prices or land sales or

22   Flannery's offers with anyone. Flannery does not meet the requirements and test of *7-UP Bottling*

23   to show that the Dietrichs' actions were anything other than legal and permissible. Without direct

24   proof of participation in the alleged conspiracy there is no liability. Judgment should be granted

25   in favor of Paul and William Dietrich and against Flannery Associates LLC as there are no

26   genuine, triable issues of material fact that subject the Dietrichs to Flannery's claims of liability.

27   ///

28   ///

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   Dated:  February 6, 2025           ROPERS MAJESKI PC

2

3                                By:  /s/ *David B. Draper*

4                                  MICHAEL J. IOANNOU
                                    DAVID B. DRAPER

5                                  KEVIN W. ISAACSON
                                  Attorneys for Defendants

6                                  Paul S. Dietrich (individually and as trustee of
                                  the Child's Trust FBO Paul S. Dietrich, a

7                                  subtrust under the Trust of William C. Dietrich
                                  and Ivanna S. Dietrich; William C. Dietrich

8                                  (individually and as trustee of the Child's Trust
                                  FBO William C. Dietrich, a subtrust under the

9                                  Trust of William C. Dietrich and Ivanna S.
                                  Dietrich)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROPERS
M A J E S K I

A Professional Corporation
San Jose