MICHAEL J. IOANNOU (SBN 95208)
DAVID B. DRAPER (SBN 107790)
KEVIN W. ISAACSON (SBN 281067)
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 930
San Jose, CA 95113
Telephone: 408.287.6262
Facsimile: 408.918.4501
Email: michael.ioannou@ropers.com
david.draper@ropers.com
kevin.isaacson@ropers.com

Attorneys for Defendants Paul Dietrich (individually and as trustee of the Child's Trust FBO Paul S. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich and William Dietrich (individually and as trustee of the Child's Trust FBO William C. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich)

ROPERS MAJESKI
A Professional Corporation
San Jose

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Flannery Associates LLC,

Plaintiff,

v.

Barnes Family Ranch Associates, LLC, et al.,

Defendants.

Case No. 2:23-cv-00927-TLN-AC

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Complaint Filed: May 18, 2023
Trial Date: Not Set

ROPERS MAJESKI
A Professional Corporation
San Jose

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | THE DIETRICHS HAVE MET THEIR INITIAL BURDEN OF PROVIDING A PLAUSIBLE AND JUSTIFIABLE REASON FOR NOT SELLING THEIR PROPERTY | 2 |
| II. | DEFENDANTS HAVE NOT FLOUTED THE COURTS MEET AND CONFER OBLIGATION | 5 |
| III. | DOCUMENTS | 6 |
| IV. | FLANNERY'S REQUEST FOR ADDITIONAL DISCOVERY | 7 |
| V. | IF PLAINTIFF'S REQUESTS ARE GRANTED ANY ADDITIONAL FUTURE DISCOVERY SHOULD BE LIMITED | 8 |
| VI. | CONCLUSION | 9 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*7-UP Bottling C. v. Archer Daniels Midland Co. (In Re Citric Acid Litig.)* 191 F. 3d 1090 (9th Cir. 1999)....1, 2, 3, 4, 5, 7, 8, 9

*In Re Citric Acid Litig.* 996 F.Supp. 951 (USDC ND CA 1998)....1, 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574 (1986)....1

*Richards v. Neilson Freight Lines* 818 F.2d 898 (9th Cir. 1987)....2

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.* 809 F. 2d 626. (9th Cir. 1987)....5

**OTHER AUTHORITIES**

FRCP 56(d)(2)....8

ROPERS MAJESKI
A Professional Corporation
San Jose

Flannery Associates LLC alleges a price-fixing antitrust case against Paul and William Dietrich where there is no dispute that its claim rests entirely on circumstantial evidence. Flannery acknowledges that fact in its responses to the Dietrichs' discovery and tacitly admits it by asking the Court for additional time to conduct discovery after the discovery cut-off date passed in December 2024.

*7-UP Bottling C. v. Archer Daniels Midland Co. (In Re Citric Acid Litig.)* 191 F. 3d 1090 (9th Cir. 1999) is directly on point. The Court of Appeals opinion is clear:

"This circuit has outlined a two-part test to be applied whenever a plaintiff rests its case entirely on circumstantial evidence." *7-UP Bottling*, page 1094. "We have repeatedly applied this summary judgment framework, which, to repeat, we must apply whenever the plaintiff cannot establish every element of its case without asking the court to draw an inference in its favor." *Id,* page 1095. Flannery essentially ignores discussing the case in its opposition, citing the case once on page 12 without any discussion as to why it should not be followed and again on pages 13 and 19 just as references. Flannery avoids the *7-UP Bottling* holding by citing cases from the 1950's and 1960's, long before *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574 (1986), to argue sound bites of "conspiracies are rarely evidenced by explicit agreement" and "proof is largely in the hands of alleged conspirators." (In other words, they cannot find anything to pin on the Dietrichs.) By avoiding the two-part test in *7-UP Bottling* Flannery avoids the rationale behind *Makushita* and its progeny which seek to limit the range of permissible inferences that can be drawn from ambiguous evidence of an antitrust conspiracy. Evidence that is as consistent with independent activity as with antitrust conspiracy fails as a matter of law to create a genuine issue for trial. The Dietrichs do not contend that *Matsushita* forecloses the possibility of surviving a summary judgment based on circumstantial evidence, the Dietrichs contend that the two-part test in *7-UP Bottling* be applied and if Flannery cannot pass that test then, yes, Flannery does not survive summary judgment. Flannery also makes an interesting strategic choice by not offering any evidence in its opposition to meet their burden under the *7-UP Bottling* holding.

As stated by the trial judge who originally granted the summary judgment in the *7-UP Bottling* case, in what was then cited as *In Re Citric Acid Litig.* 996 F.Supp. 951, at 954 (USDC

ROPERS MAJESKI
A Professional Corporation
San Jose

ND CA 1998):

> "A special rule applies to the use of circumstantial evidence in antitrust cases. Where an antitrust plaintiff relies entirely on circumstantial evidence of conspiracy, a defendant is entitled to summary judgment if it can be shown that (1) the defendant's conduct is consistent with other plausible explanations, and (2) permitting an inference of conspiracy would pose a significant deterrent to beneficial procompetitive behavior."

This special rule, also discussed in *Richards v. Neilson Freight Lines* 818 F.2d 898, 902 (9th Cir. 1987), is clearly stated in *7-UP Bottling* and must be applied in this case.

## I. THE DIETRICHS HAVE MET THEIR INITIAL BURDEN OF PROVIDING A PLAUSIBLE AND JUSTIFIABLE REASON FOR NOT SELLING THEIR PROPERTY

The Dietrichs have met the first part of the two-part test by rebutting the allegation of conspiracy by showing a plausible and justifiable reason for their conduct, that conduct consisting of not selling their property to Flannery. Not selling one's property where there is no obligation to do so is consistent with proper business practices. Now, admittedly, there are two reasons why the Dietrichs did not sell their property to Flannery and whether they are "in business" creates a semantic juggle for them to act "consistent with proper business practice". Acting in a lawful and permitted manner should equate to "consistent with proper business practices".

The first reason the Dietrichs did not sell their property to Flannery is that they did not want to sell. The Property has been in their family for generations. Their parents created the Trusts at issue here with the intent that the Property pass to Paul and William's descendants. Simply not wanting to sell the Property fits the *In Re Citric Acid Litig*. trial court's special rule, a rule subsequently approved and adopted by the Ninth Circuit in *7-UP Bottling*. The Dietrichs were not obligated to sell, they never entered into any negotiations to sell to Flannery and the evidence shows that they did not want to part with their land. In order to overcome this reason Flannery would have to produce specific evidence that the Dietrichs, despite rebuffing Flannery's offers, ignoring them for the most part, actually wanted to sell their Property and their defense of the litigation has been a negotiation tactic and that this is not permissible, competitive behavior.

The second reason the Dietrichs did not sell, and this goes to motive and independent action, is because they believe the terms of the Child's Trust Agreement and The Plan of

ROPERS MAJESKI
A Professional Corporation
San Jose

Distribution entered into in June 2013 prevents them from selling.

The Trust provides for ultimate distribution of its assets to the beneficiaries. (Decl. of Paul S. Dietrich, Exhibit A, page 20, §10.8, page 21, §§10.11 and 10.13.) Once an asset is distributed to the beneficiary it is no longer subject to the terms and conditions of the Trust. In and about May and June 2013 the Dietrichs prepared and agreed to a Plan of Distribution that encompassed the 1994 parents' Trust, the Surviving Spouse's Trust, and the Family Bypass Trust. Pursuant to that Agreement (Decl. of Paul S. Dietrich, Exhibit A) they distributed the assets of the other Trusts, created the Child's Trust and placed the Property in the Child's Trust where the Child's Trust is to hold the Property in separate shares for Paul and William for their lifetime and upon their death the shares are to be distributed outright and free of trust to Paul's children. (Declaration of Paul S. Dietrich, Exhibit A, page 2, paragraphs 5 and 6). Flannery's opposition does not recognize the effect of the distribution.

The Property is to be held in trust, as Paul and William's parents intended, to eventually pass to Paul's children (as we now know that William does not have any children). Perfectly good, legal reasons to support their not selling to Flannery. Under *7-UP Bottling* the burden now shifts to Flannery to provide specific evidence tending to show that the Dietrichs were not engaging in permissible behavior. It is here that Flannery has to depart from the inferences circumstantial evidence requires in order to claim a conspiracy. Permitting an inference of conspiracy on these facts poses a significant deterrent to the Dietrichs', or any individual Defendant's, quiet enjoyment of their land.

Flannery assaults the Dietrichs' plausible and justifiable reasons for their not selling by claiming the Dietrichs' testimony is self-serving and that they really could sell if they wanted to as their belief and understanding of their own Child's Trust Agreement and Plan of Distribution is in error. Flannery then takes their flimsy circumstantial evidence of ambiguous emails, and irrelevant instant messages, and places <u>their</u> narrative on what <u>they</u> want the emails to really say.

Flannery does not spend much time addressing the Dietrichs' desire not to sell their Property. It is difficult for Flannery to find any indication of a nefarious intent when William would not communicate and Paul said he was not interested. So, Flannery returns to its own

ROPERS MAJESKI
A Professional Corporation
San Jose

interpretation of what the emails and instant messages say which is exactly what the two-part test in *7-UP Bottling* is in place to prevent. The Dietrichs have provided plausible explanations for wanting to keep their Property. Flannery's position is "No, you are wrong. You really wanted to sell."

Flannery spends nearly all of its opposition argument on the Dietrichs' rebuttal of the conspiracy allegation by stating and arguing that the terms of the parents 1994 Trust and the terms of the Child's Trust Agreement and the Plan of Distribution are different and inconsistent. Therefore, Flannery argues, the Dietrichs' testimony of what their understanding and beliefs are concerning the Child's Trust are incorrect. Flannery claims that this is a disputed material fact and thus summary judgment has to be denied. It is here that Flannery does not consider the distribution of the Property out of the 1994 Trust and into the Child's Trust. The 1994 Trust provides for distribution of the assets contained in the Trust. The Plan of Distribution lists the various assets in the Trust and the Surviving Sprouse's Trust and then indicates how and to whom the assets are distributed. (Decl. of Paul S. Dietrich, Exhibit A). The terms of the Trust are different from the Plan of Distribution because the Plan of Distribution takes the Property out of the Trust, creates the life interest for Paul and William and maintains the Property in Trust for the ultimate distribution to Paul's children. (Decl. of Paul S. Dietrich, Exhibit A, pg. 2, paras. 5 and 6) The differences occur because all the parties to the Dietrich Trusts, the Trustees and the Beneficiaries, got together and amended the Trust by creating the Child's Trust and Plan of Distribution in June 2013, years before Flannery appeared in Solano County. The parents 1994 Trust is now irrelevant.

The 1994 Trust is a private agreement within the Dietrich family. It created the parents' Trust, a Surviving Spouse's Trust, a Family Bypass Trust, a Marital QTIP Trust (taxes) and the Child's Trust. The Child's Trust as an independent document come into existence in 2013. Section 10.8 of the 1994 Trust allows the Trustee to divide assets among the various trusts upon the termination of any of the Trusts. Section 10.11 allows the Trustee to make non-prorata distributions to beneficiaries. Section 10.13 gives the Trustee broad powers to divide any Trust property for distribution. In June 2013 Paul, William, and Paul's children, Peter and Emma, all

ROPERS MAJESKI
A Professional Corporation
San Jose

agreed on a Plan of Distribution which divides up the remaining assets of the various trusts. The Plan of Distribution distributes the Property to Paul and William to hold and benefit during their lifetimes (a life estate) and then passes to Paul's children upon their deaths. The Property, being distributed, is beyond the Trustees of the 1994 parents Trust ability to sell.

The Dietrichs do not need to cite any legal authority to support their understanding of their family's documents. The question remains: was the Dietrichs' conduct in not selling their property to Flannery consistent with their understanding of how Paul and William held the Property as Trustees, and how the Property is to be passed on to the next generation, and is that conduct lawful and permitted conduct. The answer is yes and the burden shifts to Flannery to provide specific evidence tending to show that the Dietrichs were not engaging in lawful and permitted conduct. This is what Flannery wants to avoid and they spend no time contesting or addressing what type of evidence they are required to produce: specific facts that tend to exclude the possibility that the Dietrichs acted independently and lawfully. *7-UP Bottling* at 1094; *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc*. 809 F. 2d 626, 632. (9th Cir. 1987) ("Direct evidence in a Section1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted. With direct evidence the finder of fact is not required to make inferences to establish facts." citing *In Re Baby Food Antitrust Litig.* 166 F. 3d 112, 118 (3rd Cir. 1999).)

The Dietrichs have met their burden under *7 -UP Bottling*. The burden now shifts to Flannery to produce specific evidence that does not require inferences to establish participation in the alleged conspiracy. Flannery did not do so in its opposition.

## II. DEFENDANTS HAVE NOT FLOUTED THE COURTS MEET AND CONFER OBLIGATION

Defendants have not flouted the Court's meet and confer requirement. It is true the phone conference did not take place. It was not, as suggested, because it would be futile as the parties are entrenched, it was a result of a lapse in memory. The Dietrichs' attorney forgot to initiate the meet and confer before filing the motion. (Decl. of David B. Draper) Not as an excuse not to comply with the Standing Order, but Flannery is not prejudiced. The issues have narrowed and

ROPERS MAJESKI
A Professional Corporation
San Jose

ROPERS MAJESKI
A Professional Corporation
San Jose

the parties have been talking about the lack of evidence against the Dietrichs since August of 2023. There have been two unfiled Rule 11 motions delivered and meet and confer over the discovery requests, all on the same issue: the lack of evidence to support Flannery's claims against the Dietrichs.

## III. DOCUMENTS

Flannery attaches documents produced in discovery to their attorney's declaration as examples of how it believes the Dietrichs may be involved in Flannery's alleged conspiracy. Flannery does not provide any witness testimony other than their lawyer's declaration that the documents were produced in discovery. There is no foundation established to bring these documents into evidence. The rest of the discussion about the documents is all their attorney's speculation and argument of what Flannery wants the documents to mean.

The first document attached to Mr. Menitove's declaration is an email where Paul Dietrich talks to his cousin, John Alsop, about just receiving Flannery's unsolicited offer. Mr. Alsop says he received an offer as well. Neither party has plans to sell. That same day Mr. Alsop sends Paul a news article on Flannery. No one knew who they were at that time and there was great mystery about why Flannery was buying so much land around Travis Air Force Base.

The second document is a handwritten note where someone named Pollock is asking William to reconsider an offer to lease the Property for storing liquified carbon dioxide.

Number three is an email from Richard Hamilton criticizing Flannery. The Dietrichs are not mentioned or copied, land sales or values are not discussed. Number 4: Richard Anderson received an instant message where the sender said they had talked to Kirk Beebe about carbon sequestration. Number 5: Richard Anderson sends an email about his attending a meeting with lawyer David Bowie. Number Six is an instant message where Richard Anderson tells Christine Mahoney that Paul Dietrich received a call from Chevron looking for land for carbon sequestration. Number 7, Richard Hamilton is thanked for telling someone something, subject unknown.

In Exhibits 8 through 11 there are emails and instant messages where the Hamiltons and Beebes are talking to and amongst each other about Flannery and their dealings with them. The

ROPERS MAJESKI
A Professional Corporation
San Jose

Dietrichs are not mentioned or copied.

None of these documents have even a whisper of a suggestion that the Dietrichs were involved in Flannery's alleged conspiracy. Flannery does not explain that the discussions on carbon sequestration, pumping liquid carbon dioxide into old gas and oil wells, has nothing to do with Flannery's efforts to purchase land. There is not a scintilla of evidence that any discussions or meetings over carbon sequestration included collective discussions on Flannery's offers to purchase. There is no evidence that Paul or William attended any of these meetings.

Flannery does not offer any evidence challenging the Dietrichs' belief and understanding of how and why they hold the Property and why they believe they could not sell. Flannery does not offer any specific evidence, direct or otherwise to meet its burden under *7-UP Bottling* that shows the Dietrich were acting in any way other than permissive and lawful. Flannery just contradicts the Dietrichs, says they are wrong and asks for more time to look for documents.

The opposition to the motion for summary judgement is the time and place to provide evidence to meet the second step of the test in *7-UP Bottling.* Flannery has not done so.

## IV. FLANNERY'S REQUEST FOR ADDITIONAL DISCOVERY

On September 17, 2024 Flannery agreed that the discovery cut-off date was December 16, 2024. The Dietrichs' attorneys had been talking to Flannery's lawyers since August 2023 about what, if anything Flannery had as evidence to support its claims that the Dietrichs' had participated in the conspiracy alleged in the Complaint. There were efforts at informal document exchanges, formal discovery (requests for production of documents, subpoenas, interrogatories) and two unfiled motions under Rule 11, without any success. This issue has been fully briefed and is currently under submission with the Court. (ECF 141, 144 – 146)

Flannery says that it needs more time because it is certain that damning evidence against the Dietrichs exists somewhere, they just cannot find it. Flannery has issued twenty-seven (27) requests for production, forty-four (44) subpoenas and gone through two motions to compel. Over 90,0000 documents have been produced from former Defendants and third parties. None of the discovery has unearthed anything that places or suggests that the Dietrichs were part of Flannery's alleged conspiracy. Flannery has taken the position that there must be communications

between the Dietrichs and the other property owners discussing jacking up the prices of the land. The former Defendants have just not produced the documents. This means that at least 17 individuals, with different lawyers and different situations have suppressed the smoking guns that would implicate the Dietrichs. Highly unlikely.

## V. IF PLAINTIFF'S REQUESTS ARE GRANTED ANY ADDITIONAL FUTURE DISCOVERY SHOULD BE LIMITED

Flannery has no specific direct evidence, or any evidence, to meet its burden under the second step of the *7-UP Bottling* test. They have their motion to amend the initial scheduling order to extend the discovery cut-off date and they make the request to do additional discovery in opposition to this motion under FRCP 56(d)(2). Should the Court consider allowing additional time for discovery the additional discovery should be limited to the seventeen subpoenas that are currently outstanding. Flannery could have taken depositions over the last year and consciously decided not to do so. Any additional discovery beyond the outstanding subpoenas should only be allowed for good cause shown on motion to the Magistrate Judge. The motion should be based upon documents Flannery discovers in the responses to its current outstanding subpoenas. Flannery would then have the opportunity to address its burden under *7-UP Bottling*.

Flannery objects in its motion to amend the initial scheduling order that the Court's stay on discovery for 100 days deprived them of that time to conduct discovery. While the Magistrate Judge's order granting the stay found that Flannery was not prejudiced by the 100 day stay (ECF 99, pg. 12:14-18) any additional time for Flannery to conduct discovery, under either of its requests, should be limited to 100 days. Flannery has an overabundance of lawyers and resources and their task is focused.

Flannery has to provide specific evidence that the Dietrichs conduct in not wanting to sell their Property to Flannery was based upon their participation in the alleged price fixing conspiracy. Flannery has to find evidence that the Dietrichs' desire not to sell, in and of itself, is not lawful conduct. Flannery has to find evidence that the Dietrichs' desire not to sell based upon their belief and understanding that the Child's Trust and the Plan of Distribution did not allow for the sale, as it was already destined to be passed on to Paul's children, was also not lawful

ROPERS MAJESKI
A Professional Corporation
San Jose

conduct.

If the Court should consider allowing Flannery additional time for discovery it should be limited to the outstanding seventeen subpoenas, any witness depositions only allowed after a showing to the Court of good cause and the time limited to 100 days. The Dietrichs' motion for summary judgment could be continued 120 days providing Flannery sufficient time to submit whatever it uncovers, if anything, to try and meet its burden.

## VI. CONCLUSION

Flannery does not have and has never had any evidence that the Dietrichs were part of the Complaint's alleged price fixing conspiracy. If they had such evidence they would have produced it in opposition to the motion for summary judgment whether under the test in *7-UP Bottling* or in the normal course of an opposition. Flannery's only effort has been to put their own spin and narrative on ambiguous and irrelevant documents produced in discovery, many of which do not even mention the Dietrichs.

Flannery does not take into consideration the effect of assets being distributed out of a trust, a normal and expected event when working with a family trust situation. The Dietrichs' Plan of Distribution for their various Trusts distributes the Property into the Child's Trust providing Paul and William an interest in the Property for their lifetimes and after that the Property goes to Paul's children. Just as other assets in the various Dietrich Trusts were distributed by the Plan, and are beyond the reach of any Trustee, so is the Property.

The Dietrichs' motion for summary judgment should be granted as there are no genuine issues to go to trial. If Flannery should be allowed additional time for discovery it should be limited in time and scope.

///

///

///

///

///

///

ROPERS MAJESKI
A Professional Corporation
San Jose

Dated: March 3, 2025

ROPERS MAJESKI PC

By: /s/ *David B. Draper*

MICHAEL J. IOANNOU
DAVID B. DRAPER
KEVIN W. ISAACSON
Attorneys for Defendant
Paul Dietrich (individually and as trustee of the Child's Trust FBO Paul S. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich; William Dietrich (individually and as trustee of the Child's Trust FBO William C. Dietrich, a subtrust under the Trust of William C. Dietrich and Ivanna S. Dietrich)

ROPERS MAJESKI
A Professional Corporation
San Jose